1  **Brian J. Boquist**
   17080 Butler Hill Road
2  Dallas, Oregon 97338
   Phone: 503-623-7663            FILED26 JUL '19 13:54USDC-ORP
3  Email: boquist@aol.com

4
                    UNITED STATES DISTRICT COURT
5
                          DISTRICT OF OREGON
6
                         PORTLAND DIVISON
7

8  **BRIAN J. BOQUIST,**                   Case No.   6:19-cv-01163-MC

                    Plaintiff,             **COMPLAINT FOR**
9       v.                                 **DECLARATORY AND**
                                           **INJUNCTIVE RELIEF**
10 **OREGON STATE SENATE PRESIDENT**
   **PETER COURTNEY, in his official**
11 **capacity, SENATOR FLOYD**
   **PROZANSKI, in his official capacity as**
12 **Chairman of the Senate Special**
   **Committee on Conduct, SENATOR**
13 **JAMES MANNING, in his official**
   **capacity as member of the Special Senate**
14 **Conduct Committee, DEXTER**
   **JOHNSON, in his official capacity as**
15 **Legislative Counsel, JESSICA**
   **KNIELING, in her official capacity as**
16 **interim Human Resources Director, and**
   **BRENDA BAUMGART, in her official**
17 **capacity as contract investigator to the**
   **Oregon State Senate, and all in their**
18 **official capacities in the Legislative Branch**
   **of the State of Oregon.**
19
                    Defendants.
20

21

22                          **Nature of Action**

23      1.     Plaintiff Brian Boquist brings this action for declaratory and injunctive

24 relief to protect his First Amendment, Fifth Amendment, and Fourteenth Amendment

25 rights under the United States Constitution being denied collectively by all the

26 Defendants.

Page 1 -   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*84864*

1    2.    Plaintiff alleges the Defendants collectively conspired to block the
2  Plaintiff's free and unfettered access to the Oregon State Capitol.  The Defendants have
3  issued instructions to the Secretary of the Senate and the Oregon State Police, an
4  executive law enforcement agency, to deny the Plaintiff access to the Plaintiff's own
5  office, unless Plaintiff provides twelve (12) hour notice to the Secretary of the Senate
6  whom will then direct the Oregon State Police, an executive law enforcement agency, to
7  increase its law enforcement presence in the Oregon State Capitol.  The Secretary of the
8  Senate has been instructed by Defendants to inform the employees and public in advance
9  of the any visit the Plaintiff makes to his lawful office in the Oregon State Capitol.  The
10  Plaintiff believes, this has never been done to any Oregon citizen, let alone an elected
11  State Senator, in the known recorded history of the Oregon State Capitol.

12    3.    Defendants admitted in the public record on July 8, 2019 their actions are in
13  response to regulating the free speech of the Plaintiff on the Floor of the Oregon State
14  Senate and in the Oregon State Capitol on June 19, 2019.  Plaintiff alleges this is a direct
15  violation of the free speech clause of the First Amendment of the United States
16  Constitution.    Plaintiffs have moved the recorded public hearing from the online
17  committee page to a 'wonky' location to intentionally discourage public access.

18    4.    Plaintiff alleges the Defendants are blocking the Plaintiff's practice and
19  expression of religious beliefs stated on the Floor of the Oregon State on July 19, 2019
20  that are protected under the First Amendment of the United States Constitution.

21    5.    Plaintiff alleges the Defendant's actions block the right of Plaintiff as an
22  Oregon State Senator to assemble in his legal offices with peaceful citizens to hear their
23  petitions for regress of grievances as guaranteed under the First Amendment of the
24  United States Constitution.    Additionally, this violates Section 26, Article I, Bill of
25  Rights, of the Oregon Constitution.

26

1    6.    Plaintiff alleges the Defendants collectively and intentionally blocked the

2    Plaintiffs' right of due process as guaranteed under the Fourteenth Amendment of the

3    United States Constitution.  This in ordering fines against the Plaintiff, in ordering he

4    arrest and imprisonment of the Plaintiff, and in conducting a secret investigations of the

5    Plaintiff.

6    7.    Plaintiff alleges the Defendants collectively denied the Plaintiffs state and

7    federal rights for personal and political purposes in direct violation of 25 CFR § 11.448 -

8    Abuse of office and threat of 25 CFR § 11.404 - False imprisonment of the United States

9    Code.

10    8.    Plaintiff alleges the Defendant's violated the Plaintiff's rights under Article

11    IV, Section 9, of the Oregon Constitution regarding freedom from civil proceedings

12    during Session, by undertaking, what the Defendant's allege was civil employment

13    proceedings, based on secret investigations, while in regular Session, by the Senate

14    Special Committee on Conduct, whose legal authority, jurisdiction, standing and

15    statutory authority is completely unknown.

16    9.    Plaintiff alleges the Defendants violated his free speech as an elected

17    Legislator speaking in debate on the Floor of the Oregon State Senate as stated in Article

18    IV, Section 9, of the Oregon Constitution.  Plaintiff acknowledges the whole of the

19    Oregon State Senate may have limited authority to decide upon 'words uttered in debate"

20    but none-the-less an elected Legislator does not surrender their free speech rights under

21    the First Amendment of the United States Constitution regardless of a vote of any

22    Legislative body as enshrined in *Bond v. Floyd, 385 U.S. 116 (1966)* and *New York Times

23    Co. v. Sullivan, 376 U.S. 254 (1964)*.

24    10.    Plaintiff asserts the entire premise of the alleged actions of the Defendants

25    is based on Defendant Courtney, Defendant Prozanski, Defendant Manning and

26    Defendant Johnson's, and other unnamed majority members, belief they can direct the

Page 3 -   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Oregon State Police, with the permission of the Governor of Oregon, to locate, arrest by

2   force, detain, and imprison their political opponents, and fine political opponents

3   themselves, under the word 'compel' in Article 4, Section 12 of the Oregon Constitution

4   without regard to the due process under the Fifth Amendment and Fourteenth

5   Amendment of the United States Constitution.  Their belief is displayed by voting such

6   on June 20, 2019, while lacking constitutional quorum, and Defendant Johnson's formal

7   legal opinion, is that the Oregon State Police can locate, arrest by force, detain, and

8   imprison elected legislators who have committed no crime and lacking a judicial warrant

9   issued by a court of law.  The Oregon State Police were in fact ordered to take such

10  action by Defendant Courtney through the Governor of the State of Oregon from June 20-

11  28, 2019.  In short, the use of the power of the police state to seize political prisoners

12  reminiscent of facist Germany and Italy, and communist Soviet Union, which enjoyed

13  widespread support in Oregon prior to the bombing of Pearl Harbor on December 7,

14  1941.  This type of belief has a long history in Oregon; arrest of individual refusing to

15  buy war bonds during WWI, the passage of the closure of Oregon's Catholic Schools in

16  the 1920s, and the detention of Japanese-American Oregon citizens in WWII, all of

17  which was eventually struck down by federal courts.

18

19                      **Jurisdiction, Standing and Venue**

20          11.     Jurisdiction arises under the U.S. Constitution 1st Amendment "freedom of

21  speech" and "establishment of religion, or prohibiting free exercise thereof," and no

22  action shall block "the right of the people to assemble, and petition the Government for a

23  redress of grievances."  The 5th Amendment "nor be deprived of life, liberty, or property,

24  without due prices of law." The 14th Amendment "shall any State deprive any person of

25  life, liberty, or property, without due process of law; not deny to any person within its

26  jurisdiction the equal protection of the laws."

Page 4 -   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      12.    The acts alleged herein occurred in the District of Oregon and venue is

2   therefore appropriate pursuant to 28 U.S.C. § 1391.

3      13.    The acts leading to the substance of allegations herein include potential

4   allegations of 25 CFR § 11.448 - Abuse of office and 25 CFR § 11.404 - False

5   imprisonment across State lines by several of the named Defendants, and aiders and

6   abettors of the Defendants, including but not limited to the Governor of the State of

7   Oregon.

8      14.    The U.S. Supreme Court previously ruled in *Bond v. Floyd, 385 U.S. 116*

9   *(1966)* which is a very similar case involving an elected member of the Georgia House of

10  Representatives regarding due process and freedom of speech of legislators in that **"(b)**

11  **The State may not apply to a legislator a First Amendment standard stricter than**

12  **that applicable to a private citizen. Pp. 385 U. S. 132-133."**

13     15.    The U.S. Supreme Court has previously ruled in *New York Times Co. v.*

14  *Sullivan, 376 U.S. 254 (1964)* which is a very similar case involving freedom of the

15  press, elected officials, free speech and due process in which **"[D]ebate on public issues**

16  **should be uninhibited, robust, and wide-open." New York Times v. Sullivan, 376 U.**

17  **S. 254, 376 U. S. 270. Pp. 385 U. S. 135-136."**

18

19                                      **Parties**

20     16.    Plaintiff Boquist.  Plaintiff is a citizen of the State of Oregon.  Plaintiff is

21  an elected State Senator serving approximately 130,000 constituents in five counties and

22  over twenty (20) incorporated and unincorporated cities.  Plaintiff's legislative salary is

23  approximately $2600 per month.  Plaintiff uses his Senate Office in the Oregon State

24  Capitol as his out-of-session office.  Plaintiff has two (2) employees serving the Senate

25  District both routinely working in-district and in the Oregon State Capitol Office.  The

26  Plaintiff has been an elected State Representative or State Senator since 2005.  Plaintiff is

Page 5 -   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    a retired senior United States Army Officer.    Plaintiff has overseen civilian and
2    government entities well over ten (10) times the size of the Legislative Assembly in
3    Oregon.  Plaintiff Brian J. Boquist resides at 17080 Butler Hill Road, Dallas, Oregon
4    97338 with family members.

