**Brian J. Boquist**
17080 Butler Hill Road
Dallas, Oregon 97338
Phone: 503-623-7663
Email: boquist@aol.com

# ORGINAL FILING ATTACHMENT #1
# 26 July 2019

## Case No. ___6:19-cv-01163-MC___

# COMPLAINT FOR DECLARATORY AND
# INJUNCTIVE RELIEF

# 36 Pages

1

DocuSign Envelope ID: 4CEC3DBA-AF7D-40FA-9FA0-495BEF3A5029

Chair:
  Sen. Floyd Prozanski

Staff:
  Brett Hanes, LPRO Interim Director
  Patsy Wood, Assistant

Members:
  Sen. James Manning, Jr.
  Sen. Laurie Monnes Anderson
  Sen. Alan Olsen



80th LEGISLATIVE ASSEMBLY
SENATE SPECIAL COMMITTEE ON CONDUCT
State Capitol
900 Court St. NE, Rm. 453
Salem, OR 97301
503-986-1515
FAX 503-986-0545

July 9, 2019

Senator Boquist,

As you know, the Special Committee on Conduct met yesterday to consider the interim finding and recommendation of outside counsel, Brenda Baumgart, dated June 25, 2019. The Committee wants to thank you for attending and providing it with your written statement.

During the work session, the committee discussed the interim finding and recommendation and what measures would be sufficient to ensure that the branch is taking prompt, remedial, and effective steps to ensure that during the pendency of the investigation we are doing everything we can to ensure that employees, members, lobbyists, the public (anyone who is involved in this situation in any way— reporter, formal complainant, or witness) will not be subjected to ongoing or additional threats of violence, actual violence, intimidation, or a hostile work environment.

To this end, the following recommendation was made and unanimously supported by the members of the Senate Special Committee on Conduct:

I recommend modifying the recommendation of outside counsel based on new information and testimony as follows:

A. Require Sen. Boquist to give at least 12 hours advance notice in writing to the Secretary of the Senate if he intends to be at the Capitol; and

B. While Sen. Boquist is at the Capitol, there be an increased Oregon State Police presence.

I further recommend that Sen. Boquist be advised that applicable law and Rule 27 prohibit him from engaging in any retaliation against any employee or member who may have brought forward or reported concerns. And that Sen. Boquist is to refrain from any action of retaliation against any person who participates in the process.

Accordingly, if you plan to be at the Capitol during the pendency of the ongoing investigation, please provide such notice to the Secretary of the Senate as required in the approved motion. Further, you are advised to refrain from any action of retaliation against any person who participates in this process.

Thank you for your cooperation in this matter.

Sincerely,
DocuSigned by:

*F. Prozanski*

Sen. Floyd Prozanski, Chair



Chair:
  Sen. Floyd Prozanski

Staff:
  Brett Hanes, LPRO Interim Director
  Patsy Wood, Assistant

Members:
  Sen. James Manning, Jr.
  Sen. Tim Knopp
  Sen. Alan Olsen



80th LEGISLATIVE ASSEMBLY
SENATE SPECIAL COMMITTEE ON CONDUCT
State Capitol
900 Court St. NE, Rm. 453
Salem, OR 97301
503-986-1515
FAX 503-986-0545

July 9, 2019

Madame Secretary of the Senate,

The Special Committee on Conduct has met and submits the following report:

On July 8, 2019, the Senate Special Committee on Conduct met to consider the interim finding and recommendation from outside counsel related to Sen. Boquist. The outside counsel reviewed public statements made by Senator Boquist and subsequent reports from both Members and legislative staff raising concerns for the safety and well-being of themselves and others and that they had been subjected to an intimidating and/or hostile work environment as a result of Senator Boquist's comments on the Senate floor on Wednesday, June 19, 2019, and subsequent media comments.

Today, the committee discussed the interim finding and recommendation and what measures would be sufficient to ensure that the branch is taking prompt, remedial, and effective steps to ensure that during the pendency of the investigation we are doing everything we can to ensure that employees, members, lobbyists, the public (anyone who is involved in this situation in any way—reporter, formal complainant, or witness) will not be subjected to ongoing or additional threats of violence, actual violence, intimidation, or a hostile work environment.

To this end, the following recommendation was made and unanimously supported by the Senate Special Committee on Conduct:

> I recommend modifying the recommendation of outside counsel based on new information and testimony as follows:
> A. Require Sen. Boquist to give at least 12 hours advance notice in writing to the Secretary of the Senate if he intends to be at the Capitol; and
> B. While Sen. Boquist is at the Capitol, there be an increased Oregon State Police presence.
> I further recommend that Sen. Boquist be advised that applicable law and Rule 27 prohibit him from engaging in any retaliation against any employee or member who may have brought forward or reported concerns. And that Sen. Boquist is to refrain from any action of retaliation against any person who participates in the process.

Respectfully submitted,

F. Prozanski
3FCA36DF3F924C0...
Sen. Floyd Prozanski, Chair

3

## Sen Boquist

| | |
|---|---|
| **From:** | Senate Conduct Committee |
| **Sent:** | Tuesday, July 23, 2019 10:40 AM |
| **To:** | - Legislative Policy and Research Office; - Legislative Revenue; - Members House Staff; - Members Senate Staff; - Secretary of Senate's Office; - Secretary of State's Office; - Senate Democratic Office; - Senate President's Office; - Senate Republican Office; - State Capitol Police; - State Representatives; - State Senators; - State Treasurer's Office; - Visitor Services |
| **Subject:** | FW: Senator Boquist |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

**From:** Brocker Lori L
**Sent:** Tuesday, July 23, 2019 9:54 AM
**To:** Senate Conduct Committee <Senate.ConductCommittee@oregonlegislature.gov>
**Subject:** Senator Boquist

Senator Boquist has indicated he plans to be in the Capitol this afternoon – July 23, 2019.

4

Staff:
Brett Hanes, LPRO Director
Patsy Wood, Committee Assistant



Members:
Sen. Floyd Prozanski, Chair
Sen. Tim Knopp
Sen. James Manning Jr.
Sen. Kim Thatcher

# SENATE SPECIAL COMMITTEE ON CONDUCT

Oregon State Capitol
900 Court Street NE, Room 453, Salem, Oregon 97301
Phone: 503-986-1515
Email: scon.exhibits@oregonlegislature.gov

## AGENDA

## MONDAY

Date:   **July 8, 2019**
Time:   **9:00 A.M.**
Room:   **HR B**

**Organizational Meeting**
   Adoption of Committee Rules

**Public Hearing and Possible Work Session**
   *Invited testimony only*
      Consideration of Interim Finding and Recommendation from Outside Counsel Related to Sen. Boquist

**Send materials or presentations to the email at the top of the agenda 24 hours in advance of the meeting date. All submissions will be posted and made public on the Oregon Legislative Information System (OLIS).**

 **LEGISLATIVE ADMINISTRATION**

June 25, 2019

TO: Senate President Courtney
Senator Baertschiger, Senate Republican Leader
Senator Prozanski, Chair Senate Conduct Committee
Senator Knopp, Senate Conduct Committee
Senator Manning Jr., Senate Conduct Committee
Senator Thatcher, Senate Conduct Committee

FROM: Jessica Knieling, Interim HR Director

RE: Interim Finding and Recommendation

Senators,

Today, Legislative Counsel, Dexter Johnson and I received a memo from an outside counsel with an interim finding and recommendation in response to numerous Rule 27 reports and complaints related to Senator Boquist.

The independent investigator issued a finding of a Rule 27 violation by Senator Boquist. The independent investigator further recommended Senator Boquist be removed from the workplace to mitigate risk during the pendency of the remainder of the investigation and advised that applicable law and Rule 27 prohibit him from engaging in retaliation.

Today I spoke with Senator Baertschiger as the highest ranking member of the caucus and advised him of the report and the recommendation. I inquired as to whether there was an opportunity for voluntary compliance. He did not see an opportunity to request voluntary compliance. I advised him I would be forwarding to the Presiding Officer as well as the Senate Conduct Committee.

The independent investigator, Legislative Counsel and Legislative Administration have no authority to implement the independent investigator's recommendations to ensure employees are safe and the threats will not be carried out or incite others to violence. My understanding is that only the full senate can undertake any such action. As such I am providing the interim finding and recommendation to you for your consideration and action.





# CONFIDENTIAL MEMORANDUM

June 25, 2019

TO:      JESSICA KNIELING, INTERIM HR DIRECTOR
             DEXTER JOHNSON, LEGISLATIVE COUNSEL

FROM:   BRENDA K. BAUMGART

RE:      Senator Brian Boquist/Interim Finding & Recommendations

---

As you know, I have been assigned to handle numerous Rule 27 matters related to Senator Brian Boquist. One of the categories of reports pertains to both Members and staff raising concerns about Senator Boquist's comments on the Senate floor on Wednesday, June 19, 2019, and subsequent media comments. I have reviewed (and watched) these public statements made by Senator Boquist, which include in relevant part:

- A statement on the Senate floor directed to President Courtney: "If you send the State Police to get me, hell is coming to visit you personally."

- A statement to the media directed to the Oregon State Police, "I am quotable, so here is the quote...Send bachelors and come heavily armed. I am not going to be a political prisoner in the State of Oregon, it's just that simple." https://twitter.com/PatDooris/status/1141464157574684673

Senator Boquist's statements are public and irrefutable. On their face, they constitute credible threats of violence directed at the Senate President and the Oregon State Police. These threats of violence directly have caused Members and Branch employees to report concerns, including for the safety and well-being of themselves and others and that they have been subjected to an intimidating and/or hostile work environment. Reports are that people are fearful and scared to come to work. These reports are credible.

Accordingly, and given the gravity of the situation as it pertains to threats of violence in the workplace, I issue an Interim Finding that Senator Boquist's indisputable, public threats of violence violate Rule 27. I recommend immediate measures be taken to ensure that the Capitol is free from threats of (or actual) violence and intimidation. The customary and best practice is to not allow the person who has threatened violence to return to the workplace until the employer

7

**BRIAN J. BOQUIST**
**STATE SENATOR**
DISTRICT 12



## OREGON STATE SENATE

## Hearing Statement – July 8, 2019

Senator Prozanski, Senators and Citizens present,

First, let me thank the Oregon State Police Troopers for their service and professionalism over the past two months. Whether Kate Brown and/or Peter Courtney issued Troopers an illegal order will now be determined in a court of law.

Second, let me thank the at-will staff in the Legislative Assembly for there service and professionalism in the face of employee abuse, sexual harassment, and retribution that they have faced since last year due to the complete failure of Senate leadership.

Third, now to this alleged employment or political hearing today. Senator Prozanski was kind enough last Sunday to visit me in my Capitol office handing me three pages of what he knew at that time; a draft agenda, a letter signed by Ms. Baumgart of Stoel Rives LLP, and a memo signed by Ms. Knieling that identified Mr. Johnson as well. That is just about the total sum of due process or my knowledge of Senator Peter Courtney's intent of this proceeding. The formal public record outlines theses facts that will now be used in a court of law.

Fourth, last week my wife, staff, and I initiated formal complaints against the Oregon State Senate with the appropriate federal civil authorities.

Fifth, on Friday, I filed a lawsuit in civil court against the Honorable Peter Courtney, and many of those involved today, are listed in that lawsuit. That civil court action will be amended after this alleged hearing today. Appropriate legal service has been executed. I have asked the Oregon Department of Justice to provide myself, and the Court, the name of the Attorney who will represent the majority in the Oregon State Senate, or will the Attorney General recuse themselves from defending Senator Courtney as they have in past harassment complaints. All inquiries and questions regarding this political or employment matter, will be submitted through your Court recognized lawyer, from this point forward. We are now formally in a court of law.

Lastly, per the public record, for a long time, the OSP Superintendent, Marion County District Attorney, other District Attorneys, federal authorities, and other legal authorities, know full well I have offered full cooperation in any legal probable cause law enforcement action, any Judge ordered actions, and any civil matter. I look forward to seeing you all in a court of law.

Thank you.



## SENATE SPECIAL COMMITTEE ON CONDUCT

July 8, 2019 Hearing Room B
09:00 AM

STAFF PRESENT: Brett Hanes, LPRO Director

Patsy Wood, Administrative Supervisor
EXHIBITS: Exhibits from this meeting are available here
MEASURES/ISSUES: Organizational Meeting
Adoption of Committee Rules
Consideration of Interim Finding and Recommendation from
Outside Counsel Related to Sen. Boquist – Public Hearing
and Work Session

00:00:11 Meeting Called to Order
00:00:11 Chair Prozanski
00:05:32 Adoption of Committee Rules - Organizational Meeting
00:05:32 EXHIBIT 1: Chair Prozanski
00:05:54 MOTION: SEN. KNOPP MOVES ADOPTION OF COMMITTEE RULES
00:06:17 VOTE: 4-0-0

AYES: KNOPP, MANNING JR, OLSEN, PROZANSKI

00:06:23 Consideration of Interim Finding and Recommendation from Outside

Counsel Related to Sen. Boquist - Public Hearing

00:06:23 EXHIBITS 2-4: Chair Prozanski
00:07:13 EXHIBIT 5: Brenda Baumgart, Partner, Stoel Rives LLP
00:14:15 Sen. Manning Jr.
00:15:48 Sen. Knopp
00:18:55 Sen. Olsen
01:08:02 EXHIBITS 6-22: Sen. Brian Boquist, Senate District 12
01:12:09 Meeting Recessed
01:12:19 Meeting Reconvened
01:12:21 The following is submitted for the record without public testimony:

EXHIBIT 23: Ana Lunoux, resident, Portland
EXHIBIT 24: Andrew and Heather Wolski, affiliation unknown
EXHIBIT 25: Angela Roman, Candidate for Congress

MEMBERS PRESENT: Sen. Floyd Prozanski, Chair

Sen. Tim Knopp
Sen. James Manning Jr.

This recording log is in compliance with Senate and House Rules. For complete contents, refer to the digital audio recording.

EXHIBIT 26: Arnold Wardwell, affiliation unknown
EXHIBIT 27: Ashly Petty, resident
EXHIBIT 28: Austin and Tina Herman, affiliations unknown
EXHIBIT 29: Ayla Hofler, resident, Banks
EXHIBIT 30: bback, affiliation unknown
EXHIBIT 31: Benton County Democratic Central Committee Executive
Committee
EXHIBIT 32: Beth Schultz, resident, Roseburg
EXHIBIT 33: Bill Kluting, affiliation unknown
EXHIBIT 34: Bill Mason, resident, Milwaukie
EXHIBIT 35: Bill McKee, affiliation unknown
EXHIBIT 36: Bob Hamilton, affiliation unknown
EXHIBIT 37: Bob Sowdon, resident, Cottage Grove
EXHIBIT 38: Bonnie Saikkonen, resident, Newberg
EXHIBIT 39: Brett Hochstetler, affiliation unknown
EXHIBIT 40: Brittany Richardson, resident, Redmond
EXHIBIT 41: Brittany Ruiz, Constituent of Senator Boquist
EXHIBIT 42: Cara Tapken, affiliation unknown
EXHIBIT 43: Carol Pearson, resident, Benton County
EXHIBIT 44: Carolyn Webb, affiliation unknown
EXHIBIT 45: Catherine Tanzer, resident, Eugene
EXHIBIT 46: Chad Kernutt, resident, Albany
EXHIBIT 47: Cherrie and Rick Cornish, affiliation unknown
EXHIBIT 48: Chuck Currie, reverend, Forest Grove
EXHIBIT 49: Curt Swanson, affiliation unknown
EXHIBIT 50: David Potter, affiliation unknown
EXHIBIT 51: David Thorn, resident, Bend
EXHIBIT 52: Deborah Lee, resident, Bend
EXHIBIT 53: Derek M. Becker, affiliation unknown
EXHIBIT 54: Diana Gerding, resident, Winston
EXHIBIT 55: Dylan McKee, affiliation unknown
EXHIBIT 56: Elaine La Joie, affiliation unknown
EXHIBIT 57: Elaine Woods, resident, Beaverton
EXHIBIT 58: Elizabeth Folia, affiliation unknown
EXHIBIT 59: Eric and Adelia Hofeld, residents, Happy Valley
EXHIBIT 60: Erick Davis, affiliation unknown
EXHIBIT 61: Greg Brown, affiliation unknown

EXHIBIT 62: Harry Wallace, resident, Polk County
EXHIBIT 63: Helen Scott, resident, Josephine County
EXHIBIT 64: Ian Hannigan, resident, Portland
EXHIBIT 65: Irene Gilbert, resident, La Grande
EXHIBIT 66: Irene Hreha, affiliation unknown
EXHIBIT 67: Jamie Myers, affiliation unknown
EXHIBIT 68: Janet Turnidge, affiliation unknown
EXHIBIT 69: Jeanne Lisak, affiliation unknown
EXHIBIT 70: Jeanne Robinson, resident, Damascus

This recording log is in compliance with Senate and House Rules. For complete contents, refer to the digital audio recording.

EXHIBIT 71: Jen Hamaker, affiliation unknown
EXHIBIT 72: Jeremy Anderson, resident, Beaverton
EXHIBIT 73: Jessica Knieling, Interim Human Resource Director, Legislative Administration
EXHIBIT 74: Joe, affiliation unknown
EXHIBIT 75: John D. Trudel, citizen
EXHIBIT 76: John Duval, resident, Portland
EXHIBIT 77: John McGee, resident, Philomath
EXHIBIT 78: John Woods, affiliation unknown
EXHIBIT 79: Josey McKee, affiliation unknown
EXHIBIT 80: Karen Darnell, Delegate, Marion County Republicans
EXHIBIT 81: Kathy Irwin, Democrat, native Oregonian and a register voter
EXHIBIT 82: Kimberly Miller, affiliation unknown
EXHIBIT 83: Laurie Kimmell, Master Sargent, United States Air Force (retired)
EXHIBIT 84: Leanne Stoneberg, resident, Hillsboro
EXHIBIT 85: Lesli Lucier, resident, McMinnville
EXHIBITS 86-87: Lisa Crain, affiliation unknown
EXHIBIT 88: Liz Gale, farmer; 5th generation Oregonian; college graduate; tax payer, Dallas
EXHIBIT 89: Margo Logan, affiliation unknown
EXHIBIT 90: Marianne Clark, registered Republican, Clark County
EXHIBIT 91: Marina Orlando, affiliation unknown
EXHIBIT 92: Mark Hamilton, affiliation unknown
EXHIBIT 93: Mark Mason, affiliation unknown
EXHIBIT 94: Mark Ruhland, resident, Portland
EXHIBIT 95: Megan Stuck, affiliation unknown
EXHIBIT 96: Michael Elsberry, resident, McMinnville
EXHIBIT 97: Mike Schaer, resident, Coos Bay

11

EXHIBIT 98: Mindy K., resident
EXHIBIT 99: Daniel S. and Cathy C. Holtz, citizens
EXHIBIT 100: Paige E. Clarkson, District Attorney, Marion County
EXHIBIT 101: Pat Krikorian, resident, Southern Oregon
EXHIBIT 102: Patricia and Dan Duffy, residents, Cottage Grove
EXHIBIT 103: Peggy L. Boquist, State Employee, Legislative Branch
EXHIBIT 104: Peter Ringo, resident, Corvallis
EXHIBIT 105: Ralph Howell, resident, Medford
EXHIBIT 106: Rick Coufal, Colonel, United States Army (retired); Senior
Deputy Sheriff (retired), Multnomah County
EXHIBIT 107: Rob Wilson, resident, Sheridan
EXHIBIT 108: Robert Hamilton, resident, Philomath
EXHIBIT 109: Rose Fleming, citizen
EXHIBIT 110: Ruth A Martens, affiliation unknown
EXHIBIT 111: Sam Carpenter, Friends of Sam Carpenter
EXHIBIT 112: Sarah Boothe, affiliation unknown
EXHIBIT 113: Shannon Reilly, affiliation unknown

This recording log is in compliance with Senate and House Rules. For complete contents, refer to the digital audio recording.

EXHIBIT 114: skRts, affiliation unknown
EXHIBIT 115: Sonja Grabel, resident, Beaverton
EXHIBIT 116: Sophia Mekkers, affiliation unknown
EXHIBIT 117: Sue Larsen, affiliation unknown
EXHIBIT 118: Sue Swanton, affiliation unknown
EXHIBIT 119: Tammy Bennett, resident, Aumsville
EXHIBIT 120: Tkeisha and Jason Wydro, residents, McMinnville
EXHIBIT 121: Tom Cordier, resident, Albany
EXHIBIT 122: Travis Hampton, Superintendent, Oregon State Police
EXHIBIT 123: Trent Jorgensen, resident

01:12:28 Consideration of Interim Finding and Recommendation from Outside

Counsel Related to Sen. Boquist - Work Session

01:12:28 Chair Prozanski
01:14:55 Sen. Manning Jr.
01:18:44 Sen. Olsen
01:21:16 Sen. Knopp
01:34:51 MOTION: SEN. MANNING JR. RECOMMENDS THAT THE
THREATS MADE ON JUNE 19, 2019 WERE CREDIBLE AND SEN.

12

BOQUIST SHOULD VOLUNTARILY NOT ENTER THE CAPITOL, AS A
WORKPLACE, DURING THE PENDENCY OF THE INVESTIGATION
THAT IS ONGOING WITH THE REPORTS. IF SEN. BOQUIST FAILS TO
DO SO, ARRANGEMENTS MUST BE MADE WITH THE CAPITOL TO
ENSURE THAT WHILE HE IS IN THE BUILDING OTHER OCCUPANTS
ARE SAFE.
01:42:42 VOTE: 1-3-0
AYE: MANNING JR
NAYS: KNOPP, OLSEN, PROZANSKI

01:44:04 MOTION: SEN. OLSEN RECOMMENDS THAT SEN. BOQUIST BE
ADVISED THAT APPLICABLE LAW AND RULE 27 PROHIBIT HIM
FROM ENGAGING IN ANY RETALIATION AGAINST ANY EMPLOYEE
OR MEMBER WHO MAY HAVE BROUGHT FORWARD OR REPORTED
CONCERNS. AND THAT SEN. BOQUIST IS TO REFRAIN FROM
RETALIATION AGAINST ANY PERSON WHO PARTICIPATES IN THE
PROCESS.
01:47:34 VOTE: 2-2-0

AYES: KNOPP, OLSEN
NAYS: MANNING JR, PROZANSKI

01:47:47 MOTION: CHAIR PROZANSKI RECOMMENDS ACCEPTING THE
FINDINGS OF OUTSIDE COUNSEL THAT SEN. BOQUIST'S
STATEMENTS ON JUNE 19 CONSTITUTED CREDIBLE THREATS OF
VIOLENCE DIRECTED AT THE SENATE PRESIDENT AND OREGON
STATE POLICE. CHAIR PROZANSKI FURTHER RECOMMENDS
REJECTING THE RECOMMENDATION OF OUTSIDE COUNSEL
BASED ON NEW INFORMATION AND TESTIMONY CLARIFYING THAT
SEN. BOQUIST DOES NOT CURRENTLY POSE A THREAT TO THE

STAFF, PUBLIC, OR MEMBERS IN THE CAPITOL. CHAIR PROZANSKI
FURTHER RECOMMENDS THAT SEN. BOQUIST BE ADVISED THAT
APPLICABLE LAW AND RULE 27 PROHIBIT HIM FROM ENGAGING IN
ANY RETALIATION AGAINST ANY EMPLOYEE OR MEMBER WHO
MAY HAVE BROUGHT FORWARD OR REPORTED CONCERNS. AND
THAT SEN. BOQUIST IS TO REFRAIN FROM ANY ACTION OF
RETALIATION AGAINST ANY PERSON WHO PARTICIPATES IN THE
PROCESS.
01:56:08 VOTE: 2-2-0

AYES: MANNING JR, PROZANSKI

NAYS: KNOPP, OLSEN

01:56:35 MOTION: CHAIR PROZANSKI RECOMMENDS MODIFYING THE
RECOMMENDATION OF OUTSIDE COUNSEL BASED ON NEW
INFORMATION AND TESTIMONY AS FOLLOWS: REQUIRE SEN.
BOQUIST TO GIVE AT LEAST TWELVE HOURS ADVANCE NOTICE IN
WRITING TO THE SECRETARY OF THE SENATE IF HE INTENDS TO
BE AT THE CAPITOL AND AN INCREASED OREGON STATE POLICE
PRESENCE WHEN SEN. BOQUIST IS PRESENT. CHAIR PROZANSKI
RECOMMENDS THAT SEN. BOQUIST BE ADVISED THAT
APPLICABLE LAW AND RULE 27 PROHIBIT HIM FROM ENGAGING IN
ANY RETALIATION AGAINST ANY EMPLOYEE OR MEMBER WHO
MAY HAVE BROUGHT FORWARD OR REPORTED CONCERNS. AND
THAT SEN. BOQUIST IS TO REFRAIN FROM ANY ACTION OF
RETALIATION AGAINST ANY PERSON WHO PARTICIPATES IN THE
PROCESS.

02:07:23 Brenda Baumgart, Partner, Stoel Rives LLP
02:14:55 VOTE: 4-0-0

AYES: KNOPP, MANNING JR, OLSEN, PROZANSKI

02:16:09 Meeting Adjourned

This recording log is in compliance with Senate and House Rules. For complete contents, refer to
the digital audio recording.



**PETER COURTNEY**
President of the Senate

June 20, 2019

The Honorable Kate Brown
Governor of Oregon
900 Court Street NE
Salem, OR 97301

The Honorable Kate Brown:

I am requesting that you direct the Oregon State Police to assist the Senate for the purposes of establishing a quorum.

The Senate is unable to convene and conduct business because of a lack of a quorum. I have dispatched the Sergeant-at-Arms to locate absent senators per Senate Rule 3.55; the Sergeant-at-Arms has been unsuccessful.

Article IV, section 12 of the Oregon Constitution and Senate Rule 3.01(2) provides that the Senate can compel the attendance of absent members to establish a quorum. The Oregon Department of Justice advises that the Oregon State Police, at the direction of the Governor, may assist the Sergeant-at-Arms by returning absent members.

I am thankful to you and the Oregon State Police for helping the Oregon Legislature complete its constitutional responsibilities by ensuring that the legislative branch can continue to operate for the citizens of Oregon.

Respectfully,

Senator Peter Courtney
President of the Senate

cc:    Lori Brocker, Secretary of the Senate

15

# Governor Brown Authorizes State Police to Bring Back Senate Republicans - *06/20/19*

State Senators left the Salem area before various bills made it through our legislative process to a final vote. A bill cannot move forward to a vote without a quorum. The departure of the Senators leaves the Senate without the minimum number of members required to constitute a quorum, so the legislative process has stalled.

Consistent with the provisions in the Oregon Constitution, the Senate President requested the assistance of the Oregon State Police to bring Senators back to the capital to resume the legislative process. Consistent with her authority under Oregon law (ORS 181.050), the Governor has directed OSP to provide that assistance.

OSP has assisted in resolving a similar situation in the past, and, with the help of diplomats from both sides of the aisle, the Department has done so in a peaceful, gentle, and process-supporting way which allowed members of our Legislature to return to work without forfeiting the good relationships essential to moving forward collaboratively and productively.

Oregon State Police serves the Governor in her elected role as leader of Oregon's *Executive Branch* of government, and she has now given a lawful directive which OSP is fully committed to executing. OSP is utilizing established relationships to have polite communication with these Senators. While we obviously have many tools at our disposal, patience and communication is and always will be our first, and preferred, option.

OSP will work with the Governor's office and members of the Legislature to find the most expeditious way to bring this matter to a peaceful and constructive conclusion.

No further information will be provided at this time.

16

**Below is a news release from the Office of Governor Kate Brown**

# Governor Brown Authorizes State Police to Bring Back Senate Republicans

(Salem, OR) — Governor Kate Brown today released the following statement on the Oregon Senate's request for assistance of the Oregon State Police to bring back the Senate Republicans:

"After many hours of well-intentioned, respectful negotiations on Wednesday, the Senate has come to an impasse. The Senate Republicans have decided to abandon their duty to serve their constituents and walk out. The Senate Democrats have requested the assistance of the Oregon State Police to bring back their colleagues to finish the work they committed to push forward for Oregonians. As the executive of the agency, I am authorizing the State Police to fulfill the Senate Democrats' request. It is absolutely unacceptable that the Senate Republicans would turn their back on their constituents who they are honor-bound to represent here in this building. They need to return and do the jobs they were elected to do."

**Attached Media Files:** Frequently_Asked_Questions_of_OSP_Role_in_Establishing_Senate_Quorum.docx

### Frequently Asked Questions of OSP Role in Establishing Senate Quorum

Q- What statute Governors the OSP authority to arrest legislators?

A- Article IV, section 12 of the Oregon Constitution and Senate Rule 3.01(2) provides the Senate can compel the attendance of members to establish a quorum. The Oregon State Police, at the direction of the Governor, may assist the Sergeant-at-Arms by returning absent members. Under the authority of ORS 181A.090, (The state police, with the approval of the Governor, may be called upon by any other branch or department of the state government to enforce criminal laws or any regulation of such branch or department. [Formerly 181.050] ) Governor Brown directed the State Police Superintendent to attempt to return absent members.

Q- How many senators and who, has OSP contacted thus far?

A- The agency has been in contact with several Senators, the details will not be disclosed at this time.

Q- How many OSP personnel and what resources are being utilized?

A- The OSP declines to address in-state and out-of-state resources at this time, in addition to technical mechanisms for investigative purposes.

Q- Will OSP troopers physically arrest or handcuff Senators?

A- The OSP will go to great lengths to avoid this scenario and no physical contact is permitted, absent the permission of the Superintendent of OSP.

Q- Are out of state resources assisting OSP?

A- Yes, no additional comment.

# Daily Astorian: Capital Chatter: Boquist decision leaves all unsatisfied
July 23, 2019
By Dick Hughes

One of the strangest episodes in Oregon legislative history continues to unfold, now that Sen. Brian Boquist, R-Dallas, must give 12 hours notice before entering the Oregon Capitol so security can be beefed up.

The increased Oregon State Police presence is to reassure those lawmakers and staff who believe Boquist threatened violence against state police and legislators in remarks June 19 on the Senate floor and later to reporters.

Those remarks, which I'll detail in a moment, were controversial, confrontational and — In the words of Senate Republican Leader Herman Baertschiger Jr. — "not helpful" as tempers flared on both sides of the aisle.

But were Boquist's words threatening and dangerous?

Furthermore, should politicians make that determination? Democratic legislators, the news media and the Legislature's outside lawyer all referred to the remarks as "threats," as if that were an accepted fact. However, on party-line votes, the Senate Special Committee on Conduct last week formally refused to categorize the comments as "threats."

The committee did impose the 12-hour notification requirement on Boquist while the investigation continues.

A bit of background: Boquist, whose family has a small farm in Polk County, is a businessman and retired Army Special Forces officer. To say he speaks his mind would be an understatement. He doesn't always hew to the veneer of false congeniality expected of legislators during floor debates and committee meetings.

His colleagues find him difficult to categorize. A constitutional Republican, he has tussled with his own political party as well as with Democrats. He works across the aisle on major legislation, yet he has sued the Legislature before and is doing so again.

He might best be described as bright, outspoken, tenacious — and possessing a long memory.

This is not a clear-cut situation, and it illustrates legislators' struggles as they strive to meld standard business practices with a highly charged, partisan environment. In trying to make sense of what has happened, here are three questions to consider.

1. Did Boquist threaten Sen. Peter Courtney and Oregon State Police?

As one of the few folks who witnessed both incidents on June 19, I believe the answer necessitates a deeper look at the events.

Boquist's comments to Senate President Peter Courtney, D-Salem, occurred during the morning floor debate about Senate Bill 761, which limits the use of electronic signature gathering for ballot initiatives and referendums. The bill ultimately passed both the Senate and the House on almost party-line votes as a few Democrats joined the Republicans in opposition.

Democrats, who hold a supermajority in each chamber, claimed the bill would prevent signature fraud. Republicans countered that the real aim was to obstruct signature gathering for a referendum on the new business activities tax. Secretary of State Bev Clarno, a Republican, oversees elections and did not support the bill.

Last week, opponents of the business activities tax cited SB 761 among their reasons for dropping their referendum efforts.

Boquist has been aggressive in calling out Courtney, Senate Democrats and legislative management for actions he considers egregious and for his perceived failure to get questions answered. His public record requests have included seeking specifics on how the Legislature paid the sexual harassment settlement that Courtney and House Speaker Tina Kotek, D-Portland, made through the state Bureau of Labor and Industries.

During the 2019 Legislature, Boquist was a prolific distributor of "floor letters" to his fellow senators. The morning of June 19, one floor letter was about the BOLI settlement funding, another was on pay equity in bonuses to legislative staff, and a third was on SB 761.

What happened that morning: Senate Majority Leader Ginny Burdick, D-Portland, introduced the Democratic version of SB 761. Boquist moved to substitute a Republican version. On a party-line vote, his motion failed and the Senate kept the Democratic version.

Then came the debate on the bill.

"Once again, colleagues, let's cut the B.S.," Boquist said, contending that SB 761 was an example of Democrats' changing the rules to achieve their aims.

He went on to say: "We are effectively in the midst of a political coup. Let me say that again. We're effectively in the midst of a political coup. And yes, I understand the threats from members of the majority that you want to arrest me, you want to put me in jail with the state police, and all that sort of stuff. You don't think we haven't heard it directly from you?

"And media and the press, happy to meet with you after noon and give the quotes. Happy to show you in the rules [if] one after the next have been violated.

"Let's not waste any time here. We're at the 11th hour. If you don't think these boots are for walking," Boquist said, showing his booted foot, "you're flat wrong, Mr. President. And [if] you send the state police to get me, hell's coming to visit you personally."

The Senate was utterly quiet for 10 seconds before Courtney somberly responded from the dais: "I understand that people are very upset right now about a lot of things. I would like the word

'decorum' to be thought about often. I think individuals can express their opinions in the strongest possible terms but in a way that recognizes the decorum of the Senate and also the individuals that we are all here together — we are all here together to do the same thing – to do the best thing we can for the people of the state of Oregon.

"I ask that you please remember that when we're talking."

"Senator Boquist, do you want to comment, because I'll recognize you."

Boquist: "Yes, Mr. President, I apologize. To you personally. Thank you."

Courtney: "Thank you, Your Honor."

Boquist then turned to the rest of the Senate: "If any of you are offended, that's fine. I am fine with that. If any of you would like to hear the threats that have been personally made to me by your members, I'd be happy to explain that too. Thank you, Mr. President, we may continue."

Courtney then asked senators to remember what he had said about decorum. Debate on the bill resumed.

The first reference to Boquist's comments constituting a threat came a few minutes later from Sen. Lew Frederick, D-Portland: "I am upset, outraged to hear an extraordinary comment in public — a threat against members of this chamber, against a member of this body and the body itself. ... What I heard just earlier was a threat, and the apology is not enough. That is the kind of thing that we simply cannot allow on the floor, in my view."

Given the tense atmosphere that morning, Courtney called a two-hour recess after the Senate passed SB 761. (The next day, Republican senators would begin their second boycott this year, depriving the Senate of the quorum needed to conduct business.)

The infamous TV interview: Good to his word, Boquist talked with reporters that afternoon. Interviewed by Pat Dooris on KGW-TV, Boquist said his comments were in response to Gov. Brown's "threats" — if Republican senators walked — that she would call a special legislative session to finish the state's business or use the state police to retrieve the senators.

He told Dooris: "Well, I'm quotable, so here's the quote. This is what I told the (state police) superintendent: Send bachelors and come heavily armed. I'm not going to be a political prisoner in the state of Oregon. It's just that simple."

When I overheard that discussion, I had just finished interviewing Boquist at length in his office. He, like many of his Democratic colleagues, understood the state police lacked the legal authority to pursue legislators without a court order first being issued. Rightly or wrongly, I interpreted his comment to KGW as hyperbole, a response to a hypothetical event he knew would never happen.

No one, including rank-and-file Democrats, would want the optics of police in America being used to round up opposition politicians. Thus, Brown and Courtney's desire to dispatch state police remains baffling.

2. Were some legislative staff members and lawmakers justified in being concerned?

Yes, if they thought so.

This is one of the inherent contradictions in this case. Regardless of what Boquist said, regardless of the context and regardless of his intentions, what matters is how individuals perceived his comments.

If people feel endangered, it is the Legislature's legal duty — indeed its ethical responsibility, which is an even higher duty — to act appropriately instead of brushing aside the concerns.

The speaker's intent is irrelevant. "This is about the effect on the recipients," lawyer Brenda Baumgart of Stoel Rives told the Senate Conduct Committee.

Legislative leadership has a broad range of potential responses in such situations. Again, it would be irresponsible to simply tell people here was nothing to worry about — even if, as I believe, that were true in an objective sense. The comments might have triggered or reawakened traumatic responses for some individuals, and we outsiders have no right to judge them.

In a June 25 memo to legislative management about the incidents, Baumgart wrote: "Senator Boquist's statements are public and irrefutable. On their face, they constitute credible threats of violence directed at the Senate President and the Oregon State Police. These threats of violence directly have caused Members and Branch employees to report concerns, including for the safety and well-being of themselves and others and that they have been subjected to an intimidating and/or hostile work environment. Reports are that people are fearful and scared to come to work. These reports are credible."

Hence the subsequent requirement that Boquist provide advance notice of being in the Capitol, as he has done.

Baumgart did not interview Boquist. She said she based her conclusions on viewing the June 19 statements, adding that there had been other concerns about his behavior.

As someone who is not an expert on threat assessment or on employment law and procedures, I was left wondering whether context matters, and how similarly — or dissimilarly — the political and private workplaces should operate.

Inappropriate behavior is enabled by an imbalance in power between individuals. That is the billion-dollar question in the Oregon Capitol as legislators strive to create a respectful workplace and end inappropriate behavior. In politics, those in power want to keep it, which puts others in a potentially subservient situation — politically and personally. Actually changing the Capitol

culture will require undoing that power dynamic, and I don't have a sense that legislators are willing to doing so.

3. Was Boquist's quasi-banishment from the Oregon Capitol appropriate?

Good question, but I don't have the answer.

All I can say is that it might have been the best resolution under the circumstances — a Solomonic decision that leaves all sides unsatisfied.

Dick Hughes, who writes the Capital Chatter column, has been covering the Oregon political scene since 1976.

https://www.dailyastorian.com/opinion/columns/capital-chatter-boquist-decision-leaves-all-unsatisfied/article_fc4f3cb8-acbd-11e9-8d29-3ff08d7bb762.html

# Senate Resolution 1

Sponsored by Senator BOQUIST

## SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure as introduced.

Censures Senator Peter Courtney and removes Senator Peter Courtney from office of President of Senate.

1 **SENATE RESOLUTION**

2    Whereas Senator Peter Courtney in his capacity as the President of the Senate has systemat-
3 ically used his authority to violate the Legislative Branch Personnel Rules; and

4    Whereas Senator Peter Courtney has lied to the public, grossly misused the office of President
5 of the Senate and violated a variety of state civil statutes and state and federal criminal laws in-
6 cluding but not limited to ORS 260.432 (restrictions on political campaigning by public employees),
7 ORS 162.375 (initiating a false report), ORS 161.450 (criminal conspiracy), 25 C.F.R. 11.448 (abuse
8 of office) and 5 C.F.R. 2635.702 (use of office for private gain); now, therefore,

9 **Be It Resolved by the Senate of the State of Oregon:**

10    That Senator Peter Courtney is hereby censured by the Senate; and be it further

11    Resolved, That Senator Peter Courtney is hereby removed from the office of President of the
12 Senate.

13 _____

NOTE: Matter in boldfaced type in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.
New sections are in boldfaced type.

LC 4080

900 COURT St NE
SALEM OR. 97301

PORTLAND OR 972

21 JUN 2019 PM 1 L

FOREVER

BRIAN BOQUIST
17080 BUTLER HILL RD
DALLAS, OR 97338-9316

97338-931680

24

Sample

June 20, 2019

**Sample**

Brian Boquist
17080 Butler Hill Rd
Dallas, OR 97338-9316

Senator Boquist,

The next time you threaten one of our officers, you will find your own ugly face in the crosshairs. We know your addresses.

And apparently you need a refresher course in how democracy works: it functions as an extension of the people's majority, not the plaything of a cry-baby minority (like you). So stop acting like a petulant child, get back to the state capitol, and do your fucking job, you cowardly sack of shit.

Sincerely,

-The People

25



SPOKANE WA 990

05 JUL 2019 PM 1 1

Sen. Brian Boquist
900 Court St NE, S-311
Salem, OR 97301

97301-407291

26

Sample

PUNISHMENT FOR RECALCITRANT REPUBLICANS:

1. To be lined up against a wall and shot.
2. To be gagged and bound, doused with gasoline and set on fire.
3. To have a skilled woodsman take an axe and extend the length of their butt cracks by 22 inches.
4. To be locked into old fashioned wood stocks (like the early settlers in America) while the victims of their crimes are allowed 'to have their way with them' in any manner that they please.
5. To be stripped naked, staked flat to the ground, and painted with honey, after which all sorts of bugs and vermin are brought in and dumped on top of them.
6. To have them stuffed and bound inside the walls of an enormous truck tire, which is then rolled off the edge of the Grand Canyon.
7. To have their hands shackled together behind their backs and be locked in a room with pre-programmed powerful robots who continuously kick them in all the places where it hurts the most.
8. To be locked inside a giant size squirrel cage and forced to run continuously while receiving mega voltage electrical shocks to the ass every time they try to slow down.
9. To be force-fed food and medications that make them crap and vomit almost continuously.
10. To be thrown into a dark, dank, dim dungeon with only poisonous snakes, vicious spiders and their own stupid selves for company.

<u>Sample</u>



**Sen James Manning Jr**
@manningstl

# Terrorism



Oregon Senate closes due to 'possible militia threat' after Republican walkout
foxnews.com

0:00 PM 0/00/10 Twitter for Android

2

28

Courtney's office attempted to suggest early Tuesday that there was a difference between HB 2020 not having enough votes and the bill being dead. But Senate Majority Leader Ginny Burdick, D-Portland, saw little daylight between the two phrasings.

Sample

"I don't think you can get much clearer than to say a bill does not have the votes," Burdick said. "We need 16 votes to pass the bill through the Senate, and we do not have 16 votes."

While Burdick said the idea would not be taken up again this year, including in the governor's promised special session, she vowed to pursue a climate change bill in future sessions.

"Those of us who fervently support this bill, which I am one, have not given up," Burdick said. "You will not see the end of an effort to reduce carbon emissions and join a West Coast consortium of people who are committed to reducing carbon and to save our melting planet."

Burdick added that Democrats would stand firm on fining absent Republicans $500 per day.

"I don't know what to call it," she said of Republicans' walkout, their second since May. "I want to call it terrorism, because they are not doing their job and it has fractured the entire institution."

The cap-and-trade policy is a Democratic priority (https://www.opb.org/news/article/oregon-legislature-2019-preview/) in this year's session. But whether there was enough support in the Senate, the more moderate of the Legislature's two Democrat-dominated chambers, has been a question since before Republicans walked out to prevent a vote.

Democrats hold 18 of the Senate's 30 seats, and so could only afford to lose two votes to muster the 16 needed to pass the bill. Sen. Betsy Johnson, D-Scappoose, strongly opposed the policy, and Sen. Arnie Roblan, D-Coos Bay, had indicated he was a possible "no."

RELATED COVERAGE



(/news/article/oregon-republicans-legislature-minority-walkout/)

What's The Minority Party To Do? Oregon Republicans Find Ways To Delay (/news/article/oregon-republicans-legislature-minority-walkout/)

A number of other senators, including Sen. Laurie Monnes Anderson, D-Gresham, have also raised concerns, and some in the building believed even senators who previously backed the bill had


 **Paul Evans**
@PaulEvansOregon

Not that Sen Courtney asked me, but — my own military experience taught me the difference between respectful diplomacy and giving in to terrorists... negotiating with people who are not invested in shared outcomes... is a dangerous path.  Today is a sad, tragic day for Oregon.

1:16 PM · 6/25/19 · Twitter for iPhone

35 Retweets **122** Likes

30

🔍 Search Facebook

 **Christie Cronin**
Hay Jim and the country is predominately run by states- perhaps you should also ban all red states and stop their votes as well? Maybe build some camps to throw all those annoying republicans in-so they don't get in the way of what you want?

19m　Like　Reply

 **Representative Julie Fahey**
Like the camps that Trump is keeping immigrant children in....?

15m　Like　Reply　1

 **Hay Jim**
Christie the Democrats are standing up to Trump and McConnell round one was 2018 elections and round two will be 2020 elections. We love this country why should we leave? We

Representative Julie Fahey

  

    　31

# Constitution of United States of America 1789 (Rev. 1992)

**First Amendment.**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**Fifth Amendment.**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**Fourteenth Amendment, Section 1.**

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.


# Oregon Constitution, Article IV, Section 9

**Legislators free from arrest and not subject to civil process in certain cases; words uttered in debate.**

Senators and Representatives in all cases, except for treason, felony, or breaches of the peace, shall be privileged from arrest during the session of the Legislative Assembly, and in going to and returning from the same; and shall not be subject to any civil process during the session of the Legislative Assembly, nor during the fifteen days next before the commencement thereof: Nor shall a member for words uttered in debate in either house, be questioned in any other place.–

# U.S. Supreme Court

**Bond v. Floyd, 385 U.S. 116 (1966)**

**Bond v. Floyd**

**No. 87**

**Argued November 10, 1966**

**Decided December 5, 1966**

**385 U.S. 116**

*Syllabus*

**From the Desk of**

**Sen Brian Boquist**

Several months after the election in June 1965 to the Georgia House of Representatives of appellant Bond, a Negro, a civil rights organization of which he was a staff member issued an anti-war statement against the Government's Vietnam policy and the operation of the Selective Service laws. Bond endorsed the statement in a news interview stating, among other things, that, as "a second class citizen," he was not required to support the war, as a pacifist, he was opposed to all war, and he saw nothing inconsistent with his statement and his taking the oath of office. House members, in petitions, challenged Bond's right to be seated, charging that his statements aided our enemies, violated the Selective Service laws, discredited the House, and were inconsistent with the legislator's mandatory oath to support the Constitution. Following the House clerk's refusal to seat him, Bond, manifesting willingness to take the oath, challenged the petitions as depriving him of his First Amendment rights and being racially motivated. At a House committee hearing, Bond amplified his views and denied having urged draft card burning or other law violations. Following the hearing, the committee concluded that Bond should not be seated, and the House thereafter refused to seat him. Bond brought this action in District Court for injunctive relief and declaratory judgment. The District Court, holding that it had jurisdiction to decide the constitutional issue, concluded that Bond had been accorded procedural due process through the hearing. It also held that the House had a rational basis for concluding that Bond's remarks exceeded criticism of national policy and that he could not in good faith take an oath to support the State and Federal Constitutions, and thus could not meet a qualification for membership which the House had the power to impose. While Bond's appeal to this Court under 28 U.S.C. § 1253 from that decision was pending, he was again elected as a Representative, in a special election. He was rejected by the House Rules Committee

Page 385 U. S. 117

when he declined to recant, and later was elected again, in the regular 1966 primary and general elections.

***Held:***

1. This Court has jurisdiction to determine whether a disqualification for the office of state legislator under color of a proper constitutional standard violates First Amendment rights. P. 385 U. S. 131.

**2. In disqualifying Bond because of his statements, the State violated the First Amendment made applicable to the States by the Fourteenth. Pp. 385 U. S. 131-137.**

(a) A majority of state legislators is not authorized to test the sincerity with which another duly elected legislator meets the requirement for holding office of swearing to support the Federal and State Constitutions. P. 385 U. S. 132.

**(b) The State may not apply to a legislator a First Amendment standard stricter than that applicable to a private citizen. Pp. 385 U. S. 132-133.**

(c) Bond's statements do not show an incitement to violate the Selective Service statute's prohibition of counseling against registration for military service. Pp. 385 U. S. 133-134.

**(d) Though a State may impose all oath requirement on legislators, it cannot limit their capacity to express views on local or national policy. "[D]ebate on public issues should be uninhibited, robust, and wide-open."** *New York Times v. Sullivan,* **376 U. S. 254, 376 U. S. 270. Pp. 385 U. S. 135-136.**

251 F.Supp. 333, reversed.

Page 385 U. S. 118

https://supreme.justia.com/cases/federal/us/385/116/

34

# U.S. Supreme Court

**New York Times Co. v. Sullivan, 376 U.S. 254 (1964)**

**New York Times Co. v. Sullivan**

**No. 39**

**Argued January 6, 1964**

**Decided March 9, 1964***

**376 U.S. 254**

*Syllabus*

Respondent, an elected official in Montgomery, Alabama, brought suit in a state court alleging that he had been libeled by an advertisement in corporate petitioner's newspaper, the text of which appeared over the names of the four individual petitioners and many others. The advertisement included statements, some of which were false, about police action allegedly directed against students who participated in a civil rights demonstration and against a leader of the civil rights movement; respondent claimed the statements referred to him because his duties included supervision of the police department. The trial judge instructed the jury that such statements were "libelous *per se*," legal injury being implied without proof of actual damages, and that, for the purpose of compensatory damages, malice was presumed, so that such damages could be awarded against petitioners if the statements were found to have been published by them and to have related to respondent. As to punitive damages, the judge instructed that mere negligence was not evidence of actual malice, and would not justify an award of punitive damages; he refused to instruct that actual intent to harm or recklessness had to be found before punitive damages could be awarded, or that a verdict for respondent should differentiate between compensatory and punitive damages. The jury found for respondent, and the State Supreme Court affirmed.

*Held:* A State cannot, under the First and Fourteenth Amendments, award damages to a public official for defamatory falsehood relating to his official conduct unless he proves "actual malice" -- that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false. Pp. 376 U. S. 265-292.

(a) Application by state courts of a rule of law, whether statutory or not, to award a judgment in a civil action, is "state action" under the Fourteenth Amendment. P. 376 U. S. 265.

(b) Expression does not lose constitutional protection to which it would otherwise be entitled because it appears in the form of a paid advertisement. Pp. 376 U. S. 265-266.

35

(c) Factual error, content defamatory of official reputation, or both, are insufficient to warrant an award of damages for false statements unless "actual malice" -- knowledge that statements are false or in reckless disregard of the truth -- is alleged and proved. Pp. 376 U. S. 279-283.

(d) State court judgment entered upon a general verdict which does not differentiate between punitive damages, as to which, under state law, actual malice must be proved, and general damages, as to which it is "presumed," precludes any determination as to the basis of the verdict, and requires reversal, where presumption of malice is inconsistent with federal constitutional requirements. P. 376 U. S. 284.

(e) The evidence was constitutionally insufficient to support the judgment for respondent, since it failed to support a finding that the statements were made with actual malice or that they related to respondent. Pp.376 U. S. 285-292.

273 Ala. 656, 144 So.2d 25, reversed and remanded.

Page 376 U. S. 256

36