FILED 24 SEP '19 14:18 USDC-ORE

1   **Brian J. Boquist – Pro Se**
    17080 Butler Hill Road
2   Dallas, Oregon 97338
    Phone: 503-623-7663
3   Email: boquist@aol.com

4
                    UNITED STATES DISTRICT COURT
5
                        DISTRICT OF OREGON
6
                        EUGENE DIVISON
7
8   **BRIAN J. BOQUIST,**                    Case No. 6:19-cv-01163

9              Plaintiff,                     **FRCP 15 Request for and Acceptance
        v.                                    of:**
10
    **OREGON STATE SENATE PRESIDENT           AMENDED COMPLAINT
    PETER COURTNEY, in his official           (REQUEST) FOR
11  capacity, SENATOR FLOYD                   DECLARATORY JUDGEMENT OF
    PROZANSKI, in his official capacity as    THE LAW**
12  Chairman of the Senate Special
    Committee on Conduct, SENATOR             **FRCP Rule 57 - 28 U.S.C. 2201**
13  JAMES MANNING, in his official
    capacity as member of the Special Senate  **First Amendment
14  Conduct Committee, DEXTER                 Fifth Amendment
    JOHNSON, in his official capacity as      Fourteenth Amendment**
15  Legislative Counsel, DARON HILL, in his
    official Legislative Administration       **Fee: $400 previously paid**
16  capacity, JESSICA KNIELING, in her
    official capacity as interim Human
17  Resources Director, and BRENDA
    BAUMGART & MELISSA HEALY, in
18  their official capacity as contract
    investigators to the Oregon State Senate,
19  and all in their official capacities in the
    Legislative Branch of the State of Oregon.**
20
               Defendants.**
21

22

23          **Federal Rules of Civil Procedures – Rule 15(2) Request**

24

25      1.      Plaintiff requests the court approve and accept this amended filing for

26  declaratory judgement under FRCP Rule 15(2) to "give leave when justice so requires."

Page 1 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Amendment is requested instead of Supplemental to remove injunctive action requests
2    from the original motion.  The request for declarations under FRCP 57 contains the issue
3    of 'arrest' of a legislator to 'compel' attendance without due process which has never
4    been before federal court before but argued currently and historically by the Oregon
5    Attorney General to be sanctioned by the U.S. Supreme Court under *Kilbourn v.*
6    *Thompson, 103 U.S. 168 (1880).*  Plaintiff believes the actual controversies are first and
7    primarily equity and federal questions for which only a federal court can resolve by
8    declaration. The U.S. Supreme Court has a long case history related to legislative powers.

9        2.    The Oregon Attorney General, presently claiming top represent the
10   Defendant's, does not consent, has informed the Plaintiff of the intent to Motion to
11   Dismiss regardless of this request.  The Plaintiff saw no realistic room to compromise on
12   the writing of this request to the court given the promise of motion to dismiss regardless
13   of any consent agreement under FRCP 15(2).  Attempts under Local rule 7-1 failed to
14   resolve the actual controversies in question as the Attorney General claims no
15   controversy exists.  Plaintiff believes amending the original filing to best reflect the
16   actual current evolving controversies before the court will provide efficiency to the
17   Court, Plaintiff, and Defendants while providing justice to the Parties and the other
18   Legislators nationwide needing a declaration of the law.

19       3.    The Oregon Attorney General advised the Plaintiff yesterday, September
20   23, 2019, the Attorney General, would additionally be representing Brenda Baumgart of
21   Stoel Rives LLP an outside counsel of some sort yet to be determined.  Plaintiff will
22   address the position of the Attorney General, a non-constitutional statutory executive
23   entity under separate motion as necessary.

24       4.    Plaintiff represents himself before the court, as an elected Oregon State
25   Senator with a base monthly salary of $2600 per month, thus cannot afford a lawyer to
26   plead the active evolving controversies before the U.S. District Court of Oregon.  The

Page 2 -    AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Defendants have the power of the purse of the Legislative Assembly and the assets of the

2    State of Oregon, therefore, possess the advantage against the common representative of

3    citizen of an Oregon State Senate district.  The Plaintiff fully admits to the court he must

4    learn as he goes to prove to the citizenry that justice is uniformed to all in Oregon and the

5    nation.  However, this case is unprecedented in the history of the nation.

6

7                **Amended Complaint (Request) for Declaratory Judgements**

8                                **Table of Contents**

9       FRCP Rule 15(2) Request                        Page 1

10      Table of Contents                              Page 2

11      Nature of Action                               Page 3

12      Jurisdiction Standing &Venue                   Page 8

13      Parties                                        Page 11

14      Allegations Common to All Claims               Page 15

15      First Request for Relief                       Page 47

16      Second Request for Relief                      Page 48

17      Third Request for Relief                       Page 49

18      Fourth Request for Relief                      Page 50

19      Fifth Request for Relief                       Page 51

20      Sixth Request for Relief                       Page 51

21      Seventh Request for Relief                     Page 52

22      Prayer for Relief                              Page 53

23      Attachment #1  Original Individual Documents

24      Attachment #2  Public Hearing Transcripts

25      Attachment #3  Public Work Session Transcripts

26      Attachment #4  Supplemental Individual Documents (Since Original Filing)

1                           **<u>Nature of Action</u>**

2

3       5.      Plaintiff Brian Boquist, an elected Oregon State Senator, brings this action

4   for declaratory judgement under Rule 57 of the Federal Rules of Civil Procedure to

5   protect his First Amendment, Fifth Amendment, and Fourteenth Amendment rights under

6   the United States Constitution being denied collectively by all the Defendants.  Plaintiff

7   seeks seven (7) declaratory judgements (declarations) under FRCP Rule 57 - 28 U.S.C.

8   2201 without attribution of blame to resolve the active controversies of equity and federal

9   questions under the United States Constitution.

10      6.      Plaintiff does not seek oral arguments or trial except at the request of the

11  court as it might deem necessary to determine the circumstance of the active

12  controversies leading to this request for declaratory judgements of the law.

13      7.      Plaintiff alleges the Defendants collectively conspired to block the

14  Plaintiff's free and unfettered access to the Oregon State Capitol.  The Defendants have

15  issued instructions to the Secretary of the Senate and the Oregon State Police, an

16  executive law enforcement agency, to deny the Plaintiff access to the Plaintiff's own

17  office, unless Plaintiff provides twelve (12) hour notice to the Secretary of the Senate

18  whom will then direct the Oregon State Police, an executive law enforcement agency, to

19  increase its law enforcement presence in the Oregon State Capitol.  The Secretary of the

20  Senate has been instructed by Defendants to inform the employees and public in advance

21  of the any visit the Plaintiff makes to his lawful office in the Oregon State Capitol.  The

22  Plaintiff believes, this has never been done to any Oregon citizen, let alone an elected

23  State Senator, in the known recorded history of the Oregon State Capitol.

24      8.      Defendants admitted in the public record on July 8, 2019, at an illegally

25  constituted and organized public hearing, that their actions are in response to regulating

26  the free speech of the Plaintiff on the Floor of the Oregon State Senate and in the Oregon

Page 4 -   AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   State Capitol on June 19, 2019. Plaintiff alleges this is a direct violation of the free

2   speech clause of the First Amendment of the United States Constitution. Plaintiffs

3   alleges the Defendants denied his Fifth and Fourteenth Amendment rights by denying

4   access to public records regarding the Defendant's ongoing secret political investigations

5   broadcast worldwide, and ongoing now. This denial of access to public legislative

6   records began on July 3, 2019 and continues to date, with the participation of the Oregon

7   Attorney General a statutory entity in the State of Oregon.

8         9.    Plaintiff alleges the Defendants are blocking the Plaintiff's practice and

9   expression of religious beliefs stated on the Floor of the Oregon State Senate on July 19,

10   2019 that are protected under the First Amendment of the United States Constitution.

11   Should the court ban or block all religious beliefs from a legislative assembly then the

12   Defendants daily prayers on the Floor of the Oregon State Senate would be blocked as

13   well.

14        10.    Plaintiff alleges the Defendant's actions block the right of Plaintiff as an

15   Oregon State Senator to freely assemble in his legal offices with peaceful citizens to hear

16   their petitions for redress of grievances as guaranteed under the First Amendment of the

17   United States Constitution. Additionally, this violates Section 26, Article I, Bill of

18   Rights, of the Oregon Constitution.

19        11.    Plaintiff alleges the Defendants collectively and intentionally blocked the

20   Plaintiffs' right of due process as guaranteed under the Fourteenth Amendment of the

21   United States Constitution. This in ordering fines against the Plaintiff, in ordering the

22   arrest and imprisonment of the Plaintiff, and in conducting a secret investigation of the

23   Plaintiff commencing on or about May 30, 2019, again involving free speech on the Floor

24   of the Oregon State Senate.

25        12.    Plaintiff alleges the Defendants collectively denied the Plaintiffs state and

26   federal rights for personal and political purposes in direct violation of 25 CFR § 11.448 -

Page 5 -   AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Abuse of office and threat of 25 CFR § 11.404 - False imprisonment of the United States
2    Code.

3         13.    Plaintiff alleges the Defendant's violated the Plaintiff's rights under Article
4    IV, Section 9, of the Oregon Constitution regarding freedom from civil proceedings
5    during Session, by undertaking, what the Defendant's allege was civil employment
6    proceedings, based on secret investigations, while in regular Session, by the Senate
7    Special Committee on Conduct, whose legal authority, jurisdiction, standing and
8    statutory authority is completely unknown.

9         14.    Plaintiff alleges the Defendants violated his free speech as an elected
10   Legislator speaking in debate on the Floor of the Oregon State Senate as stated in Article
11   IV, Section 9, of the Oregon Constitution.   Plaintiff acknowledges the whole of the
12   Oregon State Senate may have limited authority to decide upon 'words uttered in debate'
13   but none-the-less an elected Legislator does not surrender their free speech rights under
14   the First Amendment of the United States Constitution regardless of a vote of any
15   Legislative body as enshrined in *Bond v. Floyd, 385 U.S. 116 (1966)* and *New York Times*
16   *Co. v. Sullivan, 376 U.S. 254 (1964)*.

17        15.    Plaintiff alleges the Defendants commenced an ongoing secret political
18   investigation of the Plaintiff, five (5) other Oregon State Senators, and other individuals
19   on May 30, 2019 to block free speech in debate on the Floor of the Oregon State Senate.
20   These secret investigations utilize tax dollars and outside lawyers hiding behind partisan
21   Legislative Counsel and Attorney General legal maneuvers.   The Defendants are
22   attempting to block the reading of letters from citizens and newspaper citing's from
23   debate on the Floor of the Oregon State Senate.  Defendants admitted in public legislative
24   hearing to these secret investigations on July 8, 2019 but refused to answer questions to
25   minority party committee members as to their content or legality.   Individuals being
26

Page 6 -   AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    investigated include citizens at large outside the Legislative Assembly whom the

2    Defendants see as political opponents.  These secret investigations are ongoing now.

3         16.     Plaintiff asserts alleged illegal actions of the Defendants is based on

4    Defendant Courtney, Defendant Prozanski, Defendant Manning and Defendant

5    Johnson's, and other unnamed majority members, belief they can direct the Oregon State

6    Police, with the permission of the Governor of Oregon, to locate, arrest by force, detain,

7    and imprison their political opponents, and fine political opponents themselves, under the

8    word 'compel' in Article 4, Section 12 of the Oregon Constitution without regard to the

9    due process under the Fifth Amendment and Fourteenth Amendment of the United States

10   Constitution.  The 1859 framers of the Oregon Constitution knew full well the different

11   meaning of words "arrest" and "compel" as free from arrest is cited four (4) times in

12   regard to the Legislative Assembly, and the word "compel" just once in regard to

13   quorum.  Likewise due process was well established in the U.S. Constitution with U.S.

14   Supreme Court interpretation at the time of statehood.  The Plaintiffs belief is displayed

15   by requesting such on June 20, 2019 on the Floor of the Oregon State Senate, while

16   lacking constitutional quorum, and Defendant Johnson's formal legal opinion, and the

17   opinion of the Oregon Attorney General who lacks any constitutional authority, is that the

18   Oregon State Police can locate, arrest by force, detain, and imprison elected legislators

19   who have committed no crime and lacking a judicial warrant issued by a court of law.

20   The 1859 drafters of the pre-Civil War era Oregon Constitution intentionally set a high

21   bar for quorum as a check and balance given the disputes and compromises leading to

22   admission to the Union.  The Oregon State Police were in fact ordered to take such action

23   by Defendant Courtney through the Governor of the State of Oregon from June 20-28,

24   2019.  This in direct violation of Article III, Section 1 'Separations of Powers' of the

25   Oregon Constitution.  In short, the use of the power of the police state to seize political

26   prisoners reminiscent of facist Germany and Italy, and communist Soviet Union, which

Page 7 -   AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    enjoyed widespread support in Oregon prior to the bombing of Pearl Harbor on
2    December 7, 1941. This type of belief has a long history in Oregon; arrest of individual
3    refusing to buy war bonds during WWI, the passage of the closure of Oregon's Catholic
4    Schools in the 1920s, and the detention of Japanese-American Oregon citizens in WWII,
5    all of which was eventually struck down by federal courts and the U.S. Supreme Court.

6        17.    Plaintiff alleges the Defendants as of September 18, 2019 are conducting
7    secret political investigations against elected Oregon State Senators to block free debate
8    and speech on the Floor of the Oregon State Senate. Defendants continue to investigate
9    the Plaintiff in regard to allegations on June 19, 2019 in gross violation of their rules and
10    both state and federal laws. Defendants have been secretly investigating six (6) Oregon
11    State Senators to block free speech and debate on the Floor of the Oregon State Senate
12    since May 30, 2019 for reading a citizen's letter published in the media. The Plaintiff is
13    one of the six under secret investigation as of May 30, 2019. The Plaintiff alleges the
14    goal of the Defendants is to block debate in the legislative process for political purposes
15    subverting the law.    The Defendants are secretly investigating no less than five (5)
16    additional Oregon State Senators for free speech violations to block their constitutional
17    rights.    The Plaintiff has been told by an official no less than forty (40) secret
18    investigations are ongoing against political opponents using taxpayer funds, outside
19    lawyers, and under the supervision of the partisan Legislative Counsel with the blessing
20    of the Oregon Attorney General.    Plaintiff knows first hand of at least twelve (12)
21    ongoing secret investigations being conducted by the Defendants purely in regard to First
22    Amendment free speech.

23                        **Jurisdiction, Standing and Venue**

24

25        18.    Jurisdiction arises under the U.S. Constitution 1st Amendment "freedom of
26    speech" and "establishment of religion, or prohibiting free exercise thereof," and no

Page 8 -    AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    action shall block "the right of the people to assemble, and petition the Government for a

2    redress of grievances." The 5th Amendment "nor be deprived of life, liberty, or property,

3    without due prices of law." The 14th Amendment "shall any State deprive any person of

4    life, liberty, or property, without due process of law; not deny to any person within its

5    jurisdiction the equal protection of the laws."

6         19.    The declaratory judgements requested involve U.S. Court jurisdiction on

7    equity and federal questions, and potentially original (U.S. Supreme Court) matters. This

8    jurisdiction includes conflicts between the United States Constitution and the Oregon

9    State Constitution.

10        20.    The acts alleged herein occurred in the District of Oregon and venue is

11   therefore appropriate pursuant to 28 U.S.C. § 1391.  The Plaintiff is one of twelve

12   Oregon State Senators involved in active controversy in regard to threats of fines, arrest,

13   forceable compel, and due process violations under the United States Constitution.

14        21.    The court possesses declaratory judgement authority under 28 U.S.C. 2201

15   that if utilize pursuant to Rule 57 of the Federal Rules of Civil Procedure would set a

16   legal standard for all parties to follow based on actual controversy in progress today.

17        22.    The acts leading to the substance of allegations herein include potential

18   allegations of 25 CFR § 11.448 - Abuse of office and 25 CFR § 11.404 - False

19   imprisonment across State lines by several of the named Defendants, and aiders and

20   abettors of the Defendants, including but not limited to the Governor of the State of

21   Oregon. These acts were identified to the Plaintiff by other officials.

22        23.    The U.S. Supreme Court previously ruled in *Bond v. Floyd, 385 U.S. 116*

23   *(1966)* which is a very similar case involving an elected member of the Georgia House of

24   Representatives regarding due process and freedom of speech of legislators in that **"(b)**

25   **The State may not apply to a legislator a First Amendment standard stricter than**

26   **that applicable to a private citizen. Pp. 385 U. S. 132-133."**

Page 9 -   AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1      24.    The U.S. Supreme Court has previously ruled in *New York Times Co. v.*

2  *Sullivan, 376 U.S. 254 (1964)* which is a very similar case involving freedom of the

3  press, elected officials, free speech and due process in which **"[D]ebate on public issues**

4  **should be uninhibited, robust, and wide-open." New York Times v. Sullivan, 376 U.**

5  **S. 254, 376 U. S. 270. Pp. 385 U. S. 135-136."**

6      25.    The U.S. Supreme Court previously ruled in *Kilbourn v. Thompson, 103*

7  *U.S. 168 (1880)* which  the Defendants claim gives them authority to arrest legislators

8  without due process regardless of the circumstances by citing **"the penalty which each**

9  **House is authorized to inflict in order to compel the attendance of absent members**

10  **may be imprisonment"** but failing to cite the entirety of the due process recognized by

11  the court. *Kilbourn v. Thompson, 103 U.S. 168 (1880)* properly cited contains citations

12  like "in a proper case," "empowers each House," "obey some rule on that subject made

13  by the House," "neither branch … can lawfully exercise more power than is conferred by

14  the Constitution on the whole body," "No general power of inflicting punishment … is in

15  that instrument," "It contains in the provision that **no "person all be deprived of life,**

16  **liberty, or property, without due process of law" the strongest implication against**

17  **punishment by order of the legislative body.** It has been repeatedly decided by this

18  court, and by others of the highest authority, that this means a trial in **which the rights of**

19  **the party shall be decided by a tribunal appointed by law, which tribunal is to be**

20  **governed by rules of law previously established,"** "be privileged from arrest …for any

21  speech or debate in either House," "for speeches … by a member to the prejudice of any

22  other person, or hazardous to the public peace, that member enjoys complete impunity,"

23  **"the freedom of deliberation, speech, and debate in either House of the legislature is**

24  **so essential to the rights of the people that it cannot be the foundation of any**

25  **accusation or prosecution, action, or complaint."**

26

Page 10 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1      26.    *Kilbourn v. Thompson, 103 U.S. 168 (1880*) cites Chief Justice Parsons in

2    *Coffin v. Coffin, (4 Mass. 1) (1808)* stating the position of the Unites States Supreme

3    Court in that **"These privileges are thus secured not with the intention of protecting**

4    **the members against prosecutions for their own benefit, but to support the rights of**

5    **the people by enabling their representatives to execute the functions of their office**

6    **without fear of prosecutions, civil or criminal. I therefore think that the article**

7    **ought not to be construed strictly, but liberally, that the full design of it may be**

8    **answered. I will not confine it to delivering an opinion, uttering a speech, or**

9    **haranguing in debate, but will extend it to the giving of a vote, to the making of a**

10   **written report, and to every other act resulting from the nature and in the execution**

11   **of the office. And I would define the article as securing to every member exemption**

12   **from prosecution for everything said or done by him as a representative, in the**

13   **exercise of the functions of that office, without inquiring whether the exercise was**

14   **regular, according to the rules of the House, or irregular and against their rules. I**

15   **do not confine the member to his place in the House, and I am satisfied that there**

16   **are cases in which he is entitled to this privilege when not within the walls of the**

17   **representatives' chamber."**  The Defendants appear to have violated all four (4) tenants

18   of the 'Kilbourn Test' established by the court.  The case alone covers every aspect of the

19   Plaintiff's request for seven (7) declarations of the law requested in the Remedy.

20      27.    Other federal court precedence includes but is not limited to *Marshall v.*

21   *Gordon 243 U.S. 521 (1917)* which heavily cites *Kielley v. Carson 4 Moo PC 63 (1842)*

22   and *Anderson v. Dunn 19 U.S. 204 (1821)* in regard to limitations on non-federal

23   legislative power limitations.   Chief Justice White opines heavily on the lack of

24   legislative power in regard to *Kielley v. Carson 4 Moo PC 63 (1842)* which itself outlines

25   nearly identical circumstances to more than one of the present active controversies. *Barry*

26   *v. United States ex Rel. Cunningham 279 U.S. 597 (1929)* and *Jurney v. MacCracken 294*

Page 11 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   *U.S. 125 (1935)* both have relationship as to the required due process for the
2   implementation of legislative powers in regard to this request.

3

4                                **Parties**

5

6        28.     Plaintiff Boquist. Plaintiff is a citizen of the State of Oregon. Plaintiff is
7   an elected State Senator serving approximately 130,000 constituents in five counties and
8   over twenty (20) incorporated and unincorporated cities. Plaintiff's legislative salary is
9   approximately $2600 per month. Plaintiff uses his Senate Office in the Oregon State
10  Capitol as his out-of-session office. Plaintiff has two (2) employees serving the Senate
11  District both routinely working in-district and in the Oregon State Capitol Office. Both
12  have faced ongoing present retribution caused by the Defendants. The Plaintiff has been
13  an elected State Representative or State Senator since 2005. Plaintiff is a retired senior
14  United States Army Officer. Plaintiff has overseen civilian and government entities well
15  over ten (10) times the size of the Legislative Assembly in Oregon. Plaintiff resides in
16  Polk County at 17080 Butler Hill Road, Dallas, Oregon 97338 with family members.

17       29.     Defendant Courtney. Defendant Peter Courtney is an elected State Senator
18  serving as the President of the Oregon State Senate. Plaintiff voted against Defendant
19  Courtney in his election as Senate President.    Plaintiff voted against Defendant
20  Courtney's proposed Session Rules as did many other State Senators.    Defendant
21  Courtney has served in the Legislative Assembly since 1980. Defendant Courtney is a
22  member of the majority party. Defendant Courtney in an inactive member of the Oregon
23  State Bar # 730660.    Defendant Courtney is paid a double legislative salary of
24  approximately $5200 per month to serve as the full time Senate President. Defendant
25  Courtney has the sole power to appoint legislators to Senate committees, and the sole
26  power to approve Senate committee agendas. Defendant Courtney is named in multiple

1 ongoing state and federal lawsuits, and state and federal civil complaints. Defendant
2 Courtney is a co-signer of a 2019 Bureau of Labor & Industries employee and sexual
3 harassment settlement paying out $1.3 million in unappropriated legislative funds.
4 Defendant Courtney can terminate virtually any employee in the Legislative Assembly
5 who are not 'member' or 'minority caucus' staff as he is the senior 'at-will' appointing
6 authority in the Oregon State Senate. Defendant Courtney is actively and presently
7 perpetuating the controversy as of this week, though, has made overtures to seek potential
8 resolution but these have been ignored by the Attorney General. Defendant Courtney's
9 official legislative address is 900 Court Street NE, S-201, Salem, Oregon 97301.

10       30.    Defendant Prozanski.    Defendant Floyd Prozanski is an elected State
11 Senator serving as the Chairman of the Senate Special Committee on Conduct whose
12 authority, jurisdiction, standing and statutory status is unknown. Defendant Prozanski
13 was appointed as the Chairman of the Senate Special Committee on Conduct by
14 Defendant Courtney. Defendant Prozanski has served in the Legislative Assembly since
15 1995. Defendant Prozanski is an active member of the Oregon State Bar # 840846.
16 Defendant Prozanski and the Plaintiff have served on legislative committees together.
17 Defendant Prozanski and the Plaintiff have verbally sparred in debate on the Floor of the
18 Oregon State Senate in the recent Session ending June 30, 2019. Defendant Prozanski on
19 numerous occasions in the recent legislative Session challenged the Plaintiff's free
20 speech under Senate Rules. Defendant Prozanski is publically quoted as intending to
21 carry the controversy into next year. Defendant Prozanski's official legislative address is
22 900 Court Street NE, S-413, Salem, Oregon 97301.

23       31.    Defendant Manning.       Defendant James Manning is an elected State
24 Senator serving as a majority member of the Senate Special Committee on Conduct
25 whose authority, jurisdiction, standing and statutory status is unknown. Defendant
26 Manning was appointed to the Senate Special Committee on Conduct by Defendant

Page 13 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Courtney. Defendant Manning and the Plaintiff have verbally sparred in debate on the
2    Floor of the Oregon State Senate in the recent Session ending June 30, 2019. The
3    Plaintiff challenged Defendant Manning's verbal attack on a homosexual minority staff
4    member under Senate Rules on the Floor of the State Senate. Defendant Manning filed
5    complaints against the same minority staff member with Defendant Knieling in alleged
6    retribution. Defendant Manning was appointed to the Legislative Assembly in 2016.
7    Defendant Manning is a retired U.S. Army Master Sergeant per official records provide
8    to the Plaintiff. Defendant Manning is actively, and publically quoted as intending to
9    carry the controversy forward. Defendant Manning's official legislative address is 900
10   Court St. NE, S-205, Salem, Oregon 97301.

11        32.    Defendant Johnson. Defendant Dexter Johnson is the Chief Legislative
12   Counsel for the Oregon State Senate and Oregon House of Representatives earning
13   approximately $16,000 per month. Defendant Johnson serves as both pro-and-con legal
14   representative to all ninety (90) members of the Legislature, effectively legal counsel for
15   both 'parties' despite such conflict of interest prohibitions on lawyers. Defendant
16   Johnson is an 'at-will' employee working effectively solely for Defendant Courtney.
17   Defendant Johnson theoretically works for the Legislative Counsel Committee, which if
18   it ever meets, is merely a rubber stamp from Defendant Courtney, whom serves as the
19   committee co-chair, hence, solely approves all agendas and motions. The Plaintiff served
20   on the Legislative Counsel Committee until recently.    Defendant Johnson is named in
21   multiple state and federal lawsuits for wrongful termination, employee harassment, and
22   whistleblowing retribution. Defendant Johnson is named negatively in the Bureau of
23   Labor & Industries sexual harassment complaint against the Oregon State Senate settled
24   by Defendant Courtney in March 2019 for $1.3 million. The Plaintiff has an active
25   Oregon State Bar ethics complaint against Defendant Johnson. Plaintiff Johnson's
26   official legislative address is 900 Court St. NE, S-101, Salem, Oregon 97301.

Page 14 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    33.    Defendant Knieling.    Defendant Jessica Knieling is the interim Human
2    Resources Director serving since March 2019 hired by Defendant Courtney.    The prior
3    Human Resources Director supposedly retired as part of the BOLI sexual harassment
4    settlement waiving her right to sue for age discrimination, however, according to public
5    records from the Oregon Department of Administrative Service, both the old director and
6    new interim director remain on the legislative payroll at approximately $12-13,000 per
7    month.    Defendant Knieling has systematically blocked legislative member employee
8    personnel actions, blocked pay equity review requests, denied public records requests
9    claiming the records do not exist, and is virtually unknown in the Oregon State Capitol.
10   Defendant Knieling's immediate supervisor is Defendant Hill.    The Plaintiff has never
11   met Defendant Knieling in person, and could not pick her out of a crowd.    Defendant
12   Knielings and her law firm on behalf of the Defendants, as a matter of material fact, are
13   presently perpetuating the controversy as of this week.    Defendant Knieling's official
14   legislative address is 900 Court Street NE, Room 140A, Salem, Oregon 97338.

15   34.    Defendant Baumgart.    Defendant Brenda Baumgart is one of two original
16   contract investigators temporarily hired as a result of the sexual harassment settlement
17   with BOLI.    Defendant Baumgart is with the law firm of Stoel Rives LLP whom has
18   added unnamed additional investigators to aid the Defendants in whole.    Defendant
19   Baumgart works directly for Defendant Knieling and Defendant Johnson per the
20   available public records in direct violation of the BOLI settlement agreement signed by
21   Defendant Courtney in January 2019.    All are 'at-will' employees or contractors which
22   Defendant Courtney being the senior appointing authority.    Defendant Baumgart is an
23   active member of the Oregon State Bar # 992160.    The Plaintiff has seen Defendant
24   Baumgart once at a hearing on July 8, 2019.    The Plaintiff has never spoken to Defendant
25   Baumgart.    The Plaintiff exchanged several emails in April 2019 with Defendant
26   Baumgart in regard to other employee harassment concerns.    The Plaintiff inquired

Page 15 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    regarding her contact data to provide to other employees who raised concerns but feared

2    retribution if they inquired directly to legislative leadership.    The Plaintiff forwarded

3    Defendant Baumgart's contact information to hundreds of legislative employees.

4    Defendant Baumgart's effective official legislative address is 900 Court Street NE,

5    Salem, Oregon 97301.

6        35.    The Attorney General had advised the Plaintiff it is the legal counsel for the

7    legislative employees and elected officials but not the Stoel Rives LLP lawyers until

8    yesterday, September 23, 2019.    The Attorney General accepted voluntary service

9    without summons on August 23, 2019. The Attorney General has been deeply involved

10    in advising the Plaintiff's since early Spring 2019 on the arrest of members of the

11    Legislature.    Since July 3, 2019, the Attorney General has been deeply involved in

12    blocking the Plaintiff, an Oregon State Senator, access to public legislative records. The

13    Attorney General is fully aware of all the allegations in this motion, and much wider

14    allegations of misconduct in the Legislative Assembly.    The Attorney General is a

15    statutory entity with no constitutional authority.  Oregon is one of five States in which

16    Attorney General's were intentionally not provided constitutional authority. The Oregon

17    Constitution, Article III, Section 1 Separation of Powers prohibits either branch from

18    performing duties or functions of another branch.    The Legislative Assembly has

19    empowered itself via legislation to hire outside counsel for this reason, written rules

20    prohibiting such cross functions, yet ignored it for political purposes; both in politically

21    allying with the Attorney General, and advising the Oregon State Police of the Executive

22    Branch may perform the functions of a Legislative Branch sergeant-at-arms.  This is a

23    fundamental separation of powers issue but only common to five States in the Union as

24    regards to the Oregon Attorney General.

25

26

Page 16 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1          **Allegations Common to All Claims**

2

3          36.     On August 17, 2018, the Plaintiff, as a member of leadership at the time of

4    the Senate sexual harassment scandal in August 2018, Plaintiff attended a meeting in law

5    offices in Portland in which a cover up plan to block the release of documents to the

6    Bureau of Labor & Industries was outlined by another elected official.   Six elected

7    legislators were present including but not limited to the Plaintiff, Defendant Senator

8    Courtney, Defendant Courtney's Chief of Staff, Defendant Dexter Johnson, and

9    Defendant Kneeling's immediate supervisor, Defendant Daron Hill, the Legislative

10   Administration Director, and at-will employee under Defendant Courtney.   Plaintiff is in

11   possession of certain records, despite a Multnomah County Court order, that relate to

12   female employee abuse that were in fact not turned over to BOLI per the court order.

13   The Defendant Courtney, Defendant Johnson, and Defendant Knieling, and other

14   unnamed individuals, are involved in ongoing civil and court complaints by the Plaintiff.

15   Both state and federal.  In regard to the meeting of August 17, 2018, and other conflicts

16   of interest, the Plaintiff has a formal Oregon State Bar complaint in process against

17   Defendant Dexter Johnson.  Oregon State Bar CAO Intake LDD 1900351.

18         37.     As a result of the August 17, 2018 meeting, the Plaintiff became aware of

19   certain facts Plaintiff thought previously false.   Defendant Courtney and Defendant

20   Johnson, and other non-named individuals in this lawsuit are named with prejudice in the

21   BOLI report STEMSH180801-11138 dated January 3, 2019.   The settlement cost the

22   public $1.3 million-dollars, plus legal fees of outside Counsel, for which, payment was

23   provided from past legislative budgets though unappropriated for that purpose.   It was

24   ineligible for payment by the risk fund.  The legality of the non-appropriated expenditure

25   remains in question as the check was issued on instructions of Defendant Courtney

26   without a legal appropriation per outside legislative lawyers.  The Plaintiff has formal

Page 17 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    ongoing requests with BOLI to acquire the list of aiders and abettors, if not perpetrators,
2    complicit in the sexual harassment scandal that were protected, and remain in the Oregon
3    State Capitol, unknown to public employees.

4        38.    Prior to August 2018, to build and maintain civil relations, the Plaintiff and
5    Defendant Senate President Peter Courtney met routinely at Ike's Coffee Shop near the
6    Oregon State Capitol, sometimes nearly weekly.  The Plaintiff and Defendant Courtney
7    attend the same Catholic Church in Salem Oregon, the same weekly Mass on Saturday
8    evenings, and sit across the aisle on opposite sides.  Both have routinely discussed their
9    catholic religious faith believing in Heaven, Purgatory, and Hell.  Those discussions
10   included the fear of Defendant Courtney that a certain Deacon, or Priest, will deny him
11   communion, if not excommunicate him, damning him to Hell for eternity.  Defendant
12   Courtney's political positions are certainly counter to Catholic Doctrine.  The weekly
13   Mass recited Penitential Act says we are held accountable for our "thoughts and in my
14   words, in what I have done and in what I have failed to do."  Catholic Doctrine also says
15   to call out the sinner.  That the majority in the Oregon State Senate are atheists, or have
16   no faith community, or obvious religions, does not eliminate the fact the Senate observes
17   daily opening prayers, and some members actually believe in Hell and Damnation.
18   Defendant Courtney was praised last week on the Floor of the Oregon State Senate for
19   his devout Catholicism, and without any rebuke.  Until such time prayers and religion are
20   banned in the Oregon State Senate, both the Plaintiff, and the Defendants, have a full
21   First Amendment right to practice their faith.  Defendant Courtney certainly knows these
22   Catholic tenants as does the Plaintiff.

23       39.    In early December 2018, the Plaintiff was advised by two unnamed
24   legislative employees there was a 'leadership' policy to delete public records after a
25   request was made if the request did not ask specifically ask for deleted records. This was
26   documented in writing, and shared with select members of the media.  The Plaintiff

Page 18 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    believes an immediate injunctive order is required to prevent the destruction of public
2    records relating to this lawsuit

3    40.    The Plaintiff filed numerous public records requests and complaints in
4    regard to the failed legislative pay equity analysis on behalf of over 100 employees. The
5    failed pay equity implementation was overseen by Defendant Senator Courtney, his Chief
6    of Staff, and Defendant Kneiling's predecessor, whom was on the legislative payroll until
7    last month.    Those public records requests continue to be stalled, or blocked by the
8    Defendant Dexter Johnson of Legislative Counsel, and Defendant Jessica Knieling, the
9    interim HR Director in Employee Services.    These commenced in September 2018
10   continuing until today. They include but are not limited to LCs 7644, 7650, 7657, 8002
11   (11 Jan 19), 8017, 8002 (12 Feb 19), 8017, 8026, 8045, 8047, 8049, 7668, 8000, 8002 (3
12   Jul 19), 8004, and 8005. See Exhibit 3.

13   41.    In March 3, 2019, the Plaintiff filed a formal complaint and censor motion
14   that is in the Senate record against Defendant State Senator Peter Courtney. By rule, if
15   not law, the complaint should have been processed, investigated, and acted upon.
16   Theoretically, the same process the Senate Special Conduct Committee should have
17   followed in regard to the Plaintiff. Senate Resolution 1 was formally filed as a censure
18   resolution, drafted by Defendant Johnson, which by rule and or law, should have gone to
19   the Senate Conduct Committee but sent by Defendant Courtney in his Presiding Officer
20   role to the Senate Rules Committee which blocked any investigation. This was allegedly
21   done based on the legal advice of Defendant Johnson of Legislative Counsel Office. Two
22   other majority State Senators participated in the blocking of the formal complaint. The
23   court should note a formal complaint in the Legislature requires four components, none
24   of which were applied in the actions against the Plaintiff in the ongoing secret
25   investigation.

26

1    42.    The Plaintiff was subpoenaed and deposed, and considers himself a hostile

2    witness against the Defendant Johnson, and actions of Legislative Counsel, and

3    Employee Services now overseen by Defendant Knieling, and under the direct appointing

4    authority of Defendant Courtney, in a current pending case before the courts. Several of

5    the Defendants remain named in multiple other pending cases before the court for which

6    the Plaintiff would be a hostile witness.

7    43.    During April, May and June 2019, the Plaintiff requested a variety of legal

8    opinions and position papers on the authority of the Oregon State Senate President and

9    Governor of Oregon to fine, arrest, physically detain, and imprison elected State Senators

10   to provide a quorum. Defendant Courtney and Defendant Johnson, along with State

11   Senator Ginny Burdick, the majority leader, threatened they could arrest members with

12   the Oregon State Police. This documentation was freely shared with the media, and

13   communicated to the Superintendent of the Oregon State Police. On at least three

14   occasions, the Plaintiff provided every State Senator a copy of the Justia Opinion

15   Summary and Annotations    for *Bond v. Floyd, 385 U.S. 116 (1966)* which clearly states

16   a legislator does not surrender any constitutional rights under the law. The Plaintiff

17   spoke to the same on the Floor of the State Senate numerous times.

18   44.    During the period of May 7-12, 2019, the twelve (12) living minority

19   members walked out of the Oregon State Senate in constitutional protest. During this

20   time period, Defendant Courtney, majority leader State Senator Ginny Burdick, and other

21   majority State Senators, routinely insinuated or stated they could fine minority Senators,

22   and order the Oregon State Police to find, arrest, physically detain, and imprison minority

23   legislators if they so decided. The media statements were "If you walk out again, we will

24   have you in leg irons, handcuffs, chained to your desk in an orange jumper suits."

25   45.    On June 3, 2019, the Plaintiff was asked to read a letter on the Floor of the

26   Oregon State Senate with four other Oregon State Senators as a protest Remonstrance.

Page 20 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    The letter was part of multiple media reports that day on a timber company announcing it

2    was leaving Oregon due to two bills in the Legislative Assembly.  After it was read,

3    Defendant Manning did a Remonstrance in which he twice verbally attacked a minority

4    party staff member who is a protected class.  For which, the Plaintiff requested on the

5    Senate Floor that Senator Manning refrain from verbally attacking staff.  Senators are

6    open to debate but not staff whom are banned from responding in the opinion of the

7    Plaintiff.  Plaintiff thought nothing further of it until mid-July 2019 at which time rumors

8    started to spread that secret investigations were being conducted in regard to Floor

9    speeches at that time.  Rumors that are now true in that the Defendants had commenced

10   secret political investigations using outside lawyers paid for by tax dollars on or about

11   May 30, 2019.  Including against the Plaintiff and two minority members of the Senate

12   Conduct Committee, initiated by Defendant Manning, himself a member of the Senate

13   Conduct Committee.  For which under the law, all three members were no longer eligible

14   to serve on said committee.

15        46.    On June 19, 2019, the Plaintiff carried a Minority Report on SB 761 on the

16   Floor of the Senate.  There is eight (8) minutes of debate led by the Plaintiff on the

17   Minority Report.  There is twenty-eighty (28) minutes of debate on the main bill, for

18   which, the Plaintiff is five (5) minutes of that debate.  SB 761 as passed by the majority,

19   without a single vote from the minority, is intended to aid in blocking the ability of the

20   citizens of Oregon to exercise their initiative and referral rights under the Oregon

21   Constitution.  It is the elected opinion of the Plaintiff, so stated on the Floor as

22   constitutionally allowed, SB 761 combined with other majority actions, is a de facto

23   attempted political coup against the citizens of Oregon in direct opposition to Oregon and

24   United States Constitution.  This opinion is supported by evidence in the public record of

25   the Floor of the State Senate from the Oregon Secretary of State.  The Plaintiff did speak

26   for more than thirteen (13) minutes of free speech, no doubt comprising thousands of

Page 21 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    words, and told Defendant Courtney "Mr. President, and if you send the state police to
2    get me, Hell's coming to visit you personally." The Plaintiff, a fellow practicing Catholic
3    with Defendant Courtney, does in fact believe President Courtney's soul is now lost. The
4    Plaintiff, and all the majority Senators, know full well those in their own caucus, in the
5    2018 Oregon Primary election, routinely sent hostile protesters to the home and doorstep
6    of their fellow State Senator Rod Monroe, making Rod and Billy Monroe's life a living
7    Hell on this own property. That Defendant Courtney should not have expected equal
8    treatment by protesters making his life a living Hell is now an undisputable historical fact
9    now. As a direct result of Defendant Courtney's request for the arrest by physical force
10   and internment of minority State Senators, the protest impact was worldwide. Twice
11   Defendant Courtney closed or refused legislative Session days at the Oregon State Senate
12   to avoid citizens lawfully protesting their grievance's to the government and legislature
13   as guaranteed under both the Oregon and United States Constitutions: June 22, 2019 and
14   June 27, 2019. Plaintiff notes some majority Senators on the Floor appeared offended,
15   and Defendant Courtney did ask members to show decorum, and Plaintiff did apologize
16   in the public forum of the Senate Chamber to Defendant Courtney during the debate.

17        47.    On June 20, 2019, the minority rural members of the Oregon State Senate
18   left the Oregon State Capitol in protest to the actions of the majority members of the
19   Oregon State Senate, and the Governor of the State of Oregon. Most minority members
20   departed the State of Oregon on June 19, 2019 remaining gone until June 29, 2019. The
21   Plaintiff remained on his personal property from June 19-22, 2019 in constant
22   communications with his official office and official duties representing over 130,000
23   citizens in Senate District 12. Plaintiff has every reason to believe the Oregon State
24   Police knew the Plaintiff's location, and knew the 'arrest' order was illegal, therefore,
25   never attempted the arrest of the Plaintiff, or other State Senators. After daily caucus
26   conference calls, it was apparent no agreement would be reached between the minority

Page 22 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1  and majority, the Plaintiff left the State of Oregon for other purposes, but remained in
2  constant communications in his elected functioning capacity as a State Senator. Daily
3  telephonic briefings outlined the intended use of force by the Oregon State Police, the
4  alleged involvement of the Federal Bureau of Investigation, and search for minority
5  members exercising their constitutional protest rights. Press releases, videos, media and
6  social media of Defendant Courtney, his peer majority Senators, and the Governor, all
7  publicly supported the threats of arrest without judicial process. The minority left in
8  constitutional protest based on the violation of a written agreement to work together
9  signed by Defendant Courtney and the Governor of the State of Oregon.

10      48.    On June 20, 2019, according to media sources, the majority State Senators
11  lacking a constitutional quorum with no due process consented on the Floor of the
12  Oregon State Senate to fine the Plaintiff, and all minority Senators, $500 per day for
13  being absent, and directed Plaintiff Courtney to ask the Governor of Oregon to have the
14  Oregon State Police find, arrest by force, and falsely imprison minority members who
15  had committed no crime nor faced any Judicial action by state and federal courts.
16  However, the media reports were not accurate. According to the official journal of the
17  Oregon State Senate, no such vote happened. No such motion happened. The journal
18  states Senator Ginny Burdick asked Defendant Courtney to fine missing members $500
19  per day and asked that Defendant Courtney compel attendance of missing members. In
20  seconds, Defendant Courtney referenced a letter to the Governor to 'compel' minority
21  members using the Oregon State Police had already been sent to the Governor. This
22  according to the Secretary of the Senate. Defendant Johnson wrote lengthy legal
23  opinions justifying the violation of the Plaintiff's, and other minority members, rights
24  under the Oregon and United States Constitution. Any continued reliance of Defendant
25  Johnson, and any counsel for the Governor, by their tradition claim of non-judicial arrest
26  authority under *Kilbourn v Thompson, 103 U.S. 168 (1880)* is completely erroneous as

Page 23 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    the case included extensive due processes matching that of the courts and ORS 171.510
2    completely absent in this matter before the court.

3    49.    An agreement, pledging no retribution, was reached between Defendant
4    Courtney and minority leader State Senator Herman Baertschiger, and the Governor, led
5    to the return of minority State Senators on June 29, 2019 to complete the constitutional
6    functions of the legislative Session. The Plaintiff due to transportation issues did not
7    arrive back to the Oregon State Capitol until Saturday afternoon July 29, 2019. First,
8    Plaintiff attended Conference Committee Hearing followed by a pre-Floor caucus
9    meeting. After the minority caucus meeting, Senator Herman Baertschiger asked to
10   speak with the Plaintiff in regard to possible sine die or the end of the legislative Session
11   that evening. As part of that plan, which would effectively kill dozens of bad bills the
12   Plaintiff believed would hurt the citizens of Senate District 12, the Plaintiff agreed not to
13   go to the Floor of the State Senate that evening. That plan or effort to Sine Die on June
14   29, 2019 failed.

15   50.    On June 30, 2019, the last day of the regular legislative Session, the
16   Plaintiff attended the opening and running Floor Sessions of the Oregon State Senate
17   fulfilling the Plaintiff's routine duties as a citizen legislator. On the afternoon of June 30,
18   2019, the Speaker Pro Tem State Senator Laurie MonnesAnderson asked the Plaintiff to
19   help with one of their members of the majority caucus: State Senator Sarah Gelser. The
20   Plaintiff whom normally does not attend the last three bills of any legislative Session, as
21   they are purely 'horse trading' and 'pork' bills done in exchange for votes and rewards.
22   These bills are referred to as 'Christmas Tree' bills as they contain presents for voting
23   certain ways. The Plaintiff agreed with the Pro Tem he would not attend this Session
24   ending either. Hence, this would according to the Speaker Pro Tem, allow Senator
25   Gelser to vote, as apparently, she was allegedly hiding in Secretary of the Senate's
26   conference room. Exactly why was never explained. The Plaintiff and Senator Gelser

Page 24 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   have since been in committee hearings and floor sessions together without a single
2   concern raised.

3          51.    On Sunday, June 30, 2019, midafternoon, the Plaintiff had been directly
4   informed by a majority Oregon State Senator that they attended one or more majority
5   caucus meetings attended by Defendant Courtney, Defendant Prozanski, and Defendant
6   Manning in which a systematic plan was outlined to violate the Plaintiff's civil and
7   constitutional rights for political purposes.

8          52.    On Sunday, June 30, 2019, in the early morning, the Plaintiff had learned a
9   second majority Oregon State Senator was claiming they had attended one or more
10  majority caucus meetings attended by Defendant Courtney, Defendant Prozanski, and
11  Defendant Manning in which a systematic plan was outlined to violate the Plaintiff's civil
12  and constitutional rights for political purposes.  This included efforts to attempt to find a
13  'friendly' political state Judge to issue a restraining order but this effort failed.  This
14  evidence in the federal courtroom will not be hearsay.

15         53.    Plaintiff has since been contacted by as third majority Oregon State Senator
16  confirming they also attended one or more majority caucus meetings attended by
17  Defendant Courtney, Defendant Prozanski, and Defendant Manning in which a
18  systematic plan was outlined to violate the Plaintiff's civil and constitutional rights for
19  political purposes.

20         54.    On Sunday, June 30, 2019, late in the afternoon, Defendant Oregon State
21  Senator Floyd Prozanski came to the Plaintiff's State Senator office on the last day of
22  legislative session.  Defendant Prozanski informed the Plaintiff that a Senate Conduct
23  Committee would meet on July 8, 2019 to consider a Legislative Rule 27 complaint to
24  potentially censure and bar the Plaintiff from the Oregon State Capitol.  Oregon State
25  Senate committees operate under the authority and permission of Defendant Senator
26  Courtney.  Defendant Senator Prozanski referenced threating activities that allegedly

Page 25 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   occurred on June 19, 2019 per Defendant Brenda Baumgart of Stoel Rives LLP, the

2   contract investigator.  Defendant Baumgart allegedly issued a then one-page letter titled

3   'Senator Brian Boquist/Interim Finding & Recommendations.' Defendant Senator

4   Prozanski provided a second page, a draft agenda for the scheduled public hearing on

5   Monday, July 8, 2019. Defendant Senator Prozanski provided a third page titled

6   'Legislative Administration, Interim Findings and Recommendations.'  Defendant

7   Senator Prozanski informed the Plaintiff he knew nothing else other than the three pages

8   but would get back to the Plaintiff with details.  Plaintiff pointed out to Defendant

9   Senator Prozanski that the Plaintiff had heard news reports and rumors, but, the Plaintiff

10   had received absolutely nothing officially on this alleged complaint or investigation.

11   The requirement under state and federal due process, and the stated Personnel Rule 27,

12   requires over a dozen legal steps before he, Defendant Prozanski, would receive any

13   report from Defendant Knieling, the interim Human Resources Director, and Defendant

14   Baumgart, contract investigator.  Despite this Rule 27 requirement, none of the process

15   requirements transpired.  Defendant Senator Prozanski stated he would attempt to find

16   out himself, as he only knew about what was in the file he handed me containing three

17   one-sided pages.  Defendant Senator Prozanski was very polite and professional but

18   simply stated that he knew virtually nothing at that time as the newly appointed Chairman

19   of the Senate Conduct Committee.  The Plaintiff did not believe Defendant Senator

20   Prozanski was in possession of any more documents than he provided at that time.  That

21   was a doubtful assumption.

22       55.   The Senate Special Committee on Conduct agenda provided to the Plaintiff

23   by Defendant Prozanski, approved by Defendant Courtney, called a 'Public Hearing and

24   Possible Work Session' on July 8, 2019 at 9:00 am stating 'Invited testimony only'

25   'Consideration of Interim Findings and Recommendations from Outside Counsel Related

26   to Senator Boquist.' June 30, 2019 was the first time the Plaintiff had seen the agenda.

Page 26 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1     56.    The one-page letter or memorandum from Defendant Knieling, referencing

2    it was a joint effort with Defendant Johnson, was given to the Plaintiff by Defendant

3    Prozanski at this meeting on June 30, 2019.  The memo dated June 25, 2019 titled 'RE:

4    Interim Finding and Recommendation" was from Defendant Knieling to Defendants

5    Courtney and Defendant Prozanski with four other addressees.   The memo from

6    Defendant Knieling claims it is "in response to numerous Rule 27 reports and complaints

7    related to Senator Boquist."  Later on July 3, 2019, Defendant Knieling would contradict

8    this statement in writing via Legislative Counsel writing no complaints had been filed

9    either informal or formal.   At the public hearing on July 8, 2019, Defendant Knieling

10    refused to testify placing Defendant Baumgart before the hearing whom would say she

11    had no informal or formal complaints in her possession either. This is contradicted later.

12    The memo recommended the Plaintiff "Senator Boquist be removed from the workplace

13    to mitigate risk during the pendency of the remainder of the investigation."  June 30,

14    2019 is the first time the Plaintiff read this letter.  No Defendant prior to Defendant

15    Prozanski ever contacted or spoke to the Plaintiff.  The Plaintiff has to this filing date

16    never spoken to Defendant Knieling, or the originator of the 'Interim Finding and

17    Recommendation' Defendant Baumgart.  Nor has the Plaintiff to this filing date ever

18    corresponded with Defendant Knieling or Defendant Baumgart in regard to this secret

19    investigation the Defendants had, have, and are executing in coordination with all the

20    named Defendants.

21     57.    The last one-page letter or memorandum Defendant Prozanski provided the

22    Plaintiff was from Defendant Baumgart of Stoel Rives LLP to Defendant Knieling and

23    Defendant Johnson.   The Plaintiff noted immediately both Defendant Johnson and

24    Defendant Knieling were not supposed to be involved in any investigations per the BOLI

25    settlement.    Further, the Plaintiff noted legal conflicts of interest with all three

26    Defendant's named in the Stoel Rives LLP letter titled 'Senator Brian Boquist/Interim

Page 27 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Findings & Recommendations." Defendant Baumgart wrote she has been assigned to
2    handle matters related to Senator Boquist with "one of the categories of report to both
3    Members and staff raising concerns about Senator Boquist's comments on the Senate
4    Floor on Wednesday, June 19, 2019, and subsequent media comments." Defendant
5    Baumgart claims to have "reviewed (and watched) these public statements." Later in the
6    public hearing on July 8, 2019, Defendant Baumgart claims in the public record she made
7    her recommendations purely on media reports. Defendant Baumgart is a member of the
8    Oregon State Bar and a practicing lawyer whom the Plaintiff assumed knew state and
9    federal evidentiary rules. Defendant Baumgart wrote fifteen (15) extracted words in her
10   memo out of thirteen (13) minutes of the Plaintiff's constitutionally protected Floor
11   debate argument including the illegality of Defendant Courtney, and his peer majority
12   Senators, of threating the arrest of minority State Senators. Defendant Baumgart wrote
13   thirty-two (32) words from a fifteen (15) minute interview taped in front of a dozen
14   witnesses by Pat Dooris of KGW News. For the record, Dick Hughes a freelance
15   professional journalist has at least fifteen (15) more minutes of taped interviews too. All
16   the media involved possessed multiple prior emails and releases outlining the illegalities
17   of the then proposed arrest actions of Defendant Courtney and the Governor of the State
18   of Oregon provided by the Plaintiff. This includes at least thirty-one (31) pages of legal
19   documents the Plaintiff provided inclusive of law enforcement and district attorneys. The
20   Plaintiff fully grasps the media under *New York Times v. Sullivan* has full free press
21   rights to cherry pick, edit, and sensationalize reporting to sell and publish stories.
22   Defendant Baumgart as a practicing attorney under the auspices of the Oregon State Bar
23   has a legal duty as an officer of the court to perform due diligence verses gross
24   malfeasance. Defendant Baumgart's memo recommends denying the Plaintiff access to
25   the Oregon State Capitol with zero ·legal due process regardless of constitutional
26   questions. Nor does Defendant Baumgart's memo explain who contractually ordered her,

Page 28 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    using public funds to conduct a secret investigation of an Oregon State Senator.
2    Defendant Baumgart dodged these questions in the committee hearing when asked by
3    minority party Senators.    Defendant Baumgart freely admitted in her committee
4    testimony that her investigation commenced before June 19, 2019, before the alleged
5    Plaintiff statements, cited in her report.

6        58.    On July 1, 2019, the next day, the Plaintiff filed a sixteen (16) item public
7    records request to Defendant Jessica Knieling of Employee Services under the
8    Legislative Administration, and her contract investigator, Defendant Brenda Baumgart of
9    Stoel Rives LLP, and Cameron Miles, the public records lawyer, in Legislative Counsel.

10        59.    Between July 1, and July 2, 2019, it became apparent to the Plaintiff, there
11    had been zero due process, nor would any be provided. If any due process had existed, it
12    had been taken by legally conflicted staff, and conflicted Oregon State Senators,
13    conflicted under both state and federal laws.  Plaintiff did learn the so-called 'Stoel
14    Rives' report had been generated or issued to someone, on June 25, 2019, before or after,
15    it was intentionally leaked to the media.  Despite the Plaintiff having received nothing
16    official, the media coverage was quite spectacular based on the leaked letter authored by
17    Defendant Baumgart of Stoel Rives LLP on the alleged complaints, and threats fanned by
18    other majority legislators, majority staff, and the media.    Media and social media
19    reporting of these events was, and is, worldwide.  Plaintiff's family received multiple
20    death threats; formal cases were opened with law enforcement.    Plaintiff neighbors
21    reported late night prowlers.  Both Plaintiff, and Plaintiff staff, have been threatened
22    based on the complete failure of due process and blockage of public records even as of
23    this filing.

24        60.    On July 2, 2019, at 10:53 am, Defendant Senator Prozanski sent the
25    Plaintiff an update of his understating of the situation.  Quite polite and professional.
26    Plaintiff Senator Prozanski's new, or clarified, understanding was there was not a

Page 29 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    complaint at all. Neither informal or formal. It was a report generated, again without due
2    process, theoretically based on edited news media reports and videos, and input of some
3    sort from a news reporter who had interviewed me in public with more than a dozen
4    witnesses. This was unconfirmed, and the Plaintiff believes incorrect. After the Plaintiff
5    received the update, it was clear that zero due process had existed, and that very clearly a
6    large stack of public records existed someplace, as the news media had records on the
7    25th, contacts had met, interviews conducted, illegal investigations conducted even
8    before August 19, 2019 by Defendant Baumgart, consultations transpired, telephonic
9    records created,   caucus meetings held, a hearing scheduled, committee members
10   consulted, creating the whole endangering situation. Plaintiff resubmitted the same public
11   records request to Defendant Senator Prozanski, Cameron Miles of Legislative Counsel,
12   Lorey Freeman the Deputy Chief Legislative Counsel, as Defendant Dexter Johnson, the
13   formal Legislative Counsel, has a stack of legal conflicts of interest with the Plaintiff.
14   Plaintiff copied Ginger McCall, the then State of Oregon public records ombudsman who
15   recently resigned citing unethical conduct in the Oregon State Capitol, and Paige
16   Clarkson the Marion County District Attorney.  At the time, the Plaintiff thought the
17   District Attorney could legally assist in getting public records. This was in error, as
18   statutorily the Oregon Attorney General was supposed to assist in a citizen's access to
19   public records.  The Plaintiff provided the same public records request to the Oregon
20   State Police and Marion County Sheriff's Office as they are the law enforcement
21   agencies with jurisdiction.

22       61.    Defendant Senator Prozanski later confirmed in an email a modified
23   version of paragraph above, but yet again had no details. Defendant Senator Prozanski
24   did clarify his understanding, that there was no informal or formal complaint, and the
25   term 'reporter' was a news reporter. Plaintiff clearly stated in writing this looked like
26   political retribution coupled with a complete failure of due process that was endangering

Page 30 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    the lives of the Plaintiff's family, staff, and rural neighbors.    Defendant Prozanski
2    claimed due process was being followed citing some unknown legal source.    Defendant
3    Senator Prozanski would later inform the Plaintiff, his assertion, it was an Oregonian
4    newspaper Reporter who was reporting concerns, but it was and is unclear, if the said
5    Reporter was really involved, and the Plaintiff consider this hearsay, but reference was
6    made to a threatening email thus documents existed, or rumored to exist.    Plaintiff did
7    have several email correspondences, totaling over thirty (30) pages of legal arguments on
8    matters in this case, with the said reporter, who authored a story Defendant Senator
9    Prozanski officially posted into the legislative record.    The Plaintiff copied the Marion
10    County District Attorney on the very same email the reporter received.    Plaintiff
11    suggested the said Reporter contact the District Attorney reference the legalities of false
12    arrest, especially using illegal force, as the Governor, Senate President (Defendant),
13    Senate Majority Leader conveyed to Senate Republicans.    The same Reporter was
14    already in possession of a stack of legal documents regarding the criminal implications of
15    illegal arrests outside the state courts, and false imprisonment on the federal side,
16    provided by the Plaintiff.    As were dozens of other reporters and members of the
17    legislature in possession of the same legal documents.    Given the now cross border law
18    enforcement hunt as confirmed in a Governor's press release, federal criminal charges
19    could influence an illegal arrest attempt now, which, was confirmed in a Plaintiff's
20    discussion with federal authorities.

21         62.    On July 3, 2019, the Plaintiff paid to the Oregon State Senate, via
22    Defendant Courtney, the $3500 fine with a persona check.    This fine levied by majority
23    members, lacking quorum, or due process, on June 20, 2019 targeted against all absent
24    minority members. The Plaintiff paid the requested fine to establish standing in state and
25    federal courts to challenge the legality of the use of fines to compel attendance to the
26    State Senate.    The Plaintiff recognizes that should a Legislative body have legally

Page 31 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   established, through due process, with legal quorum a policy, rule or law to enact such
2   fines, it might be constitutional. However, no such due process was undertaken by the
3   Defendants and their majority peers in the Oregon State Senate, and no such rule exists.

4       63.   On July 3, 2019 at 1:43 pm, Cameron Miles of Legislative Counsel
5   provided the public records response, LC 8000, from Defendant Jessica Knieling of
6   Employee Services. No new public records were provided based on the sixteen (16)
7   point request of July 1, 2019. Instead, a three-page Word document was provided
8   allegedly authored by Defendant Jessica Knieling stating at least eight (8) times no
9   notices, records, and/or documents existed. Defendant Baumgart's original 'Interim
10  Findings & Recommendations" stated "these statements have caused Members and
11  Branch employees to report concerns" and "Reports are people are fearful and scared to
12  come to work." However, the public record request reply did not identify a single
13  individual filing any report, instead, it was based on heavily edited media publications.
14  This contradicted previous information provided to the Plaintiff. There is no author or
15  identity on the three-page unresponsive document the Plaintiff received instead of the
16  requested public records. The letter does say eight (8) times no notices, copies or
17  documents exist. It is noted Mr. Miles is the legal processor for public records request
18  possessing no compulsory authority to force the production of records.

19      64.   The Plaintiff was never provided any notice of whom was invited to the
20  Senate Special Committee on Conduct including the Plaintiff himself. The agenda
21  approved by Defendant Courtney, and provided by Defendant Prozanski to the Plaintiff,
22  simply stated there would be a hearing on July 8, 2019 at 9:00 am with invited testimony
23  only. No information other than that stated in this court filing was provided to the
24  Plaintiff.

25

26

Page 32 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1     65.    Prior to the illegally organized public 'conduct' hearing, the Plaintiff had

2 entered into the legislative record on July 8, 2019, the flowing statement by

3 Superintendent Travis Hampton of the Oregon State Police written on July 1, 2019:

4
> "To the best of my knowledge, the OSP is not in possession of
5 > requested documents. I have not had any contact with the
> referenced law firm or their representative. Additionally, the
6 > OSP has not initiated any criminal investigation into the
> referenced conduct and have not forwarded any reports to the
7 > MCDA on the matter. The documents you provided are the only
> physical source of material, other than what I have viewed in the
8 > media."

9
    66.    On July 16, 2019, Captain Tim Fox of the Oregon State Police, in the
10
absence of the Superintendent, in response to Defendants Baumgart's assertions in the
11
July 8, 2019 public hearing stated "I am not aware of any formal assessment." This in
12
regard to Defendant Baumgart's assertion of Oregon State Police actions against the
13
Plaintiff.
14
    67.    Prior to the illegally organized public hearing, the Plaintiff had entered
15
into the legislative record on July 8, 2019, the following statement by the Honorable
16
Paige Clarkson, Marion County District Attorney with jurisdiction over the Oregon
17
State Capitol written on July 2, 2019:
18
19
> "I have reviewed the emails you have sent to me and confirmed
> that my office has not been involved in the review of any official
20 > criminal reports regarding these recent matters. We do not have
> any reports from any law enforcement agency nor was I made
21 > aware of any report from Stoel Rives until I read about it in the
> press."

22

23     68.    Prior to the illegally organized public hearing, the Plaintiff had entered into

24 the legislative record on July 8, 2019, the following statement by the Sheriff Joe Kast,

25 Marion County Sheriff, with jurisdiction over the Oregon State Capitol in Marion County

26 written on July 4, 2019:

Page 33 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1

2   "I have received your request dated July 1, 2019, asking if the
    Marion County Sheriff's Office is in possession of a criminal
3   complaint or report regarding the Stoel Rives letter that you
    attached. To the best of my knowledge, the Marion County
4   Sheriff's Office is not in possession of any such documents."

5

6   69.    Failing to receive any information or due process from the Defendants, the

7   Plaintiff filed a public records access appeal with the Oregon Department of Justice on

8   July 4, 2019 under Oregon law. Plaintiff received no action prior to the illegally

9   organized conduct hearing. On July 12, 2019, the Plaintiff was advised by the Attorney

10  General, a majority party member, they would not assist in acquiring public records. On

    July 19, 2019, a letter was sent to the Plaintiff, that the Oregon Department of Justice
11
    would be representing State Senate President Peter Courtney in his effort to block the
12
    release of public records.
13
    70.    On July 5, 2019, the Plaintiff anticipating no public records or due process
14
    would be forthcoming, and Legislative Counsel would hide behind Senate President Peter
15
    Courtney's status to block the release public records related to the secret investigation
16
    and nearly a dozen other denied records requests, the Plaintiff filed a public records
17
    access motion with the Marion County Circuit Court Case No. 19CV29374. This state
18
    court case is purely for access to public records that every citizen should be able to
19
    access. It is filed under Oregon Revised Statutes 182.427 and ORS 192.411. This case
20
    covers some records that might be discoverable under this filing but is much wider.
21
    ODOJ will represent State Senator Peter Courtney in an effort to block the release of
22
    damaging public records. The state court suggested the filing should be to a government
23
    body not an elected official despite the law, and admission by Defendants in both cases
24
    the records were being blocked by 'elected officials' by citing such Oregon Revised
25

26

1   Statutes. Further, the Attorney General is representing Defendants in the Circuit Court
2   case including blocking the release of outside counsel's public legislative records.

3       71.   On July 8, 2019, the Plaintiff attended the illegally organized hearing of the
4   Senate Special Committee on Conduct with his wife, daughter and son with over 100
5   supportive citizens in attendance. Though the Plaintiff was not actually invited to testify
6   in advance nor provided a format for the public hearing. Defendant Senator Prozanski
7   displayed nothing but contempt to my family and to the citizens attending the alleged
8   public hearing. Defendant Senator Prozanski was completely unclear as to the intent or
9   authority of the 'committee' stating it was not having a hearing to adjudicate anything but
10  instead receive the 'report' from Defendant Knieling and Defendant Baumgart.
11  Defendant Senator Prozanski was not even sure whom was going to speak as Defendant
12  Knieling refused to speak instead delegating to Defendant Baumgart, the contracted
13  outside attorney investigator, to present to the so-called non-adjudicating committee
14  which in fact did adjudicate per the public record. Defendant Senator Prozanski claimed
15  the committee would make recommendations to some unknown and unstated entity.

16      72.   Defendant Baumgart claimed in the public hearing on July 8, 2019 she
17  possessed no reports or complaints herself. Some unknown person had contacted her to
18  initiate an investigation sometime before August 19, 2019 of the Plaintiff. Defendant
19  Baumgart claimed she based her June 25, 2019 solely on reviewing videos and news
20  media reports. Defendant Baumgart claimed she did not contact the Plaintiff as it was
21  early in her ongoing investigation. Defendant Baumgart claimed her job was to protect
22  the brand of the Legislature from lawsuits and workers compensation complaints by
23  employees. Defendant Baumgart claimed she was not a constitutional lawyer so could
24  not address free speech issues of a legislator let alone a citizen coming to the Oregon
25  State Capitol. Defendant Baumgart claimed as an employment lawyer she stood by her
26

1    recommendation to deny access to the Oregon State Capitol to the Plaintiff even though

2    the Plaintiff was an elected Oregon State Senator

3           73.    Defendant Senator Manning initially accused the two minority members of

4    the Senate Special Committee on Conduct of colluding and communicating with the

5    Plaintiff to obstruct the nonpartisan nature of the so-called conduct committee.  Both

6    stated on the record they had not spoken to the Plaintiff.  This is true.  At the time, this

7    conspiracy accusation seemed very strange.  However, the Plaintiff and other State

8    Senators learned in that past week that Defendant Manning knew the two minority

9    members were under secret investigation based on complaints he Defendant Manning had

10    filed.  Under the law, rules, none of the three were eligible to legally serve on the

11    committee.  Neither of the minority parting members knew they were under investigation

12    at the time of the public hearing.  The appointing authority for the committee, Defendant

13    Courtney had to have known they were violating the law, unless, he had delegated his

14    appointing authority to someone else in his staff.  Defendant Manning is alleged by three

15    of his own caucus members of conspiring to violate the rights of the Plaintiff, exactly as

16    he accused minority committee members of doing so in public.  This allegation was re-

17    enforced again with the past week by members of his own caucus during September 2019

18    Legislative Days.  Defendant Manning in the hearing stated he had "many many"

19    complaints and concerns from employees including another Senator who was texting him

20    during the hearing itself.  Defendant Manning could provide zero names of complainants.

21    Defendant Manning lamented on and on about the mental capacity and state of the

22    Plaintiff's mind.  Defendant Manning is on the public record as calling minority members

23    of the Oregon State Senate terrorists.  Defendant Manning was at the time of the hearing

24    the subject of a complaint from a minority protected class staff member of which Senator

25    Manning verbally attacked twice on the Floor of the Oregon State Senate.  The Plaintiff

26    challenged Defendant Manning in a procedural inquiry on the Floor of the State Senate in

Page 36 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   regard to the afore mentioned verbal attack.  Defendant Manning filed employment
2   complaints against the minority protected class employee with Defendant Kneiling's
3   assistance.  The Plaintiff is fully aware of three ongoing conduct complaints against
4   Defendant Manning.  Defendant Manning's actions against legislative employees after
5   the conduct hearing of July 8, 2019 are the subject of two formal complaints: one state
6   and one federal.

7       74.     Defendant Dexter Johnson, Legislative Counsel, did not attend the public
8   hearing on July 8, 2019. Defendant Johnson is named as legally reviewing all the actions
9   in the Defendant Knieling memo.  Defendant Johnson is the chief, if not sole legal
10  counsel in his own opinion, in the Oregon State Senate.  Defendant Courtney routinely
11  refers to Defendant Johnson as his personal law firm.  Defendant Johnson has personally
12  authored all the Plaintiff's known legal opinions promoting the fining, arresting, physical
13  force and imprisonment authority espoused by Defendant Courtney despite his own legal
14  conflicts of interest with the Plaintiff.  Defendant Prozanski in the same hearing told
15  other committee members if they wanted constitutional opinions on his actions or the
16  committee's powers, they as individual legislators could seek such opinions from
17  Defendant Johnson.  The Plaintiff does have multiple complaints in progress against
18  Defendant Johnson.   Defendant Baumgart did claim Defendant Johnson was not
19  supposed to be involved with complaints and investigations due to the BOLI settlement
20  signed by Defendant Courtney, but none-the-less, his direct involvement is documented
21  in writing.

22      75.     The Plaintiff as the subject of the July 8, 2019 employment or conduct
23  hearing did not even know if the Plaintiff would be invited to speak. The Plaintiff simply
24  prepared a written statement as no lawyer would advise any statement prior to discovery
25  and due process. This is attached for the court. As the Plaintiff filed in Marion County
26  Circuit Court for the public records regarding the secret investigation, the Plaintiff

Page 37 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1  believed any hearing statement may have been detrimental due to the complete absence
2  of due process.  The Plaintiff was unaware of the public record, alleged complaint,
3  available documentation, or intent of the majority members of the committee, other than
4  to violate the Plaintiff's civil and constitutional rights.  The Plaintiff thanked the Oregon
5  State Troopers for their service and professionalism.  The Plaintiff remains on very good
6  terms with the Troopers of the Oregon State Police.  The Plaintiff thanked the 'at-will'
7  staff of the legislative Branch in the face of the continued abuse and retribution displayed
8  or tolerated by the Defendants for political purposes.  Then informed the Senate Special
9  Committee on Conduct the matter should be settled in a court of law.

10      76.    The Senate Special Committee on Conduct took nearly an hour break
11  apparently for Defendant Prozanski to consult and confirm with someone outside of the
12  hearing.  Reconvening Defendant Prozanski and Defendant Manning attempted to move a
13  series of motions that Defendant Prozanski claimed were prepared by some unknown
14  'staff' for the committee.  The actual motions were not made public either in advance or
15  after the hearing.   The two minority member State Senators were not provided the
16  motions in advance either.  The committee deadlocked.  To break the deadlock, and not
17  remain for hours and hours, a motion to 'recommend' the Plaintiff announce visits to his
18  own office to the Secretary of the Senate twelve (12) hours in advance, and the Secretary
19  of the Senate direct the Oregon State Police to increase their presence in the Oregon State
20  Capitol when the Plaintiff visited his own daily office was agreed upon.   Note the
21  Legislature does have a policy and rule that all amendments must be in writing but this
22  was ignored.  The 'committee' possess no authority what-so-ever to order anything of
23  this sort.   The Secretary of the Senate, an effective at-will employee of Defendant
24  Courtney in the Legislative Branch, has no authority to direct a law enforcement agency
25  of the Executive Branch to do anything either.  Likewise, the actions of the Oregon State
26  Police to take unilateral action against any citizen, let alone an elected Oregon State

Page 38 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Senator, without criminal or judicial authority, smacks of abuse of power, violation of
2    civil rights, and more constitutional provisions than can be cited.

3    77.    The members appointed to the Senate Special Committee on Conduct as
4    appointed by Defendant Courtney is in legal question.    One version of committee
5    documents related to this matter list the membership as Defendant Senator Floyd
6    Prozanski, Defendant Senator James Manning, Senator Tim Knopp (Minority Member)
7    and Senator Kim Thatcher (Minority Member).    Another version of committee
8    documents lists Defendant Senator Floyd Prozanski, Defendant Senator James Manning,
9    Senator Tim Knopp (Minority Member) and Senator Alan Olsen (Minority Member)
10    whom were present on July 8, 2019.    Yet another version of the committee documents
11    related to this matter signed by Defendant Senator Floyd Prozanski lists Defendant
12    Senator James Manning, Senator Laurie MonnesAnderson the Speaker Pro Temp, and
13    Senator Alan Olsen (Minority Member). The Plaintiff notes that no legislative committee
14    has the power to legally block any citizens access to the Oregon State Capitol as no rule,
15    policy, law or constitutional document exists, and no such lawful order exists from the
16    Judiciary at this time.

17    78.    It is now a material fact, the Senate Special Committee on Conduct was
18    comprised of three legally conflicted members: Defendant Manning whom knew Senator
19    Olsen and Senator Knopp were under investigation along with the Plaintiff. None could
20    legally serve.    Why Defendant Manning knowingly violated the law is unclear.
21    Defendant Prozanski's knowledge that the committee was illegally constituted is an
22    unknown. Defendant Prozanski certainly knew the committee had zero authority to take
23    action without a vote of the full Senate as he cited 'recommendation' numerous times. A
24    vote that never happened.    It is now clear as to why Defendant Baumgart refused to
25    answer questions to the two minority members of the committee, as an answer would
26    have required admission, as they were under secret investigation from her as well.

Page 39 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    79.    On July 8, 2019, after the so-called public hearing at approximately 3:36

2    pm the media wrote the following in regard to the Plaintiff, State Senator Brian Boquist:

3
4            "Just asked Courtney's office. They said the recommendations
             take effect immediately, to wit:

5            --You are to notify the Secretary of the Senate 12 hours in
             advance of your being in the Capitol, so OSP can beef up its
6            presence (to reassure people that all is safe, as I interpret it. It's
             not to follow you around, etc.).
7
             --You are not to retaliate against anyone regarding these issues.
8
             Despite Manning's repeated efforts, and some by Prozanski, the
9            committee did not rule that your comments constituted threats."

10    80.    On July 9, 2019, Defendant Floyd Prozanski, Chairman of the Senate

11    Special Committee on Conduct of the 80th Legislative Session, which has legally ended

12    June 30, 2019, using letterhead listing the wrong membership, after stating the committee

13    had no adjudication authority, directed the Plaintiff to the comply with the following:

14
15           "If you plan to be in the Capitol during the pendency of the
             ongoing investigation, please provide such notice to the Secretary
16           of the Senate as required in the approved motion."

17           "A. Require Sen. Boquist to give at least 12 hours advance notice
             in writing to the Secretary of the Senate if he intends to be in the
18           Capitol; and,

19           B. While Sen. Boquist is at the Capitol, there will be increased
             Oregon State Police presence."
20

21    81.    The letter penned by Defendant Prozanski independently and outside the

22    limited authority of even the questionable authority of the Senate Special Committee on

23    Conduct does not represent the actions or debate of the committee members in the public

24    hearing.  The correspondence signed by Defendants Prozanski is a direct violation of the

      Plaintiff's civil and constitutional rights.
25

26

Page 40 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    82.    On July 9, 2019, Defendant Floyd Prozanski, Chairman of the Senate
2    Special Committee on Conduct of the 80th Legislative Session, sent virtually the same
3    letter to the Secretary of the Senate but listing different committee members, essentially
4    directing the Secretary, an at-will employee of Defendant Courtney, to so direct the
5    Oregon State Police, an executive agency, and to inform every employee of the
6    Legislative Branch each day the Plaintiff visits his own legal offices in the Oregon State
7    Capitol. The Plaintiff alleges the Secretary of the Senate is further violating his civil and
8    constitutional rights each time such a notice is emailed effectively worldwide. However,
9    the Secretary of the Senate would face immediate retribution and termination from
10   Defendant Courtney along with the likely loss of her $15,000 per month at-will
11   employment if she failed to comply.   Defendant Johnson has legally sustained the
12   unilateral termination of the Clerk of the House by the Speaker of the House in recent
13   history which is the mirror position of the Secretary of the Senate.

14   83.    On July 9, 2019, the Plaintiff, and his wife, met with Superintendent Travis
15   Hampton and Lieutenant Doug Shugart of the Oregon State Police in their offices in the
16   Oregon State Capitol.  The Superintendent stated his understanding from the hearing
17   tapes was the Plaintiff was not to enter the Oregon State Capitol without twelve (12)
18   hours' notice to the Orgon State Police and the Secretary of the Senate.  To protect the
19   Oregon State Police contract with the Legislative Assembly, that was his marching
20   orders. The Plaintiff's understanding was that Lieutenant Shugart would attempt to be in
21   the Capitol when the Plaintiff was present.  The Plaintiff fully alleges this is an illegal
22   abuse of power and utilization, without due process, or juridical authority, and a flagrant
23   violation of both the Oregon and United States Constitution.

24   84.    The Capitol Unit of the Oregon State Police (OSP) is effectively an 'at-
25   will' entity that can be dissolved or eliminated by Defendant Courtney, as it is a contract
26   law enforcement entity. The approximately twelve (12) Troopers, two (2) Sergeants, and

Page 41 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    one (1) Lieutenant are funded under a contract with the Legislative Assembly to provide
2    law enforcement support to the Oregon State Capitol. The OSP contract is expanded
3    during legislative Sessions by the addition of up to six (6) OSP retirees. The Plaintiff
4    was substantially involved in the expansion of this contract. If the contract is cancelled
5    by the Presiding Officers, Defendant Courtney being one, the Troopers are effectively
6    terminated as their positions and funding are solely dependent upon the contract. The
7    Oregon State Police have a similar contact for law enforcement with Oregon State
8    University.

9        85.    On July 23, 2019, the Plaintiff received limited redacted and altered public
10   records from the Defendants via Legislative Counsel under the direction of Defendant
11   Johnson.   Most of the requested public records were missing.   Defendant Johnson
12   attempted to claim Oregon Revised Statute exemptions that will not be allowed in a court
13   of law. What records were released clearly show a coordinated intentional effort by the
14   Defendants to violate the Plaintiff's civil and constitutional rights.

15       86.    The Plaintiff alleges the Defendants know their controversial actions have
16   been reported worldwide in the media and social media to millions and millions of
17   people.   One social media outlet alone has over 800,000 reads of the actions of
18   Defendants against the Plaintiff. The Plaintiff and his Senate office have received well
19   over one thousand emails, calls, and contacts with some approximately 80% supportive
20   of his freedom of speech, many of the remainder are threatening violence mostly for
21   opposing HB 2020 an environmental bill whose legislative failure is blamed on the
22   walkout not a lack of votes in the majority caucus. The damage to the Plaintiff is
23   irreputable, permanent, and ongoing. The Oregon State Police and Polk County Sheriff's
24   Office have publicly stated they are investigating threats against the Plaintiff, his family,
25   his employees, and even his cow, all based on the actions of the Defendants, which the
26   Plaintiff alleges are unconstitutional actions by the Defendants.

Page 42 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    87.    On July 12, 2019, the Oregon Department of Justice, Attorney General,

2    issued a letter to the Plaintiff refusing to assist in the acquisition of public records related

3    to this case prior to the Plaintiff's filing of this lawsuit. Plaintiff had requested the

4    Attorney General's assistance under ORS 192.311 to 192.478 in an effort to establish a

5    minimal due process on July 5, 2019.

6    88.    July 19, 2019, the Oregon Department of Justice, Attorney General, issued

7    a letter to the Plaintiff appointing legal counsel to defend Defendant Courtney in *Brian*

8    *Boquist v. State Senator Peter Courtney* in the Marion County Circuit Court Case No

9    19CV29374. The case is purely a motion to force the disclosure of public records

10    previously requested under Oregon law.

11    89.    July 23, 2019, the Legislative Counsel Committee via the public records

12    attorney provided the Plaintiff with what was effectively a denial for the requested public

13    legislative records required to respond to any allegations raised in the still secret

14    investigations. Plural is used as if proper public legislative records would have been

15    released per the law, and due process, the Plaintiff would have learned of the original

16    secret investigations of six Senators initiated on or before May 30, 2019. Legislative

17    Counsel sited seven (7) Oregon Revised Statute citations on the exempted records but no

18    reference to the size or volume of the refused public records. Further, the LC 8000

19    response listed eight (8) avenues of appeal including ORS 192.427 meaning elected

20    officials, likely Defendants, possessed or were blocking the release of the records. LC

21    8000 did contain the few or couple of documents the Attorney General said would be

22    forthcoming in their pre-mature denial of July 12, 2019. The few pages had become 204

23    pages containing hundreds of redactions, meaningless, and wholly lacking in substance in

24    that a hearing could not have even been conducted without stacks of additional legislative

25    records. Nothing was provided in terms of the ongoing secret investigations.

26

1     90.    On or about June 30, 2019, the Governor of Oregon in regards to the
2  Plaintiff, and other minority party State Senators stated publicly: "revenge is a dish best
3  served cold and slowly." This statement got worldwide coverage with over 1.2 million
4  articles on Google. Any reasonable person sees the arrest, compel, and fine issue along
5  with ongoing retribution as quite an active ongoing controversy. The recall effort of the
6  Governor is a material fact as related to this controversy.

7     91.    On August 23, 2019, as a cited direct result of the Plaintiffs filing of the
8  original motion in this case, the majority Senate Democrat Caucus, and Defendants,
9  decided to reverse positions, and claim they would no longer seek collection of fines
10  levied commencing June 21, 2019. Plaintiff had paid his fines in early July 2019. On
11  September 21, 2019, the Office of the President (Defendant) returned the Plaintiff's
12  check. The Attorney General is claiming Plaintiff therefore lacks standing. False, as the
13  damage has been done, damage continues, new threats have been made, and the
14  Defendants openly admit in writing and via press releases the actual controversy
15  continues. Indeed, 'revenge is best served cold and slowly.'

16     92.    On or about August 26, 2019, the Plaintiff decided to determine if the
17  Attorney General would do anything but support the political position of the Defendants.
18  The Plaintiff requested under ORS 192.411, the Attorney General assist in acquiring the
19  requested public legislative records. Instead, the Attorney General has helped block the
20  release of legislative records.

21     93.    On or about August 28, 2019, discussions and conference calls began to
22  negotiate a special session of the Oregon Legislative Assembly (House and Senate) for
23  the purpose of fixing a death penalty bill from the 2019 Regular Session. Discussions of
24  threats of arrest were part of those discussions. The real threats of arrest were raised
25  again by the leadership in the Legislature. These continued for several weeks up to last
26  week. However, majority party members in the two chambers of the Legislative

Page 44 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Assembly had informed their leadership they would fail to show up for a special session,

2    effectively denying quorum, so all threats of arrest vaporized. The majority party was not

3    going to arrest their own members. The special session failed to gain the support of the

4    House Democrat Caucus.

5        94.    On September 3, 2019, the Deputy Attorney General, a political appointee,

6    officially refused to assist in the release of public legislative records in writing. The

7    normal employee of the Oregon Department of Justice whom would respond to such a

8    request is not a political appointee. The eight (8) page response was very enlightening.

9    Plaintiff learned there were ninety-nine (99) additional records claiming lawyer-client

10   privilege between Defendant Knieling, Legislative Counsel, and Defendant Baumgart. A

11   claim that violates the law inclusive of the Bureau of Labor & Industries Conciliation

12   Agreement signed but Defendant Courtney on behalf of the Legislative Assembly along

13   with witnessed by other Defendants.  In short, Legislative Counsel and Legislative

14   Administration are forbidden to be involved with the outside counsel and any

15   investigations.  The BOLI Conciliation Agreement is further signed by the Speaker of

16   the House of Representatives, along with lawyers representing all, on March 5, 2019.

17   The Attorney General had refused to represent the Defendants in the matter.  These

18   public legislative records are in dispute in the Marion County Circuit Court Case No

19   19CV29374 with a court date of November 6, 2019.  It is purely a public legislative

20   records case in an attempt to get public legislative records now secret released to the

21   public.

22       95.    On September 17, 2019, the Plaintiff learned the Defendants had been

23   conducting secret free speech investigations, for comment on the Floor of the Oregon

24   States Senate, against six (6) minority party members. This investigation began on or

25   about May 30, 2019. This is now a material fact. The secret investigation was being led

26   by Defendant Knieling and Defendant Baumgart of Stoel Rives LLP.  Defendant

Page 45 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Baumgart was or is using a second Stoel Rives LLP lawyer named as Melissa Healy.
2    Again, material fact. Defendant Manning has been directly involved since at least May
3    30, 2019. None of these investigations can transpire without 'appointing authority'
4    approval that lies with Defendant Courtney. Also being investigated is a prominent
5    Portland business man, and a homosexual ex-employee minority staffer whom quit the
6    Legislative Assembly to avoid the harassment and retribution of the Defendants. The
7    participation of Defendant Manning, and investigation of two State Senators from the
8    Senate Special Committee on Conduct, means these three should have legally been
9    removed on or about May 30, 2019 from the committee. Again, material fact. Again,
10   active present actual controversy.

11   96.    On September 18, 2019, the Oregon State Senate at 11:00 am conducted an
12   official Senate Session. Per Senate Rules, any complaint against the Plaintiff, or the
13   other five (5) minority party State Senators was required to be brought before the whole
14   of the Oregon State Senate. It was not. In fact, for all the political rhetoric, the Floor
15   Session was very quiet. The normal lone Oregon State Trooper assigned to the Floor did
16   not even attend the Floor Session. Nor was there a normal staff of Oregon State Troopers
17   visible in the Oregon State Capitol for the four Legislative Days Monday thru Friday.
18   The Plaintiff did have a pleasant conversation on Friday with the OSP Capitol Unit
19   Commander and Sergeant in the hallway. Instead, the Defendants continue with
20   indefinite secret investigations in violation of state and federal laws. Spying on
21   politicians for political purposes using official government resources is quite the active
22   controversy across the nation including the Oregon State Senate.

23   97.    For the court's edification, the Oregon State Senate consists of thirty (30)
24   independently elected Senators each representing approximately 130,000 citizens. The
25   entire workforce in the legislative Branch exists at-will to support the thirty (30) State
26   Senators, and sixty (60) State Representatives. Historically, at founding formation, each

Page 46 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Chamber, Senate and House, provided its own internal staff from within its own ranks.
2    Elected Senators worked at their own desks performing nearly the entire legislative
3    process themselves.   Only in recent history have the Presiding Officers hired large
4    numbers of at-will staff that are nearly entirely beholding to the Presiding Officers for
5    employment.

6    98.    Plaintiff notes for the court that a 'compel' process was adopted by the
7    Legislative Assembly in the past in the form of Oregon Revised Statute 171.510
8    'Legislative process to compel attendance and production of papers.'   The process
9    requires service nearly identical to the Oregon courts by the 'sergeant-at-arms' with a ten
10   (10) day reply.  Failure to comply is covered by a report to the District Attorney in the
11   offending county under ORS 171.520 titled 'Reporting violations of ORS 171.510.'
12   Enforcement of 'compel' in Oregon is covered under ORS 171.522 'Judicial enforcement
13   of legislative process.'  ORS 171.522 requires adjudication in a Circuit Court of the State
14   of Oregon.  Certainly, no such process was followed by any of the named Defendants nor
15   their peer majority State Senators.   The Oregon State Senate certainly could have
16   propagated and passed such a law establishing due process in the past if it intended to
17   'compel' members by arrest, physical retrieval and imprisonment, the same as it could
18   have established a statutory framework for fines too.

19   99.    Article IV Section 12 of the Oregon Constitution of 1859 establishes a two-
20   thirds quorum requirement for the conduct of business by the respective chamber. The 1st
21   and 5th Amendments of the United States Constitution at time of the Oregon adoption
22   thus supersede any argument Defendants possess to ignore them.  Oregon ratified the 14th
23   Amendment of the United States Constitution on September 19, 1866, and then rescinded
24   its ratification on October 15, 1868. None-the-less, Oregon is ironically compelled itself
25   to abide by the 14th Amendment of United States Constitution.

26

Page 47 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1      100.    Article X-A of the Oregon Constitution was created through H.J.R. 7, 2011,

2    and adopted by the people Nov. 6, 2012. The Plaintiff was the Co-Chief Sponsor of this

3    legislation and adoption.  The voters of the State clearly establish a process in which less

4    than two-thirds of elected members could conduct business in an emergency.  Section 1

5    establishes nine (9) emergencies, but is not limited, in which the Governor could declare

6    a catastrophic emergency thereby eliminating the two-thirds quorum.  The Governor, at

7    the request of Defendant Courtney, took no such action, but instead ordered the arrest,

8    physical seizure, and imprisonment of legally protesting minority State Senators in direct

9    violation of their civil and constitutional rights.

10      101.    Nothing prevents the supermajority of the majority party from proposing

11    changes to the Oregon Constitution that provides for quorum changes in either chamber

12    of the Legislature.  In the meantime, both the Oregon and United States Constitution

13    prohibited them from actions they took against the Plaintiff initially, in retribution, and in

14    an attempt at political gain.  The damages done by the Defendants against the Plaintiff are

15    irreparable.

16      102.    The Plaintiff would be remiss it if failed to identify to the Court the third

17    critical United States Supreme Court case.  No doubt, the future taxpayer paid state

18    counsel for the Defendants will attempt a legal defense hide behind cherry picked words

19    out of middle sentence of *Kilbourn v. Thompson, 103 U.S. 168 (1880) 190.*  In fact,

20    Plaintiff argues *Kilbourne v. Thompson* fully supports this Legislator's right to complete

21    unfettered debate and free speech, but further, in whole, establishes the required for a

22    legislative House to establish   due process in advance of any action, requiring such a

23    House to act as whole not less than a quorum, or a mere committee less than that of the

24    whole of the House is insufficient. *Kilbourne* supports the request by the Plaintiff for an

25    immediate injunctive restraining order against the Defendants as requested in Reliefs.

26

Page 48 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

103.    The Plaintiff fully alleges the Defendants have and are operating completely outside the legal authority of the Oregon State Senate, Legislative Assembly, and State of Oregon. Therefore, it is the contention of the Plaintiff that all the Defendants are in effect rogue characters under the law whom do not and cannot be considered acting or representing the Oregon State Senate, Legislative Assembly, or State of Oregon in any manner what-so-ever. None-the less, the Plaintiff is seeking present and future justice under the law in this case (motion) not punitive action by the court. Therefore, only seeks the court's legal interpretation of the present actual controversy under the law in the form of FRCP Rule 57 declaratory judgments on the present actual constitutional controversy.

104.    Given this is a request for a nonattributable resolution to an active controversy in the form of a series of declaratory judgements the Plaintiff has submitted this in a trial memorandum information format. The Plaintiff is fully prepared to argue case law as necessary for such topics as jurisdiction, standing, ripeness, political doctrine, congressional arrest powers, fighting words, and intervention-joiner verses legal representation of clients. The Plaintiff sees justice served as simple declaratory judgments clarifying the interpretation of the law. A Defendant had suggested seeking a declaratory judgement in Oregon's Circuit Court of precedence but these are federal constitutional issues. The Plaintiff is not even convinced oral arguments are necessary, thus at the discretion of the court, for clarification of the active controversies.

**FIRST REQUEST FOR RELIEF**

**Violation of First Amendment - Assembly**

**Free Unfettered Access to the Oregon State Capitol to Assemble**

**(Declaratory Judgement)**

Page 49 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1       105.   Plaintiff requests a FRCP Rule 57 declaratory judgment Oregon State

2   Senators are guaranteed free unfettered access to the Oregon State Capitol, a public

3   legislative building, located at 900 Court Street NE, Salem Oregon 97301, as the right of

4   the people peaceably to assemble under the U.S. Constitution, and Oregon Constitution,

5   cannot be blocked by the Defendants, the Capitol Unit of the Oregon State Police, and/or

6   Secretary of the Senate without criminal just cause or judicial due process under the laws

7   of Oregon and the United States.

8       106.   Plaintiff requests the federal court deconflict contradictions between the

9   U.S. Constitution and Article I Section 26 of the Oregon Constitution in regard to

10   assembly and redress of grievances.

11

12                 **SECOND REQUST FOR RELIEF**

13     **Violation of Fifth & Fourteenth Amendment – Due Process**

14       **Investigation of State Senator Unconstitutional**

15                **(Declaratory Judgement)**

16       107.   Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement

17   finding the actions of the Defendants in initiating and conducting an investigation without

18   due process in regard to free speech, and yet to be determined other secret reasons against

19   the Plaintiff, violated the Plaintiff's Fifth, and Fourteenth Amendment rights, and per

20   Oregonian Constitution rights as may be appropriate under the jurisdiction of the court.

21       108.   The Plaintiff requests the Court deconflict contradictions between the U.S.

22   Constitution and Article I Section 9 of the Oregon Constitution which states "Senators in

23   all cases …""shall not be subject to any civil process during the session of the Legislative

24   Assembly."

25

26

Page 50 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1      109.   Further, the Plaintiff requests the Court deconflict contradictions between

2   the U.S. Constitution and Article 1 Section 14 'Deliberations to be open' and Article

3   Section 26 'Protest by member' of the Oregon Constitution.

4

5                          **THIRD REQUEST FOR RELIEF**

6              **Violation of First Amendment – Free Speech**

7                      **(Declaratory Judgment)**

8      110.   Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement

9   that elected Oregon State Senators, the Plaintiff, are to be accorded full and open free

10   speech rights on the Floor of the Oregon State Senate equal those of any citizen

11   elsewhere, without regulation, in accordance with the United States Supreme Court ruling

12   in *Bond v. Floyd, 385 U.S. 116 (1966)* **"(b) The State may not apply to a legislator a**

13   **First Amendment standard stricter than that applicable to a private citizen. Pp. 385**

14   **U. S. 132-133."**

15      111.   And furthermore, the Oregon State Senate may not regulate free and open

16   debate on the Floor of the Oregon State Senate in accordance with the United States

17   Supreme Court ruling in cited in *Bond v. Floyd* from *New York Times Co. v. Sullivan, 376*

18   *U.S. 254 (1964)* in which **"[D]ebate on public issues should be uninhibited, robust,**

19   **and wide-open."** New York Times v. Sullivan, 376 U. S. 254, 376 U. S. 270. Pp. 385 U.

20   S. 135-136."

21      112.   Plaintiff requests the Court deconflict any contradictions between the U.S.

22   Constitution and Article 1, Section 8 of the Oregon Constitution "No law shall be passed

23   restraining the free expression of opinion or restricting the right to speak, write or print

24   freely on any subject whatsoever" for which the Oregon Supreme Court has more broadly

25   defined with in the State of Oregon.

26

1    113. Further, the Plaintiff requests the Court deconflict any contradictions
2  between the U.S. Constitution and Article 1 Section 14 'Deliberations to be open' and
3  Article Section 26 'Protest by member' of the Oregon Constitution.

4    114. Plaintiff requests the Court amplify the rights of the Plaintiff, an elected
5  Oregon State Senator, to free speech on the Floor of the Oregon State Senate and Oregon
6  State Capitol, the right of the Plaintiff to the religious beliefs in an equal manner to all
7  beliefs on the Floor of the Oregon State Senate and Oregon State Capitol, and the right of
8  the Plaintiff to freely assemble with his constituents to hear grievances their grievances
9  and represent them in the Oregon State Capitol as applied to free speech.

10    115. And furthermore, the Plaintiff requests the Court to use examples in this
11  case to amplify the intent of the declaratory judgement as to clarify any constitutional
12  conflicts.

13                          **FOURTH REQUEST FOR RELIEF**
14          **Violation of the Fifth and Fourteenth Amendment Due Process**
15                              **(Declaratory Judgement)**

16    116. Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement
17  that Oregon State Senators, the Plaintiff, do not surrender in any manner their full due
18  process rights under the Fifth and Fourteenth Amendment of the United States
19  Constitution upon election to the Oregon Legislature regardless of any local or body or
20  state rule, statute or clause in the Oregon Constitution.

21    117. The Plaintiff requests the Court deconflict any contradictions between the
22  U.S. Constitution and Article I Section 9 of the Oregon Constitution which states
23  "Senators in all cases …""shall not be subject to any civil process during the session of
24  the Legislative Assembly," and Article 9 and Article 26 in whole as applicable.

25    118. And furthermore, the Plaintiff requests the Court to use examples in this
26  court case to amplify the intent of the declaratory judgement.

Page 52 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1

2                    **FIFTH REQUEST FOR RELIEF**

3                    **Free from Fine without Due Process**

4                        **(Declaratory Judgement)**

5          119.    Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement

6    that Oregon State Senators, the Plaintiff, cannot be fined monetarily for absence or

7    missing quorum in the Oregon State Senate without full due process under federal laws

8    and the U.S. Constitution.

9          120.    Furthermore, such due process under the 5th and 14th Amendments of the

10   United States Constitution must be adopted by rule or legislated into law in the regular

11   manner of a bill or law with full quorum of the Oregon State Senate in advance of any

12   such absence, and be fully appealable to the courts of law for adjudication under the state

13   and federal Judiciary as done in other States of the United States of America.

14

15                   **SIXTH REQUEST FOR RELIEF**

16                   **Free from Arrest without Due Process**

17                       **(Declaratory Judgement)**

18         121.    Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement

19   that Oregon State Senators, the Plaintiff, cannot be arrested, detained or imprisoned for

20   an absence in the legislature, or failing to arrive for quorum, without full due process and

21   adjudication before a court of law, and only upon the issuance of a lawful order or

22   warrant from a Judge acting in their official capacity as a Judge in an Oregon or United

23   States Court pursuant to the Fifth and Fourteenth Amendments of the United States

24   Constitution.

25         122.    Furthermore, the Plaintiff requests the Court clarify and/or deconflict that

26   Oregon State Senators are in fact free from arrest pursuant to Oregon Constitution,

Page 53 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1   Article IV, Section 9. "Legislators free from arrest and not subject to civil process in
2   certain cases; words uttered in debate, Senators and Representatives in all cases, except
3   for treason, felony, or breaches of the peace, shall be privileged from arrest during the
4   session of the Legislative Assembly, and in going to and returning from the same" in that
5   specifically being absent for quorum does not constitute a 'breach of peace' under the
6   Oregon Constitution.

7       123.   And furthermore, the Plaintiff requests the Court deconflict and/or clarify
8   an Oregon State Senator cannot be ordered arrested in such quorum absence by the
9   Oregon State Police, or other executive law enforcement agency, under the federal
10  Constitutional separations of powers and due process, and Article III Section 1
11  Separation of powers of the Oregon Constitution titled "Separation of Powers" which
12  states 'and no person charged with official duties under one of these branches, shall
13  exercise any of the functions of another' as the sole power of any arrest authority with
14  due process lies with the Sergeant of Arms, a purely and solely a legislative duty and
15  function.

16                        **SEVENTH REQUEST FOR RELIEF**
17              **Definition of Compel under the Oregon State Constitution**
18                            **(Declaratory Judgement)**

19      124.   Plaintiff requests the Court issue a FRCP Rule 57 declaratory judgement on
20  the legal definition, meaning, and judicial authority allowed by the word "compel" cited
21  in in Article 4, Section 12 of the Oregon Constitution adopted in 1859 which states in
22  part "Two thirds of each house shall constitute a quorum to do business, but a smaller
23  number may meet; adjourn from day to day, and 'compel' the attendance of absent
24  members" in regard to the First Amendment (pre-1859), Fifth (pre-1859), and Fourteenth
25  Amendment (1868) of the U.S. Constitution.

26

1    125.   Furthermore, the Plaintiff requests the Court use examples in this court case
2    to amplify the intent of the declaratory judgement, or practical examples to provide future
3    guidance to elected legislators on the application of the word "compel" in this
4    constitutional setting.

5                              **PRAYER FOR RELIEF**

6          WHEREFORE, Plaintiff prays for judgment and relief against the future actions of
7    each Defendant:

8    1.     For Federal Rules of Civil Procedure Rule 57 declaratory judgements
9    setting forth a declaration of the rights of the Plaintiff, and other Oregon State Senators,
10   under First Amendment, Fifth Amendment, and the Fourteenth Amendment to the United
11   States Constitution, and Oregon Constitution as appropriate for equity, federal question,
12   and original jurisdiction;

13   2.     For fees, costs, and interest, if authorized by law; and

14   3.     Any other relief the Court deems just and proper.

15

16   DATED:     September 24, 2019

17                        Respectfully submitted by,

18                        BRIAN J. BOQUIST

19

20                        By:

21

22                        Brian J. Boquist

23                        17080 Butler Hill Road

24                        Dallas, Oregon 97338

25                        Phone: 503-623-7663

26                        Email: boquist@aol.com

Page 55 - AMENDED REQUEST FOR DECLARATORY JUDGEMENTS

1    Copy to be provided to the Oregon Attorney General:

2

3    Marc Abrams, Assistant Attorney in Charge

4    Tracy White, Senior Assistant Attorney General

5    Oregon Department of Justice

6    100 SW Market Street, Portland Oregon 97201

7    Tel 971-673-1880

8    Email marc.abrams@doj.state.or.us

9    Email tracy.i.white@doj.state.or.us

10

11    Upon approval of the court of acceptance of this amended motion under FRCP 15

12   the Plaintiff will appropriately serve the Defendants under the law.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 56 -  AMENDED REQUEST FOR DECLARATORY JUDGEMENTS