**Brian J. Boquist**
17080 Butler Hill Road
Dallas, Oregon 97338
Phone: 503-623-7663
Email: boquist@aol.com

# AMENDED COMPLAINT

# ATTACHMENT 3

# 24 September 2019

# Case No. 3:19-CV-1163-AC

# REQUEST FOR DECLARATORY JUDGEMENT

# 53 Pages

*July 8, 2019*

*Senate Special Committee on Conduct*

# Work Session



CC REPORTING AND VIDEOCONFERENCING
172 East 8th Ave
Eugene, OR 97401
541-485-0111
www.ccreporting.com

2

SENATE SPECIAL COMMITTEE ON CONDUCT

WORK SESSION

July 8, 2019

Monday

COMMITTEE MEMBERS

Senator Floyd Prozanski - Chair

Senator James Manning

Senator Tim Knopp

Senator Alan Olsen

Transcribed by:  Sara Fahey Wilson, CSR

3

```
 1              P R O C E E D I N G S

 2                          .

 3              SENATOR PROZANSKI:  I want to say good

 4   morning again.  We're coming out of recess.  I

 5   apologize.  It took a little bit longer for stuff to

 6   take place during the break.

 7              And at this point what I'm going to go

 8   ahead and do is open up a work session regarding

 9   this morning's public hearing.  So we'll open up the

10   work session.

11              And, colleagues, the staff have

12   prepared three possible motions for us to consider.

13   I'm not saying any of them will fit or do what any

14   of us might want to do individually or what we might

15   want to do as a group.

16              There's also, as I handed out to each

17   of you, an alternative motion one, which I've put

18   together based on my review of information that has

19   come to me regarding this in kind of a hybrid of one

20   of the motions that was before -- suggested for

21   consideration by the staff for us to look at.

22              So what I'd like to do is to open it

23   up for -- as I said -- work session for individuals

24   to maybe express where they are at instead of trying

25   to run through motions.  Because, first of all, I
```

4

1    assume like -- like most of these motions, that they

2    are new to you as individuals, and so I want you to

3    have an opportunity to review them.

4              And so I think what I would like to do

5    is just start with -- I'm going to start with

6    Senator Manning.  As to your perspective based on

7    the information that you've heard this morning,

8    what, if any, steps do you believe that we need to

9    be taking as a committee as it pertains to -- as it

10   pertains to us making any recommendations regarding

11   the report that we received?

12             Remember, our task today is not to be

13   looking at the actual substance or merits of any

14   report that has been made as to becoming a complaint

15   or action as a complaint, formal or informal, but

16   instead, as counsel has directed us during her

17   testimony, as employers, that the legislative branch

18   does, in fact, have a duty to maintain and provide a

19   workplace that's free of threats of violence and

20   intimidation.

21             And so with that, Senator Manning,

22   would you like to kind of go through where you might

23   be and what your thoughts are regarding moving

24   forward, if anything?

25             SENATOR MANNING:  Thank you.  Thank

1    you, Mr. Chair.  This is a really avoidable, in my

2    opinion, incident that we have here, but we're here

3    right now.  And I've got to say that I've spoken

4    with a number of staffers, and even some of the

5    people that run the building here day to day, and

6    they have expressed to me, you know, openly that

7    they are really concerned, you know.  And a number

8    of them, to include some of our Senate colleagues,

9    have expressed concerns that this would not only --

10   feeling that they might be under threat of physical

11   but also mental threat because of all the events

12   that have led up to this point.

13                   And so I think where I am right now, I

14   am going to side on what I feel is best for the

15   staff and our colleagues.  I think that there need

16   to be some restrictions, whether we have escorts by

17   OSP or whether or not the senator decides that he

18   would just stay away until this thing just is

19   resolved.  I think those are two acceptable options

20   for me at this time.

21                   I did receive a text message from

22   another Senate colleague, because everybody is

23   watching this, and I want to be very careful in how

24   I say this, but people find the threats very

25   credible.  They are nervous.  And it doesn't look

1    good for us not to do anything.

2                    Again, my position right now is that a

3    best-case scenario for me would be that the senator

4    will say that, "Hey, I will stay away until whatever

5    this thing is and it blows out, and then we can come

6    back and have another conversation."  Or if we can't

7    get that, you know, we will have to have some kind

8    of safeguard for the people that work here in this

9    building.

10                    And I'm saying that this is a very,

11    very serious thing.  Had I made those comments, I

12    believe that I would have been drug out of the

13    Capitol, at a minimum.  I think that when you -- you

14    try to downplay a credible threat that I didn't --

15    he didn't mean that -- when I heard it, he meant

16    that.

17                    So I think that in earnest for

18    everybody those will be two options right now that I

19    see based off of the information that we are looking

20    at.  And, again, you know, he was very direct in

21    what he said, "Send bachelors and make sure that

22    they are heavily armed."

23                    There is no other interpretation of

24    that no matter how you try to gaslight it.

25                    Thank you, Mr. Chair.

1        SENATOR PROZANSKI: Senator Olsen?

2        SENATOR OLSEN: This committee is in

3    kind of a tough place. We're asked to adjudicate or

4    make a decision on something which we really don't

5    have all the facts on other than the fact that there

6    were statements made.

7        I imagine all of us at sometime or

8    another has made a statement in the heat of passion

9    that wasn't quite nice, didn't quite fit the -- the

10   confines of what normal society deals with.

11       This has been a very difficult session

12   for all of us. It started out with some new rules

13   that we instituted because of a continuing -- what's

14   the word I want to use? -- environment that people

15   have lived in, and it's been documented. And it

16   became very tenuous. And the pressure is quite

17   culpable. This is a tough one for me because I've

18   probably put my foot in my mouth many times also.

19       I would say we must be cognizant of

20   the fact that Senator Boquist is an elected

21   official, and he does have to have the ability to

22   represent his constituents. We can't take that

23   away.

24       I think it would be not in good stead

25   to have the senator come to the Capitol and be

1    protected by an armed guard.  I don't think that

2    that is appropriate at all.  I think that since we

3    are now in recess, or if you will, we won't be back

4    (inaudible) days, I think that maybe we can make

5    some form of agreement that you can conduct your

6    business from your district office and keep the

7    sanctity of the Capitol so that the whole

8    temperature of the building can cool down.

9               SENATOR PROZANSKI:  All right.  All

10   right.  Senator Knopp?

11              SENATOR KNOPP:  Thank you, Mr. Chair.

12              I find the report interesting, and

13   appreciate the presentation we had this morning.  I

14   obviously saw the comments that were made by Senator

15   Boquist.  I don't agree with those comments.  I

16   wouldn't make those comments myself.  But one thing

17   that's lacking -- and as an employer, when we have

18   incidents where somebody said something, somebody

19   does something as an employee, we interview that

20   person.  And as our attorney indicated, that

21   normally does happen.  It didn't happen in this case

22   because it was determined that these two statements

23   kind of spoke for themselves.

24              And I don't actually think the

25   statements do speak for themselves because we have

1    an individual who spent many years in the military,

2    and we don't know what his frame of mind was as it

3    relates to what he was thinking when he was saying

4    these statements.

5                    And I don't believe at this point that

6    there is a threat to anybody in the Capitol.  I

7    share an office wall with Senator Boquist, so if

8    anybody ought to be concerned, it should be me.  And

9    there are no employees -- according to these

10   statements, there are no employees that were

11   threatened here at the Capitol.

12                   And so -- and the two people who the

13   alleged threats were made to aren't part of the

14   report.  They are not complainants as part of the

15   report, that being Senator -- President Courtney and

16   the Oregon State Police, as the attorney indicated

17   who made the presentation.

18                   So really what we're left with, I

19   think, is kind of an incomplete hearing and facts of

20   the case.

21                   And I honestly was hoping to hear more

22   from Senator Boquist than what his statement was,

23   but he clearly is concerned about significant

24   issues, which he expressed in his remarks.  And so

25   at this point I've looked over the recommendations.

10

1    I can't support the wording -- the recommendations

2    as they are, but I could support something that is

3    modified in those recommendations.

4                But at this point, the wording of it,

5    in some of them to me, seems to be premature and

6    somewhat prejudicial as it relates to it.

7                If there is going to be a continuing

8    investigation, then I think we need to let that work

9    itself out.  Because as I said, I do not see Senator

10   Boquist as a workplace threat.  At this time we are

11   in the interim, and there are very few

12   person-to-person meetings that go on here at this

13   time, and there's very few interactions.

14                And as I said, I share an office wall

15   with Senator Boquist, and all the interactions I've

16   had with him -- and we disagree on plenty -- I've

17   never -- I've never felt threatened and don't feel

18   threatened by his -- his statements as a member.

19                SENATOR PROZANSKI:  All right.  As the

20   Chair and in my own personal perspective, in looking

21   at the tasks that we've been given as a committee,

22   the issues that we have before us is based on a

23   report with interim finding and recommendations,

24   what, if any, steps should we be taking.  The report

25   does, in fact, reflect, as we've heard in the

11

1    testimony, that it was based on statements that were

2    videotaped, so they are not in dispute as to what

3    was actually said when on the floor on June 19th

4    directed -- at least directed toward the President,

5    based on the context.  Whether it extended to other

6    members, I don't know.  But it did, in fact, call

7    out by his name and that -- in relationship whether

8    or not, "If you send the state police out to get me,

9    hell is coming to visit you personally."

10           Without knowing exactly what Senator

11    Boquist meant by that statement, you have to take it

12    at the surface of what -- of what it presents.  As

13    our counsel stated, the test here is not whether or

14    not something is criminal in action to be a valid

15    threat.  It is a -- we're in a civil setting, and it

16    is within employment law, and within that as to the

17    requirement and duty of the employer to provide a

18    workplace free of violence or threatened violence or

19    intimidation, et cetera.

20           So in my looking at that and then

21    looking at the second statement that was made off

22    the floor to the media directed toward the state

23    police as to what we've heard, I'm quotable, so

24    here's is the quote, "Send bachelors and come

25    heavily armed.  I am not going to be a political

12

1    prisoner in the State of Oregon.  It's just that

2    simple."

3              Now, what we also have had is that

4    shortly after that -- which is reflected in posting

5    that's on OLIS -- an email that was purportedly from

6    Senator Boquist to a reporter at the Oregonian, when

7    someone had stated that threat was thinly veiled, he

8    made it clear that it was not.

9              And that was -- I look at those three

10   things, and I come away that the statements that

11   were made by the -- Senator Boquist were, in fact,

12   credible threats.

13             What I have difficulty, though, is at

14   this point determining whether or not he still poses

15   a credible threat as he did on the 19th of June.

16   What I want to put on the record, and what we've

17   talked about at this point, is that we have had

18   situations that has, I think, been modified, or

19   has -- has died down in the sense of the angst,

20   anxiety, of when that statement was made on the

21   19th.

22             Counsel's report does come a week

23   later, on the 25th of June.  Since then, we've had

24   approximately two additional weeks that have

25   occurred since then, and there has been no situation

13

1   of showing and demonstrating that whatever credible

2   threats there were in those statements, which I

3   stated I believe were, in fact, credible threats, of

4   those being continued out.

5           When you look at the context of what

6   those statements were, and when they were made, and

7   what they were -- the subject matter that -- we know

8   that that question is now moot.  The state police

9   are no longer being requested to bring any of the

10  members who were absent during those nine days to

11  the Capitol to do their work.

12          And so to me, that is an action --

13  that is something that has happened since then that

14  tells me that I believe that the workplace is okay

15  for employees -- for the employees to be in.

16          I do want to point out that even

17  though the session has ended, we're in our interim,

18  we do, in fact, have individuals who are in this

19  building five days a week working their jobs either

20  in district for senators or representatives, as well

21  as the full-time staff of the legislative assembly,

22  and so I do feel that those things do need to be

23  taken into consideration.

24          I personally, in looking at these

25  recommendations -- I came up with an alternative

14

1    motion that would basically, one, find that the

2    statements of June 19th to be credible threats but

3    that there has been -- let me get the term here --

4    that the recommendation of counsel at this point

5    should be modified as to what steps should be taken

6    based on new information and testimony and

7    clarification that has occurred through the -- not

8    only the hearing today but what has happened since

9    the incident occurred.

10             So that's where the Chair is at.  I do

11   not at this point see that continued threat that was

12   made on the 19th to be present today within the

13   Capitol.

14             I do want to clarify -- because I've

15   heard members say this and I think it's important

16   for the record to reflect -- our hearing today is

17   not going to the merits of any complaints --

18   (inaudible) of any reports that have been filed that

19   could be turned into a complaint, either a formal

20   complaint that we, as a committee, would be

21   addressing, or an informal complaint that would go

22   through that internal process for informal

23   complaints.

24             For us to say that we need to have

25   more information before we act on this as to more of

15

 1    the merits, who brought it forward, why did they

 2    bring it, is missing the point.  This whole exercise

 3    that we're going through today is to ensure that the

 4    workplace is free of intimidation, threats of

 5    violence, while that investigation is ongoing, and

 6    to ensuring that everyone who comes to this Capitol

 7    either as an employee, as a member, as a -- the

 8    public, someone who works in this building as a

 9    lobbyist, are all free of workplace intimidation or

10    threats of violence.

11                 And so I want to make certain that we

12    realize that at some point it may be that we will be

13    meeting again to look at some specific conduct that

14    will, in fact, materialize as a formal complaint.

15                 What I know at this point is we don't

16    know when that's going to happen or if that's going

17    to happen because the investigation is ongoing.

18                 So with that, the position I would be

19    taking at this point would be to acknowledge the

20    threats that were made on the 19th to be credible

21    for what they -- when they were said and what was

22    stated at the time, and could, in fact, cause a

23    reasonable person in the workplace to fear for their

24    own safety or safety of others.

25                 But at the same time, because of the

16

1      amount of time that has passed, other factors that

2      have come into play and things that have not come

3      into play, I do not believe that any additional

4      steps need to be taken as it pertains to Senator

5      Boquist being in the workplace here in the Capitol.

6                      So that's where the Chair is at.  So

7      at this point I don't know if anyone wants to make a

8      motion.  And then as I stated, besides the three

9      that were provided to us as reference points by

10     staff, there is the one that I've put together which

11     basically would move forward the statements I've

12     just made.

13                     So let me just see if anyone wants to

14     make any motions.

15                     And, colleagues -- let me just take a

16     break -- for those who are here, I know that this is

17     probably something that you've never experienced in

18     the sense of being a legislative hearing, let alone

19     this type of a hearing.  What we're doing at this

20     point is having open discussion as to what, if any,

21     motions will be made for us to take any action

22     within this work session would require a motion to

23     be before us.

24                     So with that said, I'm going to

25     entertain any motions from any of the members.

1     SENATOR MANNING:  Mr. Chair, if I

2 may -- and I will make a motion, but I want to make

3 a comment first.

4     SENATOR PROZANSKI:  Sure.

5     SENATOR MANNING:  There was a response

6 that went to the state of mind questioning what his

7 state of mind is.  I would argue that none of us

8 actually know that.

9     Again, I'm also looking at the chance

10 meeting of someone that may encounter the senator at

11 the same time while the research and inquiry is

12 still going on.  What would they look at?  The

13 psychic of their mind?  There are people here that

14 have real fear.  They have real fear.  They have

15 fear of physical and emotional and mental issues

16 with this.

17     So as I mentioned, that I will make a

18 recommendation that Senator Boquist, on his own, can

19 elect to stay out of the Capitol until the inquiry

20 is completed or you have down here the Senate rules

21 be temporarily modified to allow the senator to

22 remote participate from a remote location without

23 being in the building.

24     That will be my motion.

25     SENATOR PROZANSKI:  All right.  So I'm

```
 1   going to try to summarize that and make sure we
 2   understand.  Your motion -- first of all, what I
 3   heard was a motion as to going forward as compared
 4   to the threats themselves.  So let me just take that
 5   part.
 6                   What I understand is that you believe
 7   going forward Senator Boquist should voluntarily not
 8   enter the building to perform his work as a senator
 9   within the Capitol but be able to do that firm
10   locale, meaning a district office or somewhere else?
11                   SENATOR MANNING:  Exactly.
12                   SENATOR PROZANSKI:  And was there
13   something else to that portion of your motion?
14                   SENATOR MANNING:  The motion about the
15   threats being credible.
16                   SENATOR PROZANSKI:  Okay.
17                   SENATOR MANNING:  I find that they are
18   credible, and -- let me see.  Where is the other
19   piece of that?  I'll have to come back on that one.
20                   SENATOR PROZANSKI:  Let me ask for
21   clarification.  We have a motion that's somewhat
22   before us now.  It sounds like, number one, that the
23   threats that were made on the 19th are credible.
24                   Number two, that Senator Boquist
25   should voluntarily not enter the Capitol as a
```

1    workplace during the pendency of the investigation

2    that is ongoing with the reports.

3                    So, Senator, what if he failed to

4    voluntarily participate at the level that you would

5    like for him to do?  What would be -- what -- where

6    would that take us?

7                    SENATOR MANNING:  That would take us

8    -- in looking at some of the senator's and staffers,

9    I think that we -- we open the door, then, to make

10   it sure that we have escorts, not maybe for him but

11   for everybody else.

12                   SENATOR PROZANSKI:  All right.  What

13   we do know that there was at least a memorandum by

14   the two leaders of the chambers, the Senate

15   President as well as the Speaker of the House,

16   ensuring for employees who found themselves in a

17   situation where they thought that their presence

18   within this workplace, the Capitol, in conjunction

19   with Senator Boquist was a threat that they could,

20   in fact, make other accommodations for them doing

21   their work either outside of this building or maybe

22   in some other location and stuff, so I would want to

23   make certain that's also part of this record.

24                   So --

25                   SENATOR MANNING:  Then with that,

 1    Mr. Chair, that could be a lot of people.  We don't

 2    know how many.  That could be a lot of people.  That

 3    could be so many people where we couldn't even reach

 4    a quorum unless we modify the rules, or whatever

 5    we're doing.  We could see a lot of people, to

 6    include staff members, that -- and again, there were

 7    multiple reports done.  I don't know what that looks

 8    like.

 9                SENATOR PROZANSKI:  Senator Manning,

10    you said "quorum," so now I'm hearing you say

11    something about members.  You know, based on what

12    I've heard from our counsel -- outside counsel -- at

13    this point whatever investigation is ongoing should

14    be resolved before we would be back in session in

15    February.  That's our next scheduled.

16                Of course, clearly if we had a special

17    session called by the Governor, that would bring

18    members back together.  I thought your motion was

19    more based on the needs and desire to ensure a free

20    work -- a workplace free of these type of threats

21    and violence for staff individuals or others --

22    let's say non members -- individuals.

23                SENATOR MANNING:  I think we should

24    include members as well.

25                SENATOR PROZANSKI:  Okay.  All right.

21

```
 1    All right.  So do you feel that you've got your
 2    motion out there?
 3                SENATOR MANNING:  Yeah.  You know, I
 4    think you phrased it the right way.  You know, I do
 5    find the threats credible, and I would ask that --
 6    recommend that Senator Boquist, on his own, elect --
 7    while the investigation or the inquiry is going
 8    on -- to stay out of the Capitol or -- and to -- or
 9    to suspend rules and temporarily modify to allow him
10    to participate remotely from the district office.
11                SENATOR PROZANSKI:  Yeah.  So if you
12    were saying having Senator Boquist be able to
13    perform his duties as a senator as it pertains to
14    voting from a different location, I believe that
15    that is not an option.  We have had conversations
16    with legislative counsel regarding that, and
17    that's -- that as a possibility.
18                And if you remember, on the last two
19    days of our session some of the discussions and some
20    of the arrangements that were made to allow for all
21    members to be able to participate without
22    necessarily being on the floor at the same time, but
23    when they voted, they were on the floor to vote.
24    They were not able to vote from remotely.
25                So I just want to make certain you
```

22

1    understand that we pretty well have gone down that

2    path as to what legislative counsel says is

3    permissible for members.

4            SENATOR MANNING:  I completely

5    understand, and -- well, then (inaudible) to the

6    aforementioned -- either the senator on his own

7    elects --

8            SENATOR PROZANSKI:  Okay.  So let me

9    summarize.  My understanding is, number one, that --

10    there's two parts to this motion.  First is that the

11    threats that were made on June 19th were credible

12    threats.

13            Second, that Senator Boquist should

14    voluntarily stay out of the building until the

15    investigation regarding the reports that are pending

16    have been resolved.  And if he fails to do so, then

17    to have some type of requirement of making

18    arrangements with the Capitol for his entry here to

19    ensure that while he's here, others who work within

20    the building, or visiting the building, or whatever

21    capacity they may be, are safe from any type of

22    carrying out of threats.

23            I'm just trying to make sure we know

24    what we're going to be voting on.

25            SENATOR MANNING:  Yeah, that's --

1      that's pretty much a summation.

2                      SENATOR PROZANSKI:  All right.  Let me

3      ask Senator Olsen and Senator Knopp, do you

4      understand the motion as it is for a vote?

5                      I'm not saying agreeing or anything.

6      I'm just saying I want to know -- make sure everyone

7      knows before we call for a vote.

8                      SENATOR KNOPP:  Generally speaking,

9      yes.

10                     SENATOR PROZANSKI:  All right.

11                     SENATOR OLSEN:  Generally speaking,

12     yes.

13                     SENATOR PROZANSKI:  All right.

14                     Patsy, why don't you give us a roll

15     call, please.

16                     SENATOR OLSEN:  Mr. Chair, does that

17     motion require a second?

18                     SENATOR PROZANSKI:  No.

19                     SENATOR OLSEN:  Okay.  I just wanted

20     to clarify.

21                     SENATOR PROZANSKI:  Yeah.  Yeah.

22     We're under legislative rules, not parliamentarian.

23                     SENATOR OLSEN:  Okay.

24                     PATSY:  Senator Olsen?

25                     SENATOR OLSEN:  No.

24

```
1                    PATSY:  Senator Manning?

2                    SENATOR MANNING:  Aye.

3                    PATSY:  Senator Knopp?

4                    SENATOR KNOPP:  No.

5                    PATSY:  Chair Prozanski?

6                    SENATOR PROZANSKI:  No.  Motion fails.

7             Any other motions from any of the

8     members?

9                    SENATOR OLSEN:  Mr. Chair, in reading

10    your -- if I may?

11                   SENATOR PROZANSKI:  You may.

12                   SENATOR OLSEN:  Thank you.

13            In reading your three different

14    motions that you have --

15                   SENATOR PROZANSKI:  Right.  Let me

16    just clarify.  Those three motions are not mine.

17    The only one I take credit for --

18                   SENATOR OLSEN:  Okay.  I'm sorry.

19                   SENATOR PROZANSKI:  Not motion one.

20    Not motion two.  Not motion three.  Those came from

21    staff.  Let's just make sure that's on the record.

22                   SENATOR OLSEN:  Okay.  In reading the

23    motions then, not yours, I find one -- I find it

24    difficult to make any definitive obligation against

25    the senator predicated on counsel's reports because
```

25

```
 1    she didn't interview the OSP, she didn't interview
 2    (inaudible) -- she didn't interview the people that
 3    allegedly have made complaints.  That concerns me.
 4              So -- but in reading the motions, I
 5    see an area where I think we can come to agreement
 6    on, and that would be on motion one, paragraph two,
 7    where it says, "I recommend that Senator Boquist be
 8    advised that applicable law and Rule 27 prohibit him
 9    from engaging in retaliation against any employee or
10    member who may have brought forward or reported
11    concerns, and that Senator Boquist is to refrain
12    from any action or retaliation against any person
13    who participates in the process."
14              I think at this time that paragraph
15    fits perfectly, in my opinion.  It allows us to --
16    some parameters to work with, but it tells Senator
17    Boquist we don't appreciate the comments, but those
18    people that are concerned about the comments you
19    must not retaliate against, and you must refrain
20    from any other action of retaliation against anyone
21    who participates.
22              That gives him the heads up that, you
23    know, we're looking at this but we haven't come to a
24    conclusion yet because the report is not done, so
25    please refrain from anything that would impair or
```

26

1    impact any member, public -- as you said, public

2    lobbyist, employee, that would be impacted -- I

3    think that fits perfectly.  Gives him the warning

4    that we are watching, but yet still allows people to

5    understand that we see what's going on and we're

6    waiting for the final reports.

7                    SENATOR PROZANSKI:  All right.

8    Discussion on the motion?

9                    Let me just ask a couple of questions,

10   Senator Olsen.  Regarding your recommendation -- or

11   your motion -- excuse me -- it's basically the

12   boilerplate that's found on all of the various

13   motions as to ensuring that going forward that

14   Senator Boquist be advised as to the applicable law,

15   Rule 27, for not engaging in any type of

16   retaliation.

17                    It does not appear that your motion

18   would include anything as to making a finding or

19   accepting the finding as to the threats from June

20   19th.

21                    SENATOR OLSEN:  First off, thank you

22   for clarifying it.  It is on all three motions that

23   aren't yours, by the way.  They are from staff.

24                    Yes, I think -- I think before we make

25   that critical decision, we have to have a completed

```
 1    investigation.
 2                    SENATOR PROZANSKI:  Okay.
 3                    SENATOR OLSEN:   That would be my
 4    opinion.
 5                    SENATOR PROZANSKI:  All right.  Any
 6    other questions before we take a vote on this
 7    motion?
 8                    SENATOR MANNING:  Mr. Chair, the
 9    motion -- the actual threats are enshrined in film,
10    tape, whatever media, so there is no question about
11    what the senator said and reaffirmed it.  The
12    question comes -- that was raised about state of
13    mind, that will keep playing over and over again.
14    Because when you meet certain people in the
15    building, what is his state of mind?  There's
16    indication about talk about retaliation stuff in
17    there.  We don't know what his state of mind will
18    be.  This is -- I can't support that.
19                    SENATOR PROZANSKI:  Okay.  All right.
20    Why don't we go ahead and take a vote on this,
21    Patsy.
22                    PATSY:  Senator Olsen?
23                    SENATOR OLSEN:  Yes.
24                    PATSY:  Senator Manning?
25                    SENATOR MANNING:  Nay.
```

28

1           PATSY:  Senator Knopp?

2           SENATOR KNOPP:  Aye.

3           PATSY:  Senator -- I'm sorry -- Chair

4    Prozanski?

5           SENATOR PROZANSKI:  No.

6           Motion fails.

7           I'd like to go ahead and make a motion

8    at this point, and this will be a motion that we

9    accept the findings of the outside counsel that

10   Senator Boquist's statements on June 19th

11   constituted credible threats of violence directed at

12   the Senate President and the Oregon State Police.

13          I further recommend that we reject the

14   recommendations of outside counsel based on new

15   information and testimony clarifying that Senator

16   Boquist does not currently pose a threat to staff,

17   public, or members of the Capitol.

18          And that I further recommend that

19   Senator Boquist be advised that applicable law, Rule

20   27, prohibit him from engaging in any retaliation

21   against any employee or member who may have brought

22   forward or reported concerns, and that Senator

23   Boquist is to be refrained from any action of

24   retaliation against any person who participates in

25   the process.

1    That is my motion from the Chair, and
2    I will open that up for discussion.
3    SENATOR KNOPP:  Thank you, Mr. Chair.
4    I'm going to oppose that particular motion because
5    Senator Boquist was not interviewed during this
6    particular report -- call it investigation, what
7    have you -- and what we've learned is the two people
8    that the threatening comments were made toward were
9    not interviewed and were also not complainants in
10   the reports.
11   And so while I do agree that Senator
12   Boquist does not currently pose a threat to staff or
13   public or members of the Capitol, I can't go along
14   with the wording that exists in the motion, and so
15   therefore I'm going be a no.
16   SENATOR PROZANSKI:  Senator Manning?
17   SENATOR MANNING:  Mr. Chair, thank
18   you.  While the question is out there whether or not
19   the senator poses a direct threat to members or
20   others here in the building, I would say that right
21   now there are no other members in the building, so
22   that would seem to be true.
23   I'm concerned about what happens when
24   he comes into contact -- while it has no retaliation
25   here, again, I didn't bring it up, but it was

```
 1    brought up about his state of mind.  I don't know.
 2    I don't know what would -- Senate response.  I agree
 3    with the -- with the -- 90 percent of your motion,
 4    but that other piece still, you know, having access
 5    to the building is going to -- it's going to bother
 6    me.
 7                   I will support this as brought up, but
 8    we're talking about an inquiry that is ongoing.  I
 9    think that we're trying to rush to a conclusion when
10    the evidence or interviews, stuff, are yet to be
11    explored.  So this is an interim -- for me this is
12    an interim.  How do we make sure that the workplace
13    is safe and people feel comfortable coming to work?
14                   Again, while I think that I would
15    prefer the senator to say, "Hey, I will voluntarily
16    stay out," it's not in this -- in this report right
17    now.  But I want to make sure we keep that on the
18    record.  It is a concern of mine.  And, you know, I
19    can -- with all the information that you put out
20    here, I can support this.
21                   SENATOR PROZANSKI:  Any other
22    comments?
23                   SENATOR OLSEN:  Yes.
24                   SENATOR PROZANSKI:  Senator Olsen?
25                   SENATOR OLSEN:  Thank you, very much.
```

31

1    Thank you.

2              This concerns me that we are rushing

3    to a judgment.  And I understand the weight of

4    this -- of the argument and that we have to have a

5    workplace that is free from any intimidation,

6    harassment, et cetera, et cetera, as we have laid

7    out in Rule 27.

8              I find it interesting that a report is

9    made by the good attorney without interviews,

10   without reports in hand, without documents, that a

11   conclusion was reached.  And, yes, the statements

12   were probably not appropriate, but other people may

13   have made statements that are similar, if not more

14   egregious than these.

15             And I find that we're trying to come

16   to a basis of -- it's not -- punishment is not the

17   term I want to use, but we're trying to come to a

18   level that we can guarantee safety.  But we really

19   can't because we never know when one is going to do

20   something weird or violent.  And I'm not saying that

21   Senator Boquist, would ever, ever do that.  I'm just

22   saying we never know, because it's happened

23   throughout history, that people have done things

24   that we never anticipated they would do.

25             But to base a conclusion on an

```
 1    incomplete document or an incomplete report
 2    predicated on what I felt was a slight amount of
 3    bias, and in effect, that she's an employment
 4    attorney, and that that's your job to look to see
 5    what's the best thing to do to make sure the
 6    workplace is safe, but it jumps to conclusions and
 7    casts aspersions and essentially convicts before
 8    the -- before the final report is done.
 9                    So I find it difficult to support your
10    motion.
11                    SENATOR PROZANSKI:  All right.  Any
12    other comments?  So just in response, Senator Olsen,
13    as I've said to other members, I believe the task
14    that we have now is what, if any, interim steps need
15    to be taken while the investigation is going
16    forward.  I would not be in favor of us trying to
17    make some determination as to whether or not there's
18    merits to the underlying reports that have been
19    filed that are currently being investigated.
20                    Again, our task for this committee
21    regarding what we have before us is regarding the
22    workplace that we have a duty to ensure is free of
23    violence, threat of violence, and intimidation.  And
24    as what I thought -- from my perspective, what I've
25    seen, what I've heard, and what I've concluded,
```

1   based on multiple factors, yes, those threats were

2   credible based on what was said just on the shear

3   force of the statements themselves and that

4   interviews did not need to be taken as to what was

5   said because it was -- it's there.

6                    At the same time, it also is my belief

7   that because of the amount of time that has passed,

8   the lack of other issues coming forward, knowing

9   that Senator Boquist has been in the building

10  multiple times since this incident back on June

11  19th, that I do not believe that he poses a current

12  threat as he did back on the 19th of June based when

13  the statements were made.  That's why I put it

14  forward in the way I did.

15                   So with that, we do have a motion.  Is

16  there any other comments?  If not, we'll take a

17  vote.

18                   Patsy?

19                   PATSY:  Senator Olsen?

20                   SENATOR OLSEN:  No.

21                   PATSY:  Senator Manning?

22                   SENATOR MANNING:  Aye.

23                   PATSY:  Senator Knopp?

24                   SENATOR KNOPP:  No.

25                   PATSY:  Chair Prozanski?

1              SENATOR PROZANSKI:  The Chair votes

2      aye.

3              Motion fails.

4              SENATOR OLSEN:  Mr. Chair, if I may

5      make a recommendation?

6              SENATOR PROZANSKI:  You may.

7              SENATOR OLSEN:  When we crazy eleven

8      came back, there was an enormous police presence in

9      our building.  My recommendation would be that if

10     Senator Boquist needs to come back to the building

11     to work, that we, perhaps, bolster our security

12     force for the time that he's in the building for

13     that day to make certain that that security and

14     safety would be maintained.  And not a security

15     guard that follows him around, but maybe just a

16     couple of extra officers to make certain that

17     everybody feels comfortable.

18             SENATOR PROZANSKI:  All right.  So I'm

19     going to ask the committee to direct themselves to

20     motion three.  I believe what Senator Olsen is

21     recommending would be something in line with what

22     motion three has but maybe even more of a

23     modification than what it currently says.

24             For those who are not privy to what

25     motion three says, I think it's worth putting on the

```
 1    record.  This would be a motion that would be made
 2    to the Chair recommending modifying the
 3    recommendations of outside counsel based on new
 4    information and testimony as follows:
 5                   A, require Senator Boquist to give at
 6    least 12 hours' advanced notice in writing to --
 7    then we fill in the blank -- if he intends to be in
 8    the Capitol and limit his access to the following --
 9    fill in the blank there.
10                   Or, B, require Senator Boquist to be
11    escorted by the state police to his office and
12    official meetings.
13                   Or, C, that the Senate rules be
14    temporarily modified to allow for remote
15    participation.
16                   Or, D being a question mark.
17                   It continues with the boilerplate
18    language regarding not having retaliation.
19                   I will go back and just state that I
20    believe, based on the counsel's perspective, that we
21    are not able to temporarily modify to allow for
22    remote participation.  Now, if we think that is
23    something that we would want to still include in
24    this modified motion, we could ask counsel to give
25    us a review and opinion on that, which would mean
```

1   that we would come back to take that up.

2              I would suggest that maybe that

3   portion not be in there because the reality is we're

4   not in session.  There are not votes that need to be

5   taken.  The next time that we will be scheduled for

6   any action on the Senate floor will be in September

7   if there are -- and I assume there probably will

8   be -- Governor's appointments and -- that need to be

9   ratified by the Senate.

10             So I'm wondering, Senator Olsen,

11  looking at that motion three, if you would be

12  comfortable with the A and B, and taking out the C?

13             SENATOR OLSEN:  I would be more

14  comfortable if -- I don't have a problem with the

15  allowing this "know he's coming;" removing B so that

16  he's not escorted; taking out C; and adding D where

17  bolster OSP force for security reasons.

18             SENATOR PROZANSKI:  And then do you

19  think that under A we have -- that's in there -- I'm

20  not saying that's what we need to go with -- at

21  least 12 hours' advanced notice, would that time

22  frame be within your motion?  Or do you think

23  something else?

24             SENATOR OLSEN:  Yes.  I think that

25  would be appropriate to bring in another couple

```
 1    officers.

 2                SENATOR PROZANSKI:  Okay.

 3                SENATOR OLSEN:  And I'd ask the rest

 4    of the committee if they thought it was also.  But I

 5    think that it would be appropriate that he -- and I

 6    would personally say that we don't send it to

 7    President Courtney.  I think that would -- I think

 8    we might send it to the Secretary of the Senate so

 9    that she is aware that he's coming in.  And I would

10    not limit his -- I wouldn't limit his access to the

11    building because we'd have extra security in the

12    building.

13                SENATOR PROZANSKI:  All right.  And

14    so, basically, on the -- regarding that portion,

15    advanced notice in writing, which could mean email

16    as well as --

17                SENATOR OLSEN:  Right.  Right.

18                SENATOR PROZANSKI:  I just want to

19    make sure we've got the record clear -- you're thing

20    to the secretary of the Senate, do you think that

21    would be appropriate over the director of the human

22    resources committee?  I'm just throwing something

23    out there --

24                SENATOR OLSEN:  Yeah, yeah.  I think

25    that -- yeah, I think since it's on the Senate side,
```

38

1  I think it would be appropriate for the Secretary of

2  Senate.

3              SENATOR PROZANSKI:   Okay.   I can -- I

4  have no problem with that.   I just want to make sure

5  we know what we're talking about.

6              SENATOR OLSEN:   Yeah.   Yeah.

7              SENATOR PROZANSKI:   Gentlemen, you've

8  heard somewhat of the modification.   Have I got this

9  correct it would be under motion three we would take

10  the A, and it would read something to the effect

11  "require Senator Boquist to give at least 12 hours'

12  advanced notice in writing to the Secretary of the

13  Senate if he intends to be in the Capitol, and limit

14  his access" -- well, we would take out the limiting

15  the access.

16              SENATOR OLSEN:   Yeah.   I would think

17  that should come out --

18              SENATOR PROZANSKI:   Because of the

19  next part?

20              SENATOR OLSEN:   Right.

21              SENATOR PROZANSKI:   So that would be

22  there.   And then what we would do, "and that OSP's

23  presence would be increased."   In other words, they

24  would have additional trooper or troopers in the

25  building during the time that Senator Boquist would

1    be in the building.

2                    SENATOR OLSEN:  And then -- and then

3    include, once again, that following paragraph.

4                    SENATOR PROZANSKI:  Yes.  Yeah.  All

5    right.  So I'm going to ask Senator Manning and

6    Senator Knopp, you've heard what we've discussed,

7    myself and Senator Olsen.  Do you have any questions

8    regarding that proposed recommendation?  Senator

9    Manning?

10                    SENATOR MANNING:  The question that I

11   have is counsel's recommendation to acknowledge the

12   actual threat.  I pulled up this motion.  I think

13   that I had made something similar to this on looking

14   at how we make sure that people are feeling

15   comfortable in the building.

16                    I don't particularly care who the

17   notification comes through.  I think that it is a

18   slight when we say that the Senate President

19   shouldn't receive this.  He's not the president

20   of -- he's the President of the Senate over

21   everybody, and he's going to have to make a call.

22   So I think that that's something that we need to do

23   away with.

24                    I would prefer for it to go through HR

25   because the Secretary of the Senate is going to have

40

1    to communicate with the President of the Senate.  It

2    makes no sense to me.

3            I think that having -- if he's in the

4    building making sure that we have enhanced OSP, you

5    know, we did that in the past, and I'm okay with

6    that.  But just bear in mind that this is not a

7    conclusion.  This is just an action to take while

8    the investigation or the inquiry proceeds.

9            So I don't want to get that lost in

10   this.  This is not a conclusion at all.

11           SENATOR PROZANSKI:  Yeah.  Can I

12   respond to your statement?  I personally agree with

13   Senator Olsen.  I think the Secretary of the Senate

14   would be the appropriate person in this particular

15   situation.  This is why.  We know that there's

16   ongoing -- potential litigation ongoing now, as well

17   as, let's say, concerns as to different individuals

18   in the building.

19           Senator Boquist has made it very

20   clear, from my discussions with him and my readings

21   of his statements, that he does not believe and

22   wants to have contact with HR, specifically Jessica

23   Neely (phonetic), who is our director.  And because

24   there's potential litigation involving her, I don't

25   think that would be the appropriate person that

41

1    should be receiving the notification.

2              Same thing with the President.  I felt

3    that what Senator Olsen has suggested is a person

4    who is an officer of the Senate, who is voted by all

5    members to be in that capacity, and she really is

6    kind of our air traffic controller for the business

7    of the Senate, and I think that when you enter

8    anything into the record, into the journals, that's

9    where it's going.  So I personally think that

10   Senator Olsen is correct, and that's why I would not

11   be as comfortable putting adversarial interest in

12   contact with each other at this stage.

13             SENATOR MANNING:  Mr. Chair, I

14   understand what you're saying.  But then potentially

15   we can make anybody adversarial, you know.  This is

16   shaping the battle field.  I don't have a problem

17   with it, you know.  That's fine.  We can do that.  I

18   can live with that.  I'm not going to lose any

19   sleep.

20             But, you know, I am concerned, again,

21   about what -- where are we going with this and that

22   we don't get distracted from this is the beginning

23   or part of an ongoing inquiry, and we're not coming

24   up with a conclusion.  I don't want us to get lost

25   in that.

42

1          SENATOR PROZANSKI:  Yeah.  To me this

2    is -- this is an intervention, is what it really is.

3    It's basically -- the investigation has been ongoing

4    prior to June 19th, and because of what happened on

5    June 19th, we've been asked to take steps to ensure

6    safety within the workplace.

7          Clearly this is not -- goes to any

8    portion of the merits of any of the reports that

9    outside counsel is currently reviewing and

10   potentially would bring forward through the Rule 27

11   process for processing reports into complaints,

12   either formal or informal.

13          SENATOR OLSEN:  Mr. Chair, would it --

14   would it be inappropriate to ask counsel if she felt

15   that this would be significant enough to ensure a

16   safe workplace for the time being in the interim?

17          SENATOR PROZANSKI:  Sure.  We can have

18   Brenda come back up and give her perspective.  I

19   mean, to me, I guess I'm going to say -- well, I'll

20   -- let's hear from you first.  I mean, I guess what

21   I'm going to say -- while she's getting situated --

22   is it is showing that we have taken all the

23   information that's come before us and we're taking

24   what we think are reasonable steps at this point to

25   ensure safety within the workplace.

```
 1              MS. BUMGART:  Thank you.  Thank you,
 2   Mr. Chair, Senator Olsen, and members.
 3              I agree with some of the comments.
 4   It's a difficult position but one that I think is
 5   necessary and is a balance, right, between the
 6   senator's ability to do his job and staff's -- the
 7   importance of the branch ensuring safety for the
 8   staff, members, the public, et cetera, as it's been
 9   discussed.  So I think the issues are being
10   discussed appropriately.
11              It's a million-dollar question, isn't
12   it, and I think Senator Olsen, you said, "We can
13   never know."  Right?  We can never know.  We
14   can't -- you know, we only know what we know.  And
15   what we know, at least at the time I issued the June
16   25th memo, is articulated in that memo.  And
17   certainly there have been -- there has been
18   subsequent information.  Chair Prozanski also
19   referred to the -- what I think has been quoted as a
20   double-down statement in the press.  This isn't
21   thinly veiled.  This is a real threat.
22              So, I mean, I think the committee has
23   articulated what the facts are.  My only response
24   would be -- and then I will answer your question --
25   is I think it's -- where I sit, I take a step back,
```

44

 1    and I'm not so focused on was this a direct

 2    communication in the middle of a debate on the

 3    Senate floor between Senator Boquist and President

 4    Courtney.  The way that I need to look at this in

 5    advising the branch and that the law looks at it is

 6    the effect on the recipients.

 7                    It's not just what was the intent

 8    behind Senator Boquist's statement, how did that

 9    affect President Courtney or how did that affect the

10    Oregon State Police, and that's part of why I did

11    not conduct the interview at the time.  Because

12    given the urgency -- what I believed to be the

13    urgency of the situation, the fact we were not

14    dealing with disputed statements, and the fact that

15    the way the law looks at this is not just the effect

16    on the recipient of the statement or the

17    inappropriate conduct, but on those who are also

18    subjected to that in the workplace.

19                    So -- so that is a -- I just want to

20    make that clear for the record, too, because I think

21    some of the comments have been struggling with how

22    do we have a finding without an interview or knowing

23    the full reports, and I understand that.

24                    But I hope that helps explain where I

25    was coming from.  I don't believe I had access to

1    the senator, and even if I did, I think I would

2    issue the same recommendation given what I believe

3    to be an urgency of the timing, given the nature of

4    the threats.

5              So the question is, is this enough?

6    If you all are comfortable that these steps -- this

7    is the question I think you need to ask yourselves

8    and that I don't think I can answer for you.  Is

9    this sufficient to ensure that the branch has taken

10   prompt, remedial, effective steps to ensure that

11   during the pendency of the investigation that we are

12   doing what we can to ensure that employees, members,

13   lobbyists, people of the public, anyone who is

14   involved in this in any way, as a reporter, as a

15   formal complainant, as a witness, is not going to be

16   subjected to ongoing or additional threats of

17   violence, actual violence, intimidation, or a

18   hostile work environment.  That is the legal

19   obligation on the branch.

20             I think this is much better than not

21   doing anything.  I still feel a little bit

22   differently about the passage of time.  I would look

23   at this more as if -- I agree, and that is a factor,

24   that we have gone a couple weeks.  These have not

25   been acted upon.  We are not in active session; that

1    these are factors to consider.  But I also don't

2    know that if we're looking at it from the affected

3    employees -- particularly the employee's perspective

4    -- that that passage of time has really changed

5    their level of -- of concern.

6                    I'm very pleased to see the piece

7    about the nonretaliation because from a risk

8    perspective to the branch that is one of the biggest

9    risks that through the pendency of the investigation

10   that there could be conduct or comments, and these

11   could be in person, they could be via email, via

12   social media to the media, that would put the branch

13   at risk that additional comments or conduct from

14   Senator Boquist or others directed towards

15   participants in the process could further exacerbate

16   the situation.

17                   So I'm very pleased to see that that

18   statement in there about the nonretaliation -- I

19   think that should be taken very, very seriously from

20   a -- one, it's the right thing to do.  But two, from

21   a risk perspective to the branch.  That is something

22   you want to keep control over.

23                   SENATOR PROZANSKI:  All right.  Thank

24   you.

25                   SENATOR OLSEN:  Mr. Chair, if I may.

47

```
 1    I might have missed it, but I don't believe

 2    Ms. Bumgart put her name on the record for this --

 3              MS. BUMGART:  Oh, thank you.

 4              SENATOR OLSEN:  Does she have to

 5    again?

 6              SENATOR PROZANSKI:  Well --

 7              SENATOR OLSEN:  Since she's the only

 8    one, but --

 9              SENATOR PROZANSKI:  Yeah, and since it

10    was always going forward, it is kind of a

11    continuation.

12              But for the record, if you will be so

13    kind.

14              MS. BUMGART:  For the record -- thank

15    you, Mr. Chair.  Brenda Bumgart Stoel Reeves.

16              SENATOR PROZANSKI:  All right.

17              MS. BUMGART:  Thank you.

18              SENATOR PROZANSKI:  So the only other

19    thing I'm going to say I think it's worth noting is

20    that even though some of us would like to have had

21    had that ongoing investigation on this interim

22    action to include interviews with Senator Boquist, I

23    think we all know in time those statements were made

24    on the 19th.  On the 20th through the -- up until

25    the 29th I would say he was not available, let alone
```

1   probably wasn't interested an interview to be done

2   because he wasn't here.  And so that would bring it

3   forward.

4                  And, of course, your report came to us

5   on the 25th while the walkout was still -- was still

6   ongoing.

7                  All right, with that we have a motion

8   before us, I'm just going to recapture it so we make

9   certain we have it correct when we vote.

10                  This would be a recommendation to

11  modify the recommendations of outside counsel based

12  on new information and testimony as follows:

13                  Require Senator Boquist to give at

14  least 12 hours' advanced notice in writing to the

15  Secretary of the Senate if he intends to be at the

16  Capitol.

17                  That while he is at the Capitol, there

18  would be an increased presence of OSP troopers or

19  officers while Senator Boquist is in the Capitol.

20                  Lastly -- and the recommendation would

21  include that Senator Boquist would be advised that

22  applicable law and Rule 27 prohibit him from

23  engaging in any retaliation against any employee or

24  member who may have brought forward or reported

25  concerns.

```
 1                   And that the Senator Boquist is to be
 2    refrained from any action or retaliation against any
 3    person who participates in this process.
 4                   That's the motion that's before us.
 5    Clarity?
 6                   SENATOR OLSEN:  Mr. Chair, just one
 7    thing for clarification to make certain it's on the
 8    record.  And you did this before.  In writing could
 9    also mean via email?
10                   SENATOR PROZANSKI:  Yes, it can be
11    electronic writing.
12                   SENATOR OLSEN:  Okay.  Thank you.
13                   SENATOR PROZANSKI:  Senator Manning?
14                   SENATOR MANNING:  Yeah, you said
15    increased OSP security presence in the building.  Is
16    it in the building or it's on the Senate side?  We
17    can have an increase on House side and it would have
18    no affect, so are we talking an increase on the
19    Senate side?
20                   SENATOR PROZANSKI:  Well, I think the
21    increase has got to be across the building.  This
22    workplace involves all individuals.  And if Senator
23    Boquist were to, say, walk across that demarcation
24    of the Senate into the House -- some people would
25    say the lower chamber just for whatever -- you know,
```

50

1   we don't want it to stop there.

2                SENATOR MANNING:  Okay.

3                SENATOR PROZANSKI:  So I think --

4                SENATOR MANNING:  Okay.

5                SENATOR PROZANSKI:  Does that --

6   understand?

7                SENATOR MANNING:  Yeah.

8                SENATOR PROZANSKI:  Clear?

9                SENATOR MANNING:  Yep.

10               SENATOR PROZANSKI:  All right.  All

11  right.  I think we now have the motion.  I think

12  everyone has any other questions on it?  If not,

13  Patsy, why don't you go ahead and call the roll.

14               PATSY:  Senator Olsen?

15               SENATOR OLSEN:  Yes.

16               PATSY:  Senator Manning?

17               SENATOR MANNING:  Aye.

18               PATSY:  Senator Knopp?

19               SENATOR KNOPP:  Aye.

20               PATSY:  Chair Prozanski?

21               SENATOR PROZANSKI:  Chair votes aye.

22               Motion passes.  All right.  So with

23  that, we've, I think, concluded our work as to what

24  this committee has been asked to do.  I want to

25  thank everyone here as committee members, first, for

51

```
 1    your time and effort to make it to the building for

 2    this.

 3              And for all those who have been

 4    participating as observers, I want to thank you for

 5    taking time out of your busy day to be here.  We

 6    hope that this has been a meaningful experience for

 7    you as to how our state government works in moving

 8    forward on these type of issues, and I hope that you

 9    realize that each and every member here has weighted

10    the effort of determining what is the best course

11    for the branch as it pertains to the workplace being

12    free of any threat of violence or intimidation, and

13    that we will not be taking any action at this point

14    regarding any merits of any reports that are

15    currently being investigated.  Those will come to

16    us, if they come to us, at some time in the future.

17              Any other closing comments?  Thank you

18    very much.  We're adjourned.

19                        --o0o--

20

21

22

23

24

25
```

1   STATE OF OREGON   )

2                     )  ss.

3   County of Lane    )

4

5

6       I, Sara Fahey Wilson, CSR, a Certified

7   Shorthand Reporter for the State of Oregon, certify

8   that the transcript is a true record of the

9   transcription of the audio recording; that the

10  foregoing transcript consisting of 50 pages contains

11  a full, true, and correct transcript of said audio

12  recording so reported by me to the best of my

13  ability on said date.

14      IN WITNESS WHEREOF, I have set my hand

15  this 24th day of August 2019, in the City of Eugene,

16  County of Lane, State of Oregon.

17

18

19

20

21

22

23  Sara Fahey Wilson, CSR

24  CSR No. 06-0400

25  Expires:  March 31, 2020