IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BRIAN J. BOQUIST**,

        Plaintiff,

        v.

**OREGON STATE SENATE PRESIDENT
PETER COURTNEY**, in his official
capacity, **SENATOR FLOYD
PROZANSKI**, in his official capacity as
Chairman of the Senate Special Committee on
Conduct, **SENATOR JAMES MANNING**,
in his official capacity as member of the
Special Senate Conduct Committee,
**DEXTER JOHNSON**, in his official capacity
as Legislative Counsel, **DARON HILL**, in his
official capacity as Legislative Administration
Director, **JESSICA KNIELING**, in her
official capacity as interim Human Resources
Director, **BRENDA BAUMGART &
MELISSA HEALY**, in their official capacity
as contract investigators to the Oregon State
Senate, and all in their official capacities in
the Legislative Branch of the State of Oregon,

        Defendants.

_____

        **Civ. No. 6:19-cv-001163-MC**

        **OPINION AND ORDER**

**MCSHANE, Judge**:

    This case stems from a political impasse in the Oregon State Senate. Eleven Republican

senators, wanting to avoid a quorum vote, brought the legislative function to a halt by leaving the

Oregon State Capitol. Oregon Governor Kate Brown ordered State Police to arrest the absent

senators, including Plaintiff Brian Boquist, and bring them back to the Capitol. Governor Brown

also imposed a $500 fine for each day a given senator was absent during the legislative session.

1 – OPINION AND ORDER

State Police did not arrest Plaintiff, but Governor Brown did levy a $3,500 fine against him. Plaintiff paid the fine, but it was ultimately vacated and his money was returned. Due to several statements Plaintiff made during the ordeal that some perceived as threatening, Senate leadership determined that Plaintiff may only enter the Capitol if he provides a 12-hour notice of his intent to do so.

Plaintiff now brings this action against Defendants—who are eight individual employees or elected officials in the Legislative Branch of the State of Oregon—alleging that the 12-hour notice requirement is unlawful and Defendants violated his state and federal constitutional rights. Defendants move to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6)—or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56—arguing that Plaintiff fails to state a claim for which relief can be granted. Defs.' Mot. 1–2, ECF No. 8. Because Plaintiff fails to establish that Defendants' actions were unlawful, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED.

## BACKGROUND

In May 2019, the Republican caucus of the Oregon State Senate participated in a walkout. Pl.'s First Am. Compl. ¶¶ 44, 86, ECF No. 6 ("FAC"); Defs.' Mot. 3. As a result, the absent legislators faced $500 per day in fines and potential arrest, imprisonment, and investigation. Defs.' Mot. 3. On July 19, 2019, Plaintiff, an elected Republican state senator, told Senate President Peter Courtney, "Mr. President, and [sic] if you send the [S]tate [P]olice to get me, Hell's coming to visit you personally." FAC ¶ 46; Defs.' Mot. 3. During the walkout, Plaintiff said that State Police should "send bachelors and come heavily armed." Defs.' Mot. 2. Ultimately, none of the missing senators were arrested and any fines that were levied against them were vacated. *Id.* at 3. However, Plaintiff was disciplined for what some perceived as

threatening language and his access to the Capitol was conditioned on him giving 12-hour advance notice of his presence to the Secretary of the Senate. *Id.* Although it is not always clear from the Amended Complaint which of the Defendants did what, Plaintiff alleges that some of the Defendants are responsible for the disciplinary order regulating his access to the Capitol. Plaintiff also alleges that some Defendants are secretly investigating him and have denied him access to public records related to this investigation. FAC ¶¶ 8, 11, 13, 15, 17, 70, 75. Finally, Plaintiff alleges that some of the Defendants are responsible for the orders to fine and arrest him. *Id.* at ¶ 11–13, 15.

Plaintiff brought this action on July 26, 2019 and filed an Amended Complaint on September 24. *See* Pl.'s Compl., ECF No. 1; FAC. Plaintiff alleges violations of: (1) his First, Fifth, and Fourteenth Amendment rights under the U.S. Constitution; (2) his rights under Article I, Section 26 and Article IV, Section 9 of the Oregon Constitution; and (3) 25 C.F.R. §§ 11.404 and 11.448. FAC ¶¶ 5, 10, 12, 13. Plaintiff seeks declaratory judgments stating: (1) that he has free, unfettered access to the Capitol; (2) that the investigation of him is unconstitutional; (3) that Defendants violated his First Amendment rights; (4) that Defendants violated his Fifth and Fourteenth Amendment due process rights; (5) that he is free from fines without due process; (6) that he is free from arrest without due process; and (7) what the definition of "compel" is under the Oregon State Constitution. FAC ¶¶ 105–25.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. Non-Legislator Defendants

Plaintiff fails to state a cognizable claim against Defendants Dexter Johnson, Daron Hill, Jessica Knieling, Brenda Baumgart, and Melissa Healy.

Ms. Knieling is the Oregon State Legislature's Interim Human Resources Director. FAC ¶ 33; Defs.' Mot. 7. Mr. Hill is Ms. Knieling's immediate supervisor and the Legislative Administration Director. FAC ¶¶ 33, 36. Mr. Johnson is Legislative Counsel for the State of Oregon. *Id.* at ¶ 32; Defs.' Mot. 6. Ms. Baumgart is a contract investigator who works for Stoel Rives LLP. FAC ¶ 34; Defs.' Mot. 7. Ms. Healy is an attorney who works for Stoel Rives LLP. FAC ¶ 95; Defs.' Mot. 8.

Plaintiff alleges that Ms. Knieling, Mr. Johnson, and Ms. Baumgart produced a memorandum for Defendants Courtney and Prozanski. FAC ¶¶ 56, 71. Plaintiff alleges that this memorandum recommended that officials remove Plaintiff from the workplace pending the end of an investigation. *Id.* at ¶¶ 56, 74. Plaintiff also alleges that Mr. Johnson personally authored

legal opinions recommending fines, arrest, use of physical force, and imprisonment of absent senators. *Id.* at ¶ 74. Plaintiff further alleges that the Senate Special Committee illegally organized a conduct hearing, which met on July 8, 2019. *Id.* at ¶ 71. Finally, Plaintiff alleges that Ms. Baumgart spoke at the hearing and "was or is using" Ms. Healy in her secret investigation of Plaintiff. *Id.* at ¶¶ 34, 71, 95; Defs.' Mot. 7 (citing Abrams Decl. Exs. B and C, ECF Nos. 9-2 and 3).

In order to maintain a constitutional claim against an individual, a plaintiff must adequately allege that an individual subjected plaintiff or caused plaintiff to be subjected to the deprivation of constitutional rights, privileges, or immunities. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Here, Plaintiff points the finger at individuals who were only tangentially involved in the alleged constitutional violations. None of these Defendants directly imposed any of the sanctions on Plaintiff; rather, they appear to have provided legal analysis for the legislative Defendants who are alleged to have imposed sanctions. These Defendants are dismissed from this case.

## II. Legislative Assembly's Actions

This Court has jurisdiction over Plaintiff's federal law claims against members of the legislature. The Eleventh Amendment provides the states with "sovereign immunity," allowing a state the privilege not to be sued, whether by its own citizens or those of another state, without its consent. U.S. Const. amend. XI; *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Absent a waiver or congressional abrogation, federal courts cannot entertain an individual's suit against a state. *Stewart*, 563 U.S. at 253. The courts may, however, entertain an individual's suit against state officials in their official capacity under federal law for injunctive and declaratory relief. *Ex parte Young*, 209 U.S. 123, 155–56 (1908); *see also Stewart*, 563 U.S. at 254–55 (explaining that "when a federal court commands a state official to . . . refrain from

violating federal law, he is not the State for sovereign-immunity purposes."). Here, Plaintiff

seeks declaratory relief. *See* FAC ¶¶ 105–25.

This Court does not, however, have jurisdiction over Plaintiff's claims regarding the

Oregon Constitution. *See Belt v. Ind. Parole Dep't*, 241 F. Supp. 2d 905, 907 (N.D. Ind. 2003)

(holding that the Eleventh Amendment precluded the court from interpreting Indiana's

constitution and requiring state officials to conform their conduct); *Cornwell v. Joseph*, 7 F.

Supp. 2d 1106, 1108 (S.D. Cal. 1998) (citation omitted) (holding that the Eleventh Amendment

precluded "federal supplemental jurisdiction over state law claims against state officers sued in

their official capacities."). Plaintiff's Oregon Constitution claims are dismissed.

### III. First Amendment

Plaintiff argues that Defendants violated his First Amendment rights by acting in

response to his expression of free speech on the Senate floor and in the Capitol, blocking his

"practice and expression of religious beliefs" on the Senate floor, and preventing him from freely

assembling with citizens in his office. FAC ¶¶ 8–10.

The First Amendment provides that:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

U.S. Const. amend. I. The First Amendment is applicable to the states through the Fourteenth

Amendment. *Nurre v. Whitehead,* 580 F.3d 1087, 1092 (9th Cir. 2009). A government employee

alleging that his employer violated his right to free speech must satisfy five elements:

> (1) [W]hether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (*en banc*) (citation omitted).

Here, Plaintiff makes conclusory allegations and fails to satisfy the *Dahlia* factors. *See* FAC ¶¶ 8–10, 14, 23, 38. Plaintiff relies heavily on *Bond v. Floyd*, in which the Court held that the disqualification of a member of the Georgia House of Representatives in response to statements he made opposing the Vietnam War violated the First Amendment. *See* 385 U.S. 116, 137 (1966). Here, Plaintiff is being disciplined not for a political viewpoint, but for the perceived threats toward others embodied in his statements. He remains a senator and retains all of the powers attendant to that position.

Even if Plaintiff satisfied the *Dahlia* factors, Defendants' 12-hour rule is a reasonable time, place, and manner restriction. The government may place "content neutral" time, place, and manner regulations on speech "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47 (1986) (citing *Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 (1984)); *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 807 (1984); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–648 (1981)). The government may not use such restrictions as a pretext for silencing a particular viewpoint. *See, e.g., Edwards v. City of Coeur d'Alene,* 262 F.3d 856, 862 (9th Cir. 2001).

Here, Defendants felt it reasonable to restrict Plaintiff's access to the Capitol to ensure others' safety after he made threatening statements to Defendant Courtney, State Police, and Legislative Assembly members and staff. *See* Defs.' Mot. 2–4, 12. Plaintiff must give 12 hours' notice of his intent to enter the Capitol. Defendants have not limited the duration or frequency of Plaintiff's visits nor the nature of the statements he may make while there.

While both sides can point fingers and complain that the other is overreacting to a political situation, Plaintiff's chosen words on the Senate floor were those of a bully on the playground. As such, they are unprotected fighting words. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) (holding that insults or words which, "by their very utterance inflict injury or tend to incite an immediate breach of the peace," are not an essential part of expression and are of such slight social value that the social interest in order and morality outweighs any benefit they may have). Remarkably, Plaintiff argues that his statement to Defendant Courtney— "if you send the [S]tate [P]olice to get me, Hell's coming to visit you personally"—was a statement of religious expression. FAC ¶¶ 38, 46. But here, Plaintiff seems to overlook the fact that he sounds more like a character out of a Clint Eastwood movie than he does Mother Theresa. In *Chaplinsky*, the Court reasoned that cursing a public officer was not the exercise of religion.[1] 315 U.S. at 571. Moreover, Plaintiff made this statement in anticipation of his potential arrest, not during a religious discussion. Plaintiff also said that if the State Police were to arrest him, they should "send bachelors and come heavily armed." Defs.' Mot. 2. These statements, apart and together, resonate more as threats than the expression of theological ideas. Senate leadership has a legitimate interest in assuring that debate on the Senate floor is not suppressed by the threatening behavior of one of its members. And while it may be that Plaintiff's words were no more than dramatic flourishes for media consumption, it is not this Court's job to second guess the finding of a state legislative body that some of its members felt frightened by what the Plaintiff said. Words, it turns out, sometimes have consequences.

Defendants did not violate Plaintiff's First Amendment rights.

---

[1] In *Chaplinsky*, a street preacher called a police officer a "God damned racketeer and a damned Fascist." Brief for Appellee at 18–19, 315 U.S. 568 (1942) (No. 255), 1942 WL 53569.

**IV. Due Process Under the 5th and 14th Amendments**

Plaintiff alleges that Defendants violated his Fifth and Fourteenth Amendment due process rights by fining him, ordering his arrest and imprisonment, and conducting a secret investigation. FAC ¶ 11.

To prevail on these claims, Plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Due process rights are flexible, depending largely on the specific factual circumstances along with a weighing of the governmental and private interests involved. *Id.* at 334 (internal citations omitted); *Mullane v. Cent. Hannover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (explaining that due process tolerates variances in procedure "appropriate to the nature of the case."). Each setting invites its own assessment under *Mathews*, but generally persons holding interests protected by the due process clause are entitled to "some kind of a hearing." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted).

Plaintiff alleges that he paid the $3,500 fine and Defendants vacated it and returned his payment in response to the filing of his Complaint. FAC ¶¶ 62, 91, 98. Plaintiff filed his initial Complaint on July 26, 2019. ECF No. 1. Defendants returned Plaintiff's payment on September 9, 2019. Abrams Decl. Ex. A, at 1, ECF No. 9-1. However, Defendants withdrew fines against every senator who participated in the walkout, not just Plaintiff. *See* Ben Botkin, *Oregon Senate leaders drop plan to collect fines from Republicans who walked out*, Salem Statesman Journal

(last updated Aug. 23, 2019, 3:48 p.m.).[2] Regardless, Plaintiff fails to establish that the fine deprived him of a liberty or property interest without due process of law. Next, Plaintiff concedes that State Police never attempted to arrest or imprison him. FAC ¶ 47. Even if the Court granted Plaintiff leave to amend his Complaint to cure these defects, Governor Brown ordered the senators' arrests and imposed these fines, and Plaintiff has not named Governor Brown in this action. Finally, Plaintiff cites no authority to support his allegations that a "secret investigation" of him violates his constitutional rights. Unless and until Defendants pursue civil or criminal penalties, they have not deprived Plaintiff of a liberty or property interest.

Defendants did not violate Plaintiff's Fifth and Fourteenth Amendment due process rights.

## V. Code of Federal Regulations

Plaintiff alleges violations of 25 C.F.R. §§ 11.404, false imprisonment, and 11.448, abuse of office. FAC ¶ 22. Sections 11.404 and 11.448 are part of 25 C.F.R. Part 11, the "Courts of Indian Offenses and Law and Order Code." This Code applies to members of Native American tribes that the Federal Government recognizes as eligible for Bureau of Indian Affairs services "and any other individual who is an 'Indian' for the purposes of 18 U.S.C. 1152–1153." 25 C.F.R. § 11.106. Plaintiff does not allege that he is a tribal member or Native American. Even if he were, he admittedly was never arrested or falsely imprisoned and fails to allege specific facts to support a claim for abuse of office.

---

[2] This article is available at https://www.statesmanjournal.com/story/news/politics/2019/08/23/oregon-senate-drops-plan-to-collect-fines-from-republicans-who-walked-out-salem/2099522001/.

**VI. Requests for Relief**

Plaintiff seeks various declaratory judgments regarding his claims. *See* FAC ¶¶ 105–25. Because each of Plaintiff's claims are dismissed as explained above, Plaintiff's requests for relief are dismissed.

## CONCLUSION

Because Plaintiff fails to state a cognizable claim for relief and amendment would be futile, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED and the dismissal is with prejudice.


IT IS SO ORDERED.

Dated this 7th day of January, 2020.


    s/Michael J. McShane    
Michael McShane
United States District Judge