5         17.    Defendant Courtney. Defendant Peter Courtney is an elected State Senator
6    serving as the President of the Oregon State Senate.  Plaintiff voted against Defendant
7    Courtney in his election as Senate President.    Plaintiff voted against Defendant
8    Courtney's proposed Session Rules as did many other State Senators.    Defendant
9    Courtney has served in the Legislative Assembly since 1980. Defendant Courtney is a
10   member of the majority party. Defendant Courtney in an inactive member of the Oregon
11   State Bar # 730660.    Defendant Courtney is paid a double legislative salary of
12   approximately $5200 per month to serve as the full time Senate President.  Defendant
13   Courtney has the sole power to appoint legislators to Senate committees, and the sole
14   power to approve Senate committee agendas.  Defendant Courtney is named in multiple
15   ongoing state and federal lawsuits, and state and federal civil complaints.  Defendant
16   Courtney is a co-signer of a 2019 Bureau of Labor & Industries employee and sexual
17   harassment settlement paying out $1.3 million in unappropriated legislative funds.
18   Defendant Courtney can terminate virtually any employee in the Legislative Assembly
19   who are not 'member' or 'caucus' staff as he is the senior 'at-will' appointing authority in
20   the Oregon State Senate.  Defendant Courtney's official legislative address is 900 Court
21   Street NE, S-201, Salem, Oregon 97301.

22        18.    Defendant Prozanski.  Defendant Floyd Prozanski is an elected State
23   Senator serving as the Chairman of the Senate Special Committee on Conduct whose
24   authority, jurisdiction, standing and statutory status is unknown.  Defendant Prozanski
25   was appointed as the Chairman of the Senate Special Committee on Conduct by
26   Defendant Courtney. Defendant Prozanski has served in the Legislative Assembly since

1    1995.  Defendant Prozanski is an active member of the Oregon State Bar # 840846.

2    Defendant Prozanski and the Plaintiff have served on legislative committees together.

3    Defendant Prozanski and the Plaintiff have verbally sparred in debate on the Floor of the

4    Oregon State Senate in the recent Session ending June 30, 2019.  Defendant Prozanski on

5    numerous occasions in the recent legislative Session challenged the Plaintiff's free

6    speech under Senate Rules.  Defendant Prozanski's official legislative address is 900

7    Court Street NE, S-413, Salem, Oregon 97301.

8         19.    Defendant Manning.       Defendant James Manning is an elected State

9    Senator serving as a majority member of the Senate Special Committee on Conduct

10   whose authority, jurisdiction, standing and statutory status is unknown.  Defendant

11   Manning was appointed to the Senate Special Committee on Conduct by Defendant

12   Courtney.  Defendant Manning and the Plaintiff have verbally sparred in debate on the

13   Floor of the Oregon State Senate in the recent Session ending June 30, 2019.   The

14   Plaintiff challenged the Defendant Manning's verbal attack on a homosexual minority

15   staff member under Senate Rules on the Floor of the State Senate.  Defendant Manning

16   filed complaints against the same minority staff member with Defendant Knieling in

17   alleged retribution.  Defendant Manning was appointed to the Legislative Assembly in

18   2016.   Defendant Manning's official legislative address is 900 Court St. NE, S-205,

19   Salem, Oregon 97301.

20        20.    Defendant Johnson.  Defendant Dexter Johnson is the Chief Legislative

21   Counsel for the Oregon State Senate and Oregon House of Representatives earning

22   approximately $16,000 per month.  Defendant Johnson serves as both pro-and-con legal

23   representative to all ninety (90) members of the Legislature, effectively legal counsel for

24   both 'parties' despite such conflict of interest prohibitions on lawyers.   Defendant

25   Johnson is an 'at-will' employee working effectively solely for Defendant Courtney.

26   Defendant Johnson theoretically works for the Legislative Counsel Committee, which if

Page 7 -   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    it ever meets, is merely a rubber stamp from Defendant Courtney, whom serves as the

2    committee co-chair, hence, solely approves all agendas and motions.  The Plaintiff served

3    on the Legislative Counsel Committee until recently.    Defendant Johnson is named in

4    multiple state and federal lawsuits for wrongful termination, employee harassment, and

5    whistleblowing retribution.  Defendant Johnson is named negatively in the Bureau of

6    Labor & Industries sexual harassment complaint against the Oregon State Senate settled

7    by Defendant Courtney in January 2019 for $1.3 million.  The Plaintiff has an active

8    Oregon State Bar ethics complaint against Defendant Johnson.    Plaintiff Johnson's

9    official legislative address is 900 Court St. NE, S-101, Salem, Oregon 97301.

10        21.    Defendant Knieling.  Defendant Jessica Knieling is the interim Human

11   Resources Director serving since March 2019 having been hired by Defendant Courtney.

12   The prior Human Resources Director supposedly retired as part of the BOLI sexual

13   harassment settlement waiving her right to sue for age discrimination, however,

14   according to public records from the Oregon Department of Administrative Service, both

15   the old director and new interim director remain on the legislative payroll at

16   approximately $12-13,000 per month.  Defendant Knieling has systematically blocked

17   legislative member employee personnel actions, blocked pay equity review requests,

18   denied public records requests claiming the records do not exist, and is virtually unknown

19   in the Oregon State Capitol.  The Plaintiff has never met Defendant Knieling in person,

20   and could not pick her out of a crowd.  Defendant Knieling's official legislative address

21   is 900 Court Street NE, Room 140A, Salem, Oregon 97338.

22        22.    Defendant Baumgart.  Defendant Brenda Baumgart is one of two contract

23   investigator hired as part of the sexual harassment settlement with BOLI until an

24   independent office can be established for handling employee and citizen complaints.

25   Defendant Baumgart works directly for Defendant Knieling and Defendant Johnson per

26   the available public records in direct violation of the BOLI settlement agreement signed

Page 8 -    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  by Defendant Courtney in January 2019.    All are 'at-will' employees or contractors

2  which Defendant Courtney being the senior appointing authority.    Defendant Baumgart is

3  an active member of the Oregon State Bar # 992160.    The Plaintiff has seen Defendant

4  Baumgart once at a hearing on July 8, 2019.    The Plaintiff has never spoken to Defendant

5  Baumgart.    The Plaintiff exchanged several emails in April 2019 with Defendant

6  Baumgart in regard to other employee harassment concerns raised by employees fearing

7  retribution, for which the Plaintiff forwarded Defendant Baumgart's contact information

8  to legislative employees.    Defendant Baumgart's effective official legislative address is

9  900 Court Street NE, Salem, Oregon 97301.

10

11                          **<u>Allegations Common to All Claims</u>**

12         23.      On August 17, 2018, the Plaintiff, as a member of leadership at the time of

13  the Senate sexual harassment scandal in August 2018, Plaintiff attended a meeting in law

14  offices in Portland in which a cover up plan to block the release of documents to the

15  Bureau of Labor & Industries was outlined by another elected official.    Six elected

16  legislators were present including but not limited to the Plaintiff, Defendant Senator

17  Courtney, Defendant Courtney's Chief of Staff, Defendant Dexter Johnson, and

18  Defendant Kneeling's immediate supervisor, Daron Hill, the Legislative Administration

19  Director, and at-will employee under Defendant Courtney.    Plaintiff is in possession of

20  certain records, despite a Multnomah County Court order, that relate to female employee

21  abuse that were in fact not turned over to BOLI per the court order.    The Defendant

22  Courtney, Defendant Johnson, and Defendant Knieling, and other unnamed individuals,

23  are involved in standing ongoing civil and court complaints by the Plaintiff.    In regard to

24  the meeting of August 17, 2018, and other conflicts of interest, the Plaintiff has a formal

25  Oregon State Bar complaint in process against Defendant Dexter Johnson.    Oregon State

26  Bar CAO Intake LDD 1900351.

Page 9 -    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      24.    As a result of the August 17, 2018 meeting, the Plaintiff became aware of

2    certain facts Plaintiff thought previously false.    Defendant Courtney and Defendant

3    Johnson, and other non-named individuals in this lawsuit are named with prejudice in the

4    BOLI report STEMSH180801-11138 dated January 3, 2019.  The settlement cost the

5    public $1.3 million-dollars, plus legal fees of outside Counsel, for which, it came out of

6    the legislative budget though unappropriated.  It was ineligible for payment by the risk

7    fund.  The legality of the non-appropriated expenditure remains in question as the check

8    was issued on instructions of the Defendant without a legal appropriation per outside

9    legislative lawyers.  The Plaintiff has formal ongoing requests with BOLI to acquire the

10   list of aiders and abettors, if not perpetrators, that were protected, and remain in the

11   Oregon State Capitol, unknown to public employees.

12     25.    Prior to August 2018, to build and maintain civil relations, the Plaintiff and

13   Defendant Senate President Peter Courtney met routinely at Ike's Coffee Shop near the

14   Oregon State Capitol, sometimes nearly weakly.  The Plaintiff and Defendant Courtney

15   attend the same Catholic Church in Salem Oregon, the same weekly Mass on Saturday

16   evenings, and sit across the aisle on opposite sides.  Both have routinely discussed their

17   catholic religious faith believing in Heaven, Purgatory, and Hell.   Those discussions

18   included the fear of Defendant Courtney that a certain Deacon, or Priest, will deny him

19   communion, if not excommunicate him, damning him to Hell for eternity.   Defendant

20   Courtney's political positions are certainly counter to Catholic Doctrine.   The weekly

21   Mass recited Penitential Act   says we are held accountable for our "thoughts and in my

22   words, in what I have done and in what I have failed to do." Catholic Doctrine also says

23   to call out the sinner.  That most of the majority in the Oregon State Senate are atheists,

24   or do not believe in religion, does not eliminate the fact the Senate observes daily

25   opening prayers, and some members actually believe in Hell and Damnation.  Until such

26   time prayers and religion are banned in the Oregon State Senate, both the Plaintiff, and

Page 10 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    the Defendants, have a full First Amendment right to practice their faith.  Defendant

2    Courtney certainly knows these Catholic tenants as does the Plaintiff.

3        26.    In early December 2018, the Plaintiff was advised by two unnamed

4    legislative employees there was a 'leadership' policy to delete public records after a

5    request was made if the request did not ask specifically ask for deleted records.  This was

6    documented in writing, and shared with select members of the media.  The Plaintiff

7    believes an immediate injunctive order is required to prevent the destruction of public

8    records relating to this lawsuit

9        27.    The Plaintiff filed numerous public records requests and complaints in

10   regard to the failed legislative pay equity analysis on behalf of over 100 employees.  The

11   failed pay equity implementation was overseen by Defendant Senator Courtney, his Chief

12   of Staff, and Defendant Kneiling's predecessor, whom is still on the legislative payroll.

13   Those public records requests continue to be stalled, or blocked by the Defendant Dexter

14   Johnson of Legislative Counsel, and Defendant Jessica Knieling, the interim HR Director

15   in Employee Services.  These commenced in September 2018 continuing until today.

16   They include but are not limited to LCs 7644, 7650, 7657, 8002 (11 Jan 19), 8017, 8002

17   (12 Feb 19), 8017, 8026, 8045, 8047, 8049, 7668, 8000, 8002 (3 Jul 19), 8004, and 8005.

18   See Exhibit 3.

19       28.    In March 3, 2019, the Plaintiff filed a formal complaint and censor motion

20   that is in the Senate record against Defendant State Senator Peter Courtney.  By rule, if

21   not law, the complaint should have been processed, investigated, and acted upon, either

22   way.  Theoretically, the same process the Senate Special Conduct Committee should have

23   followed in regard to the Plaintiff.  Senate Resolution 1 was formally filed as a censure

24   resolution, drafted by Defendant Johnson, which by rule and or law, should have gone to

25   the Senate Conduct Committee, but was instead sent by Defendant Courtney to the

26   Senate Rules Committee to block any investigation of himself.  This was allegedly done

Page 11 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    based on the legal advice of Defendant Johnson of Legislative Counsel Office.    Two

2    other majority State Senators participated in the blocking of the formal complaint.    The

3    court should note a formal complaint in the Legislature requires four components, none

4    of which were applied to in the actions against the Plaintiff in the ongoing secret

5    investigation.

6        29.    The Plaintiff was subpoenaed and deposed, and is a hostile witness against

7    the Defendant Johnson, and actions of Legislative Counsel, and Employee Services now

8    overseen by Defendant Knieling, and under the direct appointing authority of Defendant

9    Courtney, in a current pending case before the courts.    Several of the Defendants remain

10    named in multiple other pending cases before the court for which the Plaintiff would be a

11    hostile witness.

12        30.    During April, May and June 2019,  the Plaintiff requested a variety of legal

13    opinions and position papers on the authority of the Oregon State Senate President and

14    Governor of Oregon to fine, arrest, physically detain, and imprison elected State Senators

15    to provide a quorum as Defendant Courtney and Defendant Johnson, along with State

16    Senator Ginny Burdick, the majority leader, claimed they could do with the Oregon State

17    Police.    This documentation was freely shared with the media, and communicated to the

18    Superintendent of the Oregon State Police.    On at least three occasions, the Plaintiff

19    provided every State Senator a copy of the Justia Opinion Summary and Annotations

20    for *Bond v. Floyd, 385 U.S. 116 (1966)* which clearly states a legislator does not

21    surrender any constitutional rights under the law.    The Plaintiff spoke to the same on the

22    Floor of the State Senate numerous times.

23        31.    During the period of May 7-12, 2019, the twelve (12) living minority

24    members walked out of the Oregon State Senate in constitutional protest.    During this

25    time period, Defendant Courtney, majority leader State Senator Ginny Burdick, and other

26    majority State Senators, routinely insinuated or stated they could fine minority Senators,

Page 12 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  and order the Oregon State Police to find, arrest, physically detain, and imprison minority

2  legislators if they so decided.  The media statements were "If you walk out again we will

3  have you in leg irons, handcuffs, chained to your desk in an orange jumper suits."

4      32.      On June 19, 2019, the Plaintiff carried a Minority Report on SB 761 on the

5  Floor of the Senate.  There is eight (8) minutes of debate led by the Plaintiff on the

6  Minority Report.  There is twenty-eighty (28) minutes of debate on the main bill, for

7  which, the Plaintiff is five (5) minutes of that debate.  SB 761 as passed by the majority,

8  without a single vote from the minority, is intended to aid in blocking the ability of the

9  citizens of Oregon to exercise their initiative and referral rights under the Oregon

10  Constitution.  It is the elected opinion of the Plaintiff, so stated on the Floor as

11  constitutionally allowed, SB 761 combined with other majority actions, is a de facto

12  attempted political coup against the citizens of Oregon in direct opposition to Oregon and

13  United States Constitution.  This opinion is supported by evidence in the public record of

14  the Floor of the State Senate from the Oregon Secretary of State.  The Plaintiff did out of

15  more than thirteen (13) minutes of free speech, comprised no doubt of thousands of

16  words, tell Defendant Courtney "Mr. President, and if you send the state police to get me,

17  Hell's coming to visit you personally."  The Plaintiff, a fellow practicing Catholic with

18  Defendant Courtney, does in fact believe President Courtney's soul is completely lost

19  now.  The Plaintiff, and all the majority Senators, know full well those in their own

20  caucus, in the 2018 Oregon Primary election, routinely sent hostile protesters to the home

21  and doorstep of their fellow State Senator Rod Monroe, making Rod and Billy Monroe's

22  life a living Hell on this own property.  That Defendant Courtney should not have

23  expected equal treatment by protesters making his life a living Hell is an undisputable

24  historical fact now.  As a direct result of Defendant Courtney's request for the arrest by

25  physical force and internment of minority State Senators, the protest impact was

26  worldwide.  Twice Defendant Courtney closed or refused legislative Session days at the

Page 13 - COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Oregon State Senate to avoid citizens lawfully protesting their grievance's to the
2    government and legislature as guaranteed under both the Oregon and United States
3    Constitutions: June 22, 2019 and June 27, 2019. Plaintiff notes some majority Senators
4    on the Floor appeared offended, and Defendant Courtney did ask members to show
5    decorum, and Plaintiff did apologize personally to Defendant Courtney in the debate.

6        33.    On June 20, 2019, the minority rural members of the Oregon State Senate
7    left the Oregon State Capitol in protest to the actions of the majority members of the
8    Oregon State Senate, and the Governor of the State of Oregon. Most minority members
9    departed the State of Oregon on June 19, 2019 remaining gone until June 29, 2019. The
10    Plaintiff remained on his personal property from June 19-22, 2019 in constant
11    communications with his official office and official duties representing over 130,000
12    citizens in Senate District 12. Plaintiff has every reason to believe the Oregon State
13    Police knew the Plaintiff's location, and knew the 'arrest' order was illegal, therefore,
14    never attempted the Plaintiff's arrest. After daily conference calls, it was apparent no
15    agreement would be reached between the minority and majority, the Plaintiff left the
16    State of Oregon for other purposes, but remained in constant communications in his
17    elected functioning capacity as a State Senator. Daily telephonic briefings outlined the
18    intended use of force by the Oregon State Police, the alleged involvement of the Federal
19    Bureau of Investigation, and search for minority members exercising their constitutional
20    protest rights. Press releases of Defendant Courtney, his peer majority Senators, and the
21    Governor all publicly support these intentions of arrest without judicial process. The
22    minority left in constitutional protest based on the violation of a written agreement to
23    work together signed by Defendant Courtney and the Governor of the State of Oregon.

24        34.    On June 20, 2019, the majority State Senators lacking a constitutional
25    quorum with no due process voted on the Floor of the Oregon State Senate to fine the
26    Plaintiff, and all minority Senators, $500 per day for being absent, and directed Plaintiff

Page 14 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Courtney to ask the Governor of Oregon to have the Oregon State Police find, arrest by
2    force, and falsely imprison minority members who had committed no crime nor faced any
3    Judicial action by state and federal courts.  Defendant Courtney's letter to the Governor,
4    on legal advice from Defendant Johnson, to 'compel' minority members using the
5    Oregon State Police is a matter of public record.  Defendant Johnson wrote lengthy legal
6    opinions justifying the violation of the Plaintiff's, and other minority members, rights
7    under the Oregon and United States Constitution.  Any continued reliance of Defendant
8    Johnson, and any counsel for the Governor, by their tradition claim of non-judicial arrest
9    authority under *Kilbourn v Thompson, 103 U.S. 168 (1880)* is completely erroneous as
10   the case included extensive due processes matching that of the courts and ORS 171.510
11   completely absent in this matter before the court.

12       35.     An agreement, pledging no retribution, was reached between Defendant
13   Courtney and minority leader State Senator Herman Baertschiger, and the Governor, led
14   to the return of minority State Senators on June 29, 2019 to complete the constitutional
15   functions of the legislative Session.  The Plaintiff due to transportation issues did not
16   arrive back to the Oregon State Capitol until Saturday afternoon July 29, 2019.  First,
17   Plaintiff attended Conference Committee Hearing followed by a pre-Floor caucus
18   meeting.  After the minority caucus meeting, Senator Herman Baertschiger asked to
19   speak with the Plaintiff in regard to possible sine die or the end of the legislative Session
20   that evening.  As part of that plan, which would effectively kill dozens of bad bills the
21   Plaintiff believed would hurt the citizens of Senate District 12, the Plaintiff agreed not to
22   go to the Floor of the State Senate that evening.  That plan or effort to Sine Die on June
23   29, 2019 failed.

24       36.     On June 30, 2019, the last day of the regular legislative Session, the
25   Plaintiff attended the opening and running Floor Sessions of the Oregon State Senate
26   fulfilling the Plaintiff's routine duties as a citizen legislator.  On the afternoon of June 30,

Page 15 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    2019, the Speaker Pro Tem State Senator Laurie MonnesAnderson asked the Plaintiff to

2    help with one of their members of the majority caucus:  State Senator Sarah Gelser.  The

3    Plaintiff whom normally does not attend the last three bills of any legislative Session, as

4    they are purely 'horse trading' and 'pork' bills done in exchange for votes and rewards,

5    the Plaintiff agreed he would not attend this Session ending either.  Hence, this would

6    according to the Speaker Pro Tem allow Senator Gelser to vote as apparently, she was in

7    hiding or something in Secretary of the Senate's conference room.  Exactly why was

8    never explained.

9        37.    On Sunday, June 30, 2019, midafternoon, the Plaintiff had been directly

10    informed by a majority Oregon State Senator that they attended one or more majority

11    caucus meetings attended by Defendant Courtney, Defendant Prozanski, and Defendant

12    Manning in which a systematic plan was outlined to violate the Plaintiff's civil and

13    constitutional rights for political purposes.

14        38.    On Sunday, June 30, 2019, in the early morning, the Plaintiff had learned a

15    second majority Oregon State Senator was claiming they had attended one or more

16    majority caucus meetings attended by Defendant Courtney, Defendant Prozanski, and

17    Defendant Manning in which a systematic plan was outlined to violate the Plaintiff's civil

18    and constitutional rights for political purposes.  This included efforts to attempt to find a

19    'friendly' political state Judge to issue a restraining order but this effort failed.  This

20    evidence in the federal courtroom will not be hearsay.

21        39.    Plaintiff has since been contacted by as third majority Oregon State Senator

22    confirming they too attended one or more majority caucus meetings attended by

23    Defendant Courtney, Defendant Prozanski, and Defendant Manning in which a

24    systematic plan was outlined to violate the Plaintiff's civil and constitutional rights for

25    political purposes.

26

Page 16 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      40.    On Sunday, June 30, 2019, late in the afternoon, Defendant Oregon State

2  Senator Floyd Prozanski came to the Plaintiff's State Senator office on the last day of

3  legislative session.  Defendant Prozanski informed the Plaintiff that a Senate Conduct

4  Committee would meet on July 8, 2019 to consider a Legislative Rule 27 complaint to

5  potentially censure and bar the Plaintiff from the Oregon State Capitol.  Oregon State

6  Senate committees operate under the authority and permission of Defendant Senator

7  Courtney.  Defendant Senator Prozanski referenced threating activities that allegedly

8  occurred on June 19, 2019 per Defendant Brenda Baumgart of Stoel Rives LLP, the

9  contract investigator.  Defendant Baumgart allegedly issued a then one-page letter titled

10  'Senator  Brian  Boquist/Interim  Finding  &  Recommendations.'  Defendant  Senator

11  Prozanski provided a second page, a draft agenda for the scheduled public hearing on

12  Monday, July 8, 2019. Defendant Senator Prozanski provided a third page titled

13  'Legislative  Administration,  Interim  Findings  and  Recommendations.'    Defendant

14  Senator Prozanski informed the Plaintiff he knew nothing else other than the three pages

15  but would get back to the Plaintiff with details.  Plaintiff pointed out to Defendant

16  Senator Prozanski that the Plaintiff had heard news reports and rumors, but, the Plaintiff

17  had received absolutely nothing officially on this alleged complaint or investigation,

18  despite the requirement under state and federal due process, and the stated Personnel Rule

19  27, there were over a dozen legal steps required before he, Defendant Prozanski, received

20  the report from Defendant Knieling, the interim Human Resources Director, and

21  Defendant Baumgart, contract investigator.  Clearly, none had transpired.  Defendant

22  Senator Prozanski stated he would attempt to find out himself, as he only knew about

23  what was in the file he handed me containing three one-sided pages. Defendant Senator

24  Prozanski was very polite and professional but simply stated that he knew virtually

25  nothing at that time as the Chairman of the Senate Conduct Committee.  At the time, the

26

Page 17 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Plaintiff did not believe Defendant Senator Prozanski was is in possession of any more
2   documents than myself.

3       41.    The Senate Special Committee on Conduct agenda provided to the Plaintiff
4   by Defendant Prozanski, approved by Defendant Courtney, called a 'Public Hearing and
5   Possible Work Session' on July 8, 2019 at 9:00 am stating 'Invited testimony only'
6   'Consideration of Interim Findings and Recommendations from Outside Counsel Related
7   to Senator Boquist." June 30, 2019 was the first time the Plaintiff had seen the agenda.

8       42.    The one-page letter or memorandum from Defendant Knieling, referencing
9   it was a joint effort with Defendant Johnson, was given to the Plaintiff by Defendant
10  Prozanski at this meeting on June 30, 2019.  The memo dated June 25, 2019 titled 'RE:
11  Interim Finding and Recommendation" was from Defendant Knieling to Defendants
12  Courtney and Defendant Prozanski with four other addressees.   The memo from
13  Defendant Knieling claims it is "in response to numerous Rule 27 reports and complaints
14  related to Senator Boquist."  Later on July 3, 2019, Defendant Knieling would contradict
15  this statement in writing via Legislative Counsel writing no complaints had been filed
16  either informal or formal.   At the public hearing on July 8, 2019, Defendant Knieling
17  refused to testify placing Defendant Baumgart before the hearing whom would say she
18  had no informal or formal complaints in her possession either.  This again is contradicted
19  later.   The memo recommended the Plaintiff "Senator Boquist be removed from the
20  workplace to mitigate risk during the pendency of the remainder of the investigation."
21  June 30, 2019 is the first time the Plaintiff read this letter.   No Defendant prior to
22  Defendant Prozanski ever contacted or spoke to the Plaintiff.  The Plaintiff has to this
23  filing date never spoken to Defendant Knieling, or the originator of the 'Interim Finding
24  and Recommendation' Defendant Baumgart.  Nor has the Plaintiff to this filing date ever
25  corresponded with Defendant Knieling or Defendant Baumgart in regard to this secret
26

1    investigation the Defendants had, have, and are executing in coordination with all the
2    named Defendants.

3        43.    The last one-page letter or memorandum Defendant Prozanski provided the
4    Plaintiff was from Defendant Baumgart of Stoel Rives LLP to Defendant Knieling and
5    Defendant Johnson.    The Plaintiff noted immediately both Defendant Johnson and
6    Defendant Knieling were not supposed to be involved in any investigations per the BOLI
7    settlement.    Further, the Plaintiff noted legal conflicts of interest with all three
8    Defendant's named in the Stoel Rives LLP letter titled 'Senator Brian Boquist/Interim
9    Findings & Recommendations." Defendant Baumgart wrote she has been assigned to
10   handle matters related to Senator Boquist with "one of the categories of report to both
11   Members and staff raising concerns about Senator Boquist's comments on the Senate
12   Floor on Wednesday, June 19, 2019, and subsequent media comments." Defendant
13   Baumgart claims to have "reviewed (and watched) these public statements." Later in the
14   public hearing on July 8, 2019, Defendant Baumgart claims in the public record she made
15   her recommendations purely on media reports. Defendant Baumgart is a member of the
16   Oregon State Bar and a practicing lawyer whom the Plaintiff assumed knew state and
17   federal evidentiary rules. Defendant Baumgart wrote fifteen (15) extracted words in her
18   memo out of thirteen (13) minutes of the Plaintiff's constitutionally protected Floor
19   debate argument including the illegality of Defendant Courtney, and his per majority
20   Senators, of threating the arrest of minority State Senators. Defendant Baumgart wrote
21   thirty-two (32) words from a fifteen (15) minute interview taped in front of a dozen
22   witnesses by Pat Dooris of KGW News.    For the record, Dick Hughes a freelance
23   professional journalist has at least fifteen (15) more minutes of taped interviews too.  All
24   the media involved possess multiple prior emails and releases outlining the illegalities of
25   the then proposed arrest actions of Defendant Courtney and the Governor of the State of
26   Oregon.  And an arrest motion so voted upon by 100% of the majority members of the

Page 19 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Oregon State Senate while lacking legal quorum. This includes at least thirty-one (31)
2   pages of legal documents. The Plaintiff fully grasps the media under *New York Times v.*
3   *Sullivan* has full free press to cherry pick, edit, and sensationalize reporting to sell and
4   publish stories. Defendant Baumgart as a practicing attorney under the auspices of the
5   Oregon State Bar has a legal duty as an officer of the court to perform due diligence
6   verses gross malfeasance. Defendant Baumgart's memo recommends denying the
7   Plaintiff access to the Oregon State Capitol with zero legal due process regardless of
8   constitutional questions. Nor does Defendant Baumgart's memo explain who
9   contractually ordered her, using public funds to conduct a secret investigation of an
10  Oregon State Senator, which she freely admits commenced before June 19, 2019 before
11  the alleged statements in her report.

12      44.    On July 1, 2019, the next day, the Plaintiff filed a sixteen (16) item public
13  records request to Defendant Jessica Knieling of Employee Services under the
14  Legislative Administration, and her contract investigator, Defendant Brenda Baumgart of
15  Stoel Rives LLP, and Cameron Miles, the public records lawyer, in Legislative Counsel.

16      45.    Between July 1, and July 2, 2019, it became apparent to the Plaintiff, there
17  had been zero due process, and if any real legal due process existed, it had been taken by
18  legally conflicted staff, and conflicted Oregon State Senators, conflicted under both state
19  and federal laws. Plaintiff did learn the so-called 'Stoel Rives' report had been generated
20  or issued to someone, on June 25, 2019, before or after, it was intentionally leaked to the
21  media. Despite the Plaintiff having received nothing official, the media coverage of was
22  quite spectacular based on the leaked letter authored by Defendant Baumgart of Stoel
23  Rives LLP on the alleged complaints, and threats fanned by other majority legislators,
24  majority staff, and the media. Media and social media reporting of these events was, and
25  is, worldwide. Plaintiff's family received multiple death threats; formal cases were
26  opened with law enforcement. Plaintiff neighbors reported late night prowlers. Both

Page 20 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Plaintiff, and Plaintiff staff, have been threatened based on the complete failure of due

2    process and blockage of public records even as of this filing.

3        46.    On July 2, 2019, at 10:53 am, Defendant Senator Prozanski sent the

4    Plaintiff an update of his understating of the situation.   Quite polite and professional.

5    Plaintiff Senator Prozanski's new, or clarified, understanding was there was not a

6    complaint at all.  Neither informal or formal.  It was a report generated, again without due

7    process, theoretically based on edited news media reports and videos, and input of some

8    sort from a news reporter who had interviewed me in public with more than a dozen

9    witnesses.  This was unconfirmed, and the Plaintiff believes incorrect.  After the Plaintiff

10   received the update, it was clear that zero due process had existed, and that very clearly a

11   large stack of public records existed someplace, as the news media had records on the

12   25th, contacts had been met, interviews conducted, illegal investigations conducted even

13   before August 19, 2019 by Defendant Baumgart, consultations transpired, telephonic

14   records created,   caucus meetings held, a hearing scheduled, committee members

15   consulted, creating the whole endangering situation. Plaintiff resubmitted the same public

16   records request to Defendant Senator Prozanski, Cameron Miles of Legislative Counsel,

17   Lorey Freeman the Deputy Chief Legislative Counsel, as Defendant Dexter Johnson, the

18   formal Legislative Counsel, has a stack of legal conflicts of interest with the Plaintiff.

19   Plaintiff copied Ginger McCall, the State of Oregon public records ombudsman, and

20   Paige Clarkson the Marion County District Attorney, as at the time, the Plaintiff thought

21   the District Attorney could legally assist in getting public records.  This was in error, as

22   statutorily the Oregon Attorney General was supposed to assist in a citizen's access to

23   public records.  The Plaintiff provided the same public records request to the Oregon

24   State Police and Marion County Sheriff's Office as they are the law enforcement

25   agencies with jurisdiction.

26

Page 21 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1      47.    Defendant Senator Prozanski later confirmed in an email a modified

2  version of paragraph above, but yet again had no details.  Defendant Senator Prozanski

3  did clarify his understanding was there was no informal or formal complaint, and the

4  term 'reporter' was a news reporter.  Plaintiff clearly stated in writing this looked like

5  political retribution coupled with a complete failure of due process that was endangering

6  the lives of the Plaintiff's family.  Defendant Prozanski claimed due process was being

7  followed citing some unknown legal source.  Defendant Senator Prozanski would later

8  inform the Plaintiff, his assertion, it was an Oregonian newspaper Reporter who was

9  reporting concerns, but it was and is unclear, if the said Reporter was really involved, and

10  the Plaintiff consider this hearsay, but reference was made to a threatening email thus

11  documents existed, or rumored to exist.  Plaintiff did have several email correspondences,

12  totaling over thirty (30) pages of legal arguments on matters in this case, with the said

13  reporter, who authored a story Defendant Senator Prozanski officially posted into the

14  legislative record.  The Plaintiff copied the Marion County District Attorney on the very

15  same email the reporter received.  Plaintiff suggested the said Reporter contact the

16  District Attorney reference the legalities of false arrest, especially using illegal force, as

17  the Governor, Senate President (Defendant), Senate Majority Leader conveyed to Senate

18  Republicans.  The same Reporter was already in possession of a stack of legal documents

19  regarding the criminal implications of illegal arrests outside the state courts, and false

20  imprisonment on the federal side.  As were dozens of other reporters and members of the

21  legislature in possession of the same legal documents.  Given the now cross border law

22  enforcement hunt as confirmed in a Governor's press release, federal criminal charges

23  could influence an illegal arrest attempt now, which, was confirmed in a Plaintiff's

24  discussion with federal authorities.

25      48.    On July 3, 2019, the Plaintiff paid to the Oregon State Senate, via

26  Defendant Courtney, the $3500 fine levied by majority members, lacking quorum, or due

1    process, on June 20, 2019 against all absent minority members. The Plaintiff paid the

2    requested fine to establish standing in state and federal courts to challenge the legality of

3    the use of fines to compel attendance to the State Senate. The Plaintiff recognizes that

4    should a Legislative body have legally established, through due process, with legal

5    quorum a policy, rule or law to enact such fines, it might be constitutional. However, no

6    such due process was undertaken by the Defendants and their majority peers in the

7    Oregon State Senate.

8        49.    On July 3, 2019 at 1:43 pm, Cameron Miles of Legislative Counsel

9    provided the public records response, LC 8000, from Defendant Jessica Knieling of

10    Employee Services. Zero public records were provided based on the sixteen (16) point

11    request of July 1, 2019. Instead, a three-page Word document was provided with

12    mumble jumble and excuses and back peddling allegedly authored by Defendant Jessica

13    Knieling. Defendant Baumgart's original 'Interim Findings & Recommendations" stated

14    "these statements have caused Members and Branch employees to report concerns" and

15    "Reports are people are fearful and scared to come to work." However, the public record

16    request reply did not identify a single individual filing any report, instead, it was based on

17    heavily edited media publications. This contradicted previous information provided to

18    the Plaintiff. There is no author or identity on the three-page unresponsive document the

19    Plaintiff received instead of the requested public records. It is noted Mr. Miles is the

20    legal processor for public records request possessing no compulsory authority to force the

21    production of records.

22        50.    The Plaintiff was never provided any notice of whom was invited to the

23    Senate Special Committee on Conduct including the Plaintiff himself. The agenda

24    approved by Defendant Courtney, and provided by Defendant Prozanski to the Plaintiff,

25    simply stated there would be a hearing on July 8, 2019 at 9:00 am with invited testimony

26    only. No information other than stated in this court filing was provided to the Plaintiff.

1        51.    Prior to the so-called public 'conduct' hearing, the Plaintiff had entered into

2   the legislative record on July 8, 2019, the flowing statement by Superintendent Travis

3   Hampton of the Oregon State Police written on July 1, 2019:

4                  "To the best of my knowledge, the OSP is not in possession of
                    requested documents.  I have not had any contact with the
5                    referenced law firm or their representative.  Additionally, the
                    OSP has not initiated any criminal investigation into the
6                    referenced conduct and have not forwarded any reports to the
                    MCDA on the matter.  The documents you provided are the only
7                    physical source of material, other than what I have viewed in the
                    media."
8

9        52.    On July 16, 2019, Captain Tim Fox of the Oregon State Police, in the

10  absence of the Superintendent, in response to Defendants Baumgart's assertions in the

11  July 8, 2019 public hearing stated "I am not aware of any formal assessment."  This in

12  regard to Defendant Baumgart's assertion of Oregon State Police actions against the

13  Plaintiff.

14        53.    Prior to the so-called public hearing, the Plaintiff had entered into the

15  legislative record on July 8, 2019, the following statement by the Honorable Paige

16  Clarkson, Marion County District Attorney with jurisdiction over the Oregon State

17  Capitol written on July 2, 2019:

18                  "I have reviewed the emails you have sent to me and confirmed
19                    that my office has not been involved in the review of any official
                    criminal reports regarding these recent matters.  We do not have
20                    any reports from any law enforcement agency nor was I made
                    aware of any report from Stoel Rives until I read about it in the
21                    press."

22

23        54.    Prior to the so-called public hearing, the Plaintiff had entered into the

24  legislative record on July 8, 2019, the following statement by the Sheriff Joe Kast,

25  Marion County Sheriff, additional with jurisdiction over the Oregon State Capitol in

26  Marion County written on July 4, 2019:

Page 24 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2  "I have received your request dated July 1, 2019, asking if the
   Marion County Sheriff's Office is in possession of a criminal
3  complaint or report regarding the Stoel Rives letter that you
   attached.  To the best of my knowledge, the Marion County
4  Sheriff's Office is not in possession of any such documents."

5

6  55.    Failing to receive any information or due process from the Defendants, the

7  Plaintiff filed a public records access appeal with the Oregon Department of Justice on

8  July 4, 2019 under Oregon law.  Plaintiff got no action prior to the so-called conduct

9  hearing.  On July 12, 2019, the Plaintiff was advised by the Attorney General, a majority

10 party member, would not assist.  The Plaintiff expected this reply.  On July 19, 2019, a

11 letter was sent to the Plaintiff, that the Oregon Department of Justice would be

12 representing State Senator Peter Courtney in his effort to block the release of public

13 records.

14 56.    On July 5, 2019, the Plaintiff anticipating no public records or due process

15 would be forthcoming, and Legislative Counsel would hide behind Senate President Peter

16 Courtney's status to block the release public records related to the secret investigation

17 and nearly a dozen other denied records requests, the Plaintiff filed a public records

18 access motion with the Marion County Circuit Court Case No. 19CV29374.  This state

19 court case is purely for access to public records that every citizen should be able to

20 access.  It is filed under Oregon Revised Statutes 182.427 and ORS 192.411.  This case

21 covers some records that might be discoverable under this filing but is much wider.

22 ODOJ will represent State Senator Peter Courtney in an effort to block the release of

23 damaging public records.

24 57.    On July 8, 2019, the Plaintiff attended the so-called hearing of the Senate

25 Special Committee on Conduct with his wife, daughter and son with over 100 citizens in

26 attendance.  Defendant Senator Prozanski displayed nothing but contempt to the citizens

Page 25 - COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   attending the alleged hearing.  Defendant Senator Prozanski was completely unclear as to
2   the intent or authority of the 'committee' stating it was not having a hearing to adjudicate
3   anything but instead receive the 'report' from Defendant Knieling and Defendant
4   Baumgart.  Defendant Senator Prozanski was not even sure whom was going to speak as
5   Defendant Knieling refused to speak instead delegating to Defendant Baumgart, the
6   contract investigator, to present to the so-called non-adjudicating committee which in fact
7   did adjudicate per the public record.  Defendant Senator Prozanski claimed the committee
8   would make recommendations to some unknown and unstated entity.

9       58.    Defendant Baumgart claimed in the public hearing on July 8, 2019 she
10  possessed no reports or complaints herself.  Some unknown person had contacted her to
11  initiate an investigation sometime before August 19, 2019 of the Plaintiff.  Defendant
12  Baumgart claimed she based her June 25, 2019 solely on reviewing news media reports.
13  Defendant Baumgart claimed she did not contact the Plaintiff as it was early in her
14  ongoing investigation.  Defendant Baumgart claimed her job was to protect the brand of
15  the Legislature from lawsuits and workers compensation complaints by employees.
16  Defendant Baumgart claimed she was not a constitutional lawyer so could not address
17  free speech issues of a legislator let alone a citizen coming to the Oregon State Capitol.
18  Defendant Baumgart claimed as an employment lawyer she stood by her
19  recommendation to deny access to the Oregon State Capitol to the Plaintiff even though
20  the Plaintiff was an elected Oregon State Senator

21      59.    Defendant Senator Manning initially accused the two minority members of
22  the Senate Special Committee on Conduct of colluding and communicating with the
23  Plaintiff to obstruct the nonpartisan nature of the so-called conduct committee.  Both
24  stated on the record they had not spoken to the Plaintiff.  Defendant Manning is alleged
25  by three of his own caucus members of conspiring to violate the rights of the Plaintiff,
26  exactly as he accused minority committee members of doing so in public.  Defendant

Page 26 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Manning in the hearing stated he had "many many" complaints and concerns from
2    employees including another Senator who was texting him during the hearing itself.
3    Defendant Manning could provide zero names of complainants. Defendant Manning
4    lamented on and on about the mental capacity and state of the Plaintiff. Defendant
5    Manning is on the public record as calling minority members of the Oregon State Senate
6    terrorists. Defendant Manning was at the time of the hearing the subject of a complaint
7    from a minority homosexual staff member he verbally attacked twice on the Floor of the
8    Oregon State Senate. The Plaintiff challenged Defendant Manning in a procedural
9    inquiry on the Floor of the State Senate in regard to the afore mentioned verbal attack.
10   Defendant Manning filed employment complaints against the minority protected class
11   employee with Defendant Kneiling's assistance. The Plaintiff is fully aware of three
12   ongoing conduct complaints against Defendant Manning. Defendant Manning's actions
13   against legislative employees after the conduct hearing of July 8, 2019 are the subject of
14   two formal complaints: one state and one federal.

15       60.      Defendant Dexter Johnson, Legislative Counsel, did not attend the public
16   hearing on July 8, 2019. Defendant Johnson is named as legally reviewing all the actions
17   in the Defendant Knieling memo. Defendant Johnson is the chief if not sole legal counsel
18   in his own opinion in the Oregon State Senate as Defendant Courtney routinely refers to
19   Defendant Johnson as his personal law firm. Defendant Johnson has personally authored
20   all the Plaintiff's known legal opinions promoting the fining, arresting, physical force and
21   imprisonment authority exposed by Defendant Courtney despite his own legal conflicts
22   of interest with the Plaintiff. Defendant Prozanski in the same hearing told other
23   committee members if they wanted constitutional opinions on his actions or the
24   committee's powers, they as individual legislators could seek such opinions from
25   Defendant Johnson. The Plaintiff does have multiple complaints in progress against
26   Defendant Johnson. Defendant Baumgart did claim Defendant Johnson was not

Page 27 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  supposed to be involved with complaints and investigations due to the BOLI settlement
2  signed by Defendant Courtney, but none-the-less, his direct involvement is documented
3  in writing.

4      61.    The Plaintiff as the subject of the July 8, 2019 employment or conduct
5  hearing, not even knowing if the Plaintiff would be invited to speak, the Plaintiff simply
6  prepared a written statement.  Attached for the court.  As the Plaintiff filed in Marion
7  County Circuit Court for the public records regarding the secret investigation, the
8  Plaintiff believed any hearing statement may have been detrimental due to the complete
9  absence of due process.  The Plaintiff had no clue of the public record, alleged complaint,
10  available documentation, or intent of the majority members of the committee, other than
11  to violate the Plaintiff's civil and constitutional rights.  The Plaintiff thanked the Oregon
12  State Troopers for their service and professionalism.  The Plaintiff remains on very good
13  terms with the Troopers of the Oregon State Police.  The Plaintiff thanked the 'at-will'
14  staff of the legislative Branch in the face of the continued abuse and retribution displayed
15  or tolerated by the Defendants for political purposes.  Then informed the Senate Special
16  Committee on Conduct the matter should be settled in a court of law.

17      62.    The Senate Special Committee on Conduct took nearly an hour break
18  apparently for Defendant Prozanski to consult and confirm with someone outside of the
19  hearing.  Reconvening Defendant Prozanski and Defendant Manning attempted to move a
20  series of motions that Defendant Prozanski claimed were prepared by some unknown
21  'staff' for the committee.  The actual motions were not made public either in advance or
22  after the hearing.  The two minority member State Senators were not provided the
23  motions in advance either.  The committee deadlocked.  To break the deadlock, and not
24  remain for hours and hours, a motion to 'recommend' the Plaintiff announce visits to his
25  own office to the Secretary of the Senate twelve (12) hours in advance, and the Secretary
26  of the Senate direct the Oregon State Police to increase their presence in the Oregon State

Page 28 - COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Capitol when the Plaintiff visited his own daily office was agreed upon.  Note the

2    Legislature does have a policy and rule that all amendments must be in writing but this

3    was ignored.  The 'committee' possess no authority what-so-ever to order anything of

4    this sort.  The Secretary of the Senate, an effective at-will employee of Defendant

5    Courtney in the Legislative Branch, has no authority to direct a law enforcement agency

6    of the Executive Branch to do anything either.  Likewise, the actions of the Oregon State

7    Police to take unilateral action against any citizen, let alone an elected Oregon State

8    Senator, without criminal or judicial authority, smacks of abuse of power, violation of

9    civil rights, and more constitutional provisions than can be cited.

10          63.     The members appointed to the Senate Special Committee on Conduct as

11   appointed by Defendant Courtney is in legal question.  One version of committee

12   documents related to this matter list the membership as Defendant Senator Floyd

13   Prozanski, Defendant Senator James Manning, Senator Tim Knopp (Minority Member)

14   and Senator Kim Thatcher (Minority Member).   Another version of committee

15   documents lists Defendant Senator Floyd Prozanski, Defendant Senator James Manning,

16   Senator Tim Knopp (Minority Member) and Senator Alan Olsen (Minority Member)

17   whom were present on July 8, 2019.   Yet another version of the committee documents

18   related to this matter signed by Defendant Senator Floyd Prozanski lists Defendant

19   Senator James Manning, Senator Laurie MonnesAnderson the Speaker Pro Temp, and

20   Senator Alan Olsen (Minority Member).  The Plaintiff notes that no legislative committee

21   has the power to legally block any citizens access to the Oregon State Capitol as no rule,

22   policy, law or constitutional document exists, and no such lawful order exists from the

23   Judiciary at this time.

24          64.     On July 8, 2019, after the so-called public hearing at approximately 3:36

25   pm the media wrote the following in regard to the Plaintiff, State Senator Brian Boquist:

26

Page 29 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    "Just asked Courtney's office. They said the recommendations
     take effect immediately, to wit:

2    --You are to notify the Secretary of the Senate 12 hours in
     advance of your being in the Capitol, so OSP can beef up its
3    presence (to reassure people that all is safe, as I interpret it. It's
     not to follow you around, etc.).
4
     --You are not to retaliate against anyone regarding these issues.
5
     Despite Manning's repeated efforts, and some by Prozanski, the
6    committee did not rule that your comments constituted threats."

7    65.    On July 9, 2019, Defendant Floyd Prozanski, Chairman of the Senate

8    Special Committee on Conduct of the 80th Legislative Session, which has legally ended

9    June 30, 2019, using letterhead listing the wrong membership, after stating the committee

10   had no adjudication authority, directed the Plaintiff to the comply with the following:

11
     "If you plan to be in the Capitol during the pendency of the
12   ongoing investigation, please provide such notice to the Secretary
     of the Senate as required in the approved motion."
13
     "A. Require Sen. Boquist to give at least 12 hours advance notice
14   in writing to the Secretary of the Senate if he intends to be in the
     Capitol; and,
15
     B. While Sen. Boquist is at the Capitol, there will be increased
16   Oregon State Police presence."

17
     66.    The letter penned by Defendant Prozanski independently and outside the
18
     limited authority of even the questionable authority of the Senate Special Committee on
19
     Conduct does not represent the actions or debate of the committee members in the public
20
     hearing.  The correspondence signed by Defendants Prozanski is a direct violations of the
21
     Plaintiff's civil and constitutional rights.
22
     67.    On July 9, 2019, Defendant Floyd Prozanski, Chairman of the Senate
23
     Special Committee on Conduct of the 80th Legislative Session, sent virtually the same
24
     letter to the Secretary of the Senate but listing different committee members, essentially
25
     directing the Secretary, an at-will employee of Defendant Courtney, to so direct the
26

Page 30 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Oregon State Police, an executive agency, and so inform every employee of the
2   Legislative Branch each day the Plaintiff visits his own legal offices in the Oregon State
3   Capitol. The Plaintiff alleges the Secretary of the Senate is further violating his civil and
4   constitutional rights each time such a notice is emailed effectively worldwide. However,
5   the Secretary of the Senate would face immediate retribution and termination from
6   Defendant Courtney along with the likely loss of her $15,000 per month at-will
7   employment if she failed to comply. Defendant Johnson has legally sustained the
8   unilateral termination of the Clerk of the House by the Speaker of the House in recent
9   history which is the mirror position of the Secretary of the Senate.

10       68.    On July 9, 2019, the Plaintiff, and his wife, met with Superintendent Travis
11   Hampton and Lieutenant Doug Shugart of the Oregon State Police in their offices in the
12   Oregon State Capitol. The Superintendent stated his understanding from the hearing
13   tapes was the Plaintiff was not to enter the Oregon State Capitol without twelve (12)
14   hours' notice to the Orgon State Police and the Secretary of the Senate. To protect the
15   Oregon State Police contract with the Legislative Assembly, that was his marching
16   orders. The Plaintiff's understanding was that Lieutenant Shugart would attempt to be in
17   the Capitol when the Plaintiff was present. The Plaintiff fully alleges this is an illegal
18   abuse of power and utilization, without due process, or juridical authority, and a flagrant
19   violation of both the Oregon and United States Constitution.

20       69.    The Capitol Unit of the Oregon State Police (OSP) is effectively an 'at-
21   will' entity that can be dissolved or eliminated by Defendant Courtney as it is a contract
22   law enforcement entity. The approximately twelve (12) Troopers, two (2) Sergeants, and
23   one (1) Lieutenant are funded under a contract with the Legislative Assembly to provide
24   law enforcement support to the Oregon State Capitol. The OSP contract is expanded
25   during legislative Sessions by the addition of up to six (6) OSP retirees. The Plaintiff
26   was substantially involved in the expansion of this contract. If the contract is cancelled

1    by the Presiding Officers, Defendant Courtney being one, the Troopers are effectively
2    terminated as their positions and funding are solely dependent upon the contract. The
3    Oregon State Police have a similar contact for law enforcement with Oregon State
4    University.

5         70.    On July 23, 2019, the Plaintiff received limited redacted and altered public
6    records from the Defendants via Legislative Counsel under the direction of Defendant
7    Johnson.   Most of the requested public records were missing.   Defendant Johnson
8    attempted to claim Oregon Revised Statute exemptions that will not be allowed in a court
9    of law. What records were released clearly show a coordinated intentional effort by the
10   Defendants to violate the Plaintiff's civil and constitutional rights.

11        71.    The Plaintiff, and the Plaintiff alleges the Defendants know, the actions of
12   the Defendants have been reported worldwide in the media and social media to millions
13   and millions of people.  One social media outlet alone has over 800,000 reads of the
14   actions of Defendants against the Plaintiff.  The Plaintiff and office have received well
15   over one thousand emails, calls, and contacts with some approximately 80% supportive,
16   many of the remainder are threatening.  The damage to the Plaintiff is irreputable and
17   permanent.  The Oregon State Police and Polk County Sheriff's Office have publicly
18   stated they are investigating threats against the Plaintiff, his family, his employees, and
19   even his cow, all based on the actions of the Defendants, which the Plaintiff alleges are
20   unconstitutional actions by the Defendants.

21        72.    On July 12, 2019, the Oregon Department of Justice, Attorney General,
22   issued a letter to the Plaintiff refusing to assist in the acquisition of public records related
23   to this case prior to the Plaintiff's filing of this lawsuit.  Plaintiff had requested the
24   Attorney General's assistance under ORS 192.311 to 192.478 in an effort to establish a
25   minimal due process on July 5, 2019.

26

Page 32 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    73.    July 19, 2019, the Oregon Department of Justice, Attorney General, issued

2    a letter to the Plaintiff appointing legal counsel to defend Defendant Courtney in *Brian*

3    *Boquist v. State Senator Peter Courtney* in the Marion County Circuit Court Case No

4    19CV29374.    The case is purely a motion to force the disclosure of public records

5    previously requested under Oregon law.

6    74.    For the court's edification, the Oregon State Senate consists of thirty (30)

7    independently elected Senators each representing approximately 130,000 citizens.    The

8    entire workforce in the legislative Branch exists at-will to support the thirty (30) State

9    Senators, and sixty (60) State Representatives.    Historically, at founding formation, each

10    Chamber, Senate and House, provided its own internal staff from within its own ranks.

11    Elected Senators worked at their own desks performing nearly the entire legislative

12    process themselves.    Only in recent history have the Presiding Officers hired large

13    numbers of at-will staff that are nearly entirely beholding to the Presiding Officers for

14    employment.

15    75.    Plaintiff notes for the court that a 'compel' process was adopted by the

16    Legislative Assembly in the past in the form of Oregon Revised Statute 171.510

17    'Legislative process to compel attendance and production of papers.'    The process

18    requires service nearly identical to the Oregon courts by the 'sergeant-at-arms" with a ten

19    (10) day reply.    Failure to comply is covered by a report to the District Attorney in the

20    offending county under ORS 171.520 titled 'Reporting violations of ORS 171.510.'

21    Enforcement of 'compel' in Oregon is covered under ORS 171.522 'Judicial enforcement

22    of legislative process.'    ORS 171.522 requires adjudication in a Circuit Court of the State

23    of Oregon.    Certainly, no such process was followed by any of the named Defendants nor

24    their peer majority State Senators.    The Oregon State Senate certainly could have

25    propagated and passed such a law establishing due process in the past if it intended to

26

Page 33 - COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  'compel' members by arrest, physical retrieval and imprisonment, the same as it could

2  have established a statutory framework for fines too.

3      76.    Article IV Section 12 of the Oregon Constitution of 1859 establishes a two-

4  thirds quorum requirement for the conduct of business by the respective chamber. The 1st

5  and 5th Amendments of the United States Constitution at time of the Oregon adoption

6  thus supersede any argument Defendants possess to ignore them. Oregon ratified the 14th

7  Amendment of the United States Constitution on September 19, 1866, and then rescinded

8  its ratification on October 15, 1868. None-the-less, Oregon is ironically compelled itself

9  to abide by the 14th Amendment of United States Constitution.

10     77.    Article X-A of the Oregon Constitution was created through H.J.R. 7, 2011,

11  and adopted by the people Nov. 6, 2012. The Plaintiff was the Co-Chief Sponsor of this

12  legislation and adoption. The voters of the State clearly establish a process in which less

13  than two-thirds of elected members could conduct business in an emergency. Section 1

14  establishes nine (9) emergencies, but is not limited, in which the Governor could declare

15  a catastrophic emergency thereby eliminating the two-thirds quorum. The Governor, at

16  the request of Defendant Courtney, took no such action, but instead ordered the arrest,

17  physical seizure, and imprisonment of legally protesting minority State Senators in direct

18  violation of their civil and constitutional rights.

19     78.    Nothing prevents the supermajority of the majority party from proposing

20  changes to the Oregon Constitution that provides for quorum changes in either chamber

21  of the Legislature. In the meantime, both the Oregon and United States Constitution

22  prohibited them from actions they took against the Plaintiff initially, in retribution, and in

23  an attempt at political gain. The damages done by the Defendants against the Plaintiff are

24  irreparable.

25     79.    The Plaintiff would be remiss it if failed to identify to the Court the third

26  critical United States Supreme Court case. No doubt, the future taxpayer paid state

Page 34 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   counsel for the Defendants will attempt a legal defense hide behind cherry picked words

2   out of middle sentence of *Kilbourn v. Thompson, 103 U.S. 168 (1880) 190.*  In fact,

3   Plaintiff argues *Kilbourne v. Thompson* fully supports this Legislator's right to complete

4   unfettered debate and free speech, but further, in whole, establishes the required for a

5   legislative House to establish  due process in advance of any action, requiring such a

6   House to act as whole not less than a quorum, or a mere committee less than that of the

7   whole of the House is insufficient. *Kilbourne* supports the request by the Plaintiff for an

8   immediate injunctive restraining order against the Defendants as requested in Reliefs.

9        80.    The Plaintiff fully alleges the Defendants have and are operating

10  completely outside the legal authority of the Oregon State Senate, Legislative Assembly,

11  and State of Oregon.  Therefore, it is the contention of the Plaintiff that all the Defendants

12  are in effect rogue characters under the law whom do not and cannot be considered acting

13  or representing the Oregon State Senate, Legislative Assembly, or State of Oregon in any

14  manner what-so-ever.

15                          **FIRST REQUEST FOR RELIEF**

16                  **Free Unfettered Access to the Oregon State Capitol**

17                          **(Temporary Restraining Order)**

18       81.    Plaintiff requests an immediate ex parte   temporary restraining order

19  against the Capitol Unit of the Oregon State Police and Secretary of the Senate located at

20  900 Court Street NE, Salem Oregon 97301 allowing the Plaintiff free unfettered access to

21  Plaintiff's office and entirety of the Oregon State Capitol pending the outcome of the case

22  before the Portland Division of the District of Oregon in the United States District Court.

23                          **SECOND REQUST FOR RELIEF**

24           **Cease & Desist of Secret Investigation and Proceedings**

25                          **(Temporary Restraining Order)**

26

Page 35 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    82.    Plaintiff requests an immediate temporary restraining order against all the

2    named Defendants located at 900 Court Street NW, Salem, Oregon 97301 to cease and

3    desist their secret investigation and alleged proceedings against the Plaintiff, and bring

4    before the federal court their investigation and complaints under the law for adjudication

5    in this case before the Portland Division of the District of Oregon in the United States

6    District Court.

7    83.    Furthermore, the Plaintiff requests the Court direct the Defendants, via a

8    Motion to Compel Discovery, to immediately release all records of this case and matter

9    to the Plaintiff as they have already refused such release, and altered documents, the

10    Plaintiff has reason to believe Defendants systematically destroy public records, and the

11    publicly available audio and video of the July 8, 2019 hearing has been removed from

12    direct hearing link on the Oregon Legislative Information System.

13

14                        **THIRD REQUEST FOR RELIEF**

15                  **Investigation of State Senator Unconstitutional**

16                              **(Injunctive Relief)**

17    84.    Plaintiff requests the Court find the actions of the Defendants in initiating

18    and conducting an investigation without due process in regard to free speech, and yet to

19    be determined reasons, against the Plaintiff violated the Plaintiff's First, Fifth, and

20    Fourteenth Amendment rights, and peer Oregonian Constitution rights, hence, should

21    cease and desist in their actions forth whit and forever in regard to the matter brought

22    before the federal court in this case.

23    85.    Furthermore, the Plaintiff requests the Court amplify the rights of the

24    Plaintiff, an elected Oregon State Senator, to free speech on the Floor of the Oregon State

25    Senate and Oregon State Capitol, the right of the Plaintiff to the religious beliefs in an

26    equal manner to all beliefs on the Floor of the Oregon State Senate and Oregon State

Page 36 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Capitol, and the right of the Plaintiff to freely assemble with his constituents to hear

2    grievances their grievances and represent them in the Oregon State Capitol.

3

4                            **FOURTH REQUEST FOR RELIEF**

5              **Violation of First Amendment in the Oregon State Senate**

6                            **(Declaratory Judgment)**

7         86.    Plaintiff requests the Court issue a declaratory judgement that elected

8    Oregon State Senators, the Plaintiff, are to be accorded full and open free speech rights

9    on the Floor of the Oregon State Senate equal those of any citizen elsewhere, without

10   regulation, in accordance with the United States Supreme Court ruling in *Bond v. Floyd,*

11   *385 U.S. 116 (1966)* **"(b) The State may not apply to a legislator a First Amendment**

12   **standard stricter than that applicable to a private citizen. Pp. 385 U. S. 132-133."**

13        87.    And furthermore, the Oregon State Senate may not regulate free and open

14   debate on the Floor of the Oregon State Senate in accordance with the United States

15   Supreme Court ruling in cited in *Bond v. Floyd* from *New York Times Co. v. Sullivan, 376*

16   *U.S. 254 (1964)* in which **"[D]ebate on public issues should be uninhibited, robust,**

17   **and wide-open."** New York Times v. Sullivan, 376 U. S. 254, 376 U. S. 270. Pp. 385 U.

18   S. 135-136."

19        88.    And furthermore, the Plaintiff requests the Court to the clarify the Oregon

20   State Senate may not undertake a 'civil' process of law of its own against a State Senator

21   under Article IC Section 9 of the Oregon Constitution which states "Senators in all cases

22   …""shall not be subject to any civil process during the session of the Legislative

23   Assembly."

24        89.    And furthermore, the Plaintiff requests the Court to use examples in this

25   case to amplify the intent of the declaratory judgement as to clarify any constitutional

26   conflicts.

1

2                          **FIFTH REQUEST FOR RELIEF**

3              **Violation of the Fifth and Fourteenth Amendment Due Process**

4                              **(Declaratory Judgement)**

5          90.     Plaintiff requests the Court issue a declaratory judgement that Oregon State

6   Senators, the Plaintiff, do not surrender in any manner their full due process rights under

7   the Fifth and Fourteenth Amendment of the United States Constitution upon election to

8   the Oregon Legislature regardless of any local or body or state rule, statute or clause in

9   the Oregon Constitution.

10         91.     And furthermore, the Plaintiff requests the Court to use examples in this

11  court case to amplify the intent of the declaratory judgement.

12

13                          **SIXTH REQUEST FOR RELIEF**

14                      **Free from Fine without Due Process**

15                              **(Declaratory Judgement)**

16         92.     Plaintiff requests the Court issue a declaratory judgement that Oregon State

17  Senators, the Plaintiff, cannot be fined monetarily for absence or missing quorum without

18  full due process under state and federal laws and constitutions.

19         93.     Furthermore, such due process under the 5th and 14th Amendments of the

20  United States Constitution must be adopted by rule or legislated into law in the regular

21  manner of a bill or law with full quorum of the Oregon State Senate in advance of any

22  such absence, and be fully appealable to the courts of law for adjudication under the state

23  and federal Judiciary.

24

25                          **SEVENTH REQUEST FOR RELIEF**

26                      **Free from Arrest without Due Process**

1          **(Declaratory Judgement)**

2          94.     Plaintiff requests the Court issue a declaratory judgement that Oregon State

3    Senators, the Plaintiff, cannot be arrested, detained or imprisoned for an absence in the

4    legislature, or failing to arrive for quorum, without full due process and adjudication

5    before a court of law, and only upon the issuance of a lawful order or warrant from a

6    Judge acting in their official capacity as a Judge in an Oregon or United States Court

7    pursuant to the United States Constitution.

8          95.     Furthermore, the Plaintiff requests the Court clarify Oregon State Senators

9    are in fact free from arrest pursuant to Oregon Constitution, Article IV, Section 9.

10   "Legislators free from arrest and not subject to civil process in certain cases; words

11   uttered in debate, Senators and Representatives in all cases, except for treason, felony, or

12   breaches of the peace, shall be privileged from arrest during the session of the Legislative

13   Assembly, and in going to and returning from the same" in that specifically being absent

14   for quorum does not constitute a 'breach of peace" under the Oregon Constitution.

15

16                    **EIGHTH REQUEST FOR RELIEF**

17         **Definition of Compel under the Oregon State Constitution**

18                    **(Declaratory Judgement)**

19         96.     Plaintiff requests the Court issue a declaratory judgement on the legal

20   definition, meaning, and judicial authority allowed by the word "compel" cited in in

21   Article 4, Section 12 of the Oregon Constitution which states in part "Two thirds of each

22   house shall constitute a quorum to do business, but a smaller number may meet; adjourn

23   from day to day, and 'compel' the attendance of absent members."

24         97.     Furthermore, the Plaintiff requests the Court use examples in this court case

25   to amplify the intent of the declaratory judgement, or practical examples to provide future

26

1    guidance to elected legislators on the application of the word "compel" in this
2    constitutional setting.

3                                   **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiff prays for judgment and an order against each Defendant:

5         1.    Setting aside the unlawful actions of the Defendants;

6         2.    For declaratory relief per the relief requests setting forth the rights of the
7    Plaintiff under First Amendment, Fifth Amendment, and the Fourteenth Amendment to
8    the United States Constitution, and Oregon Constitution;

9         3.    For injunctive relief per the relief requests enjoining Defendants from
10   violating Plaintiff's rights under the First Amendment, Fifth Amendment, and fourteenth
11   Amendment to the United States Constitution, and Oregon Constitution;

12        4.    For fees, costs, and interest, as authorized by law; and

13        5.    Any other relief the Court deems just and proper.

14

15   DATED:    July 26, 2019

16                          Respectfully submitted by,

17                          BRIAN J. BOQUIST

18

19                          By:

20

21                          Brian J. Boquist

22                          17080 Butler Hill Road

23                          Dallas, Oregon 97338

24                          Phone: 503-623-7663

25                          Email: boquist@aol.com

26

Page 40 -  COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF