Vance D. Day, OSB #912487
*Vance.day@teamvanceday.org*
Law Offices of Vance D. Day
PO Box 220
Powell Butte, OR 97753
Telephone: (503) 409-5562

Elizabeth A. Jones, OSB #201184
*beth@capitol.legal*
Capitol Legal Services
901 Capitol St. NE
Salem, OR 97301
Telephone: (503) 480-7250
Fax: (503) 779-2716
Attorneys for Plaintiff Brian J. Boquist

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

BRIAN J. BOQUIST,

Plaintiff,

v.

OREGON STATE SENATE PRESIDENT PETER COURTNEY, in his individual and official capacity; SENATOR FLOYD PROZANSKI, in his individual and official capacity as Chairman of the Senate Special Committee on Conduct, SENATOR JAMES MANNING, in his individual and official capacity as member of the Special Senate Conduct Committee,

Defendants.

Case No. 6:19-cv-01163-MC

**DECLARATION OF VANCE D. DAY IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES**

I, Vance D. Day, hereby declare under the penalty of perjury that the following is true:

1. I am one of the attorneys representing Plaintiff Brian Boquist. This Declaration is offered in support of Plaintiff's Motion for Award of Attorney's Fees.

2. From the beginning, this case was of exceptional importance to the liberty of legislators to exercise their inalienable right to freedom of speech and assembly. Plaintiff filed and pursued this case *pro se* in the District of Oregon, and on appeal to the Ninth Circuit Court of Appeals. Attorney Elizabeth Jones and I were retained to pursue Plaintiff's interest after the Ninth Circuit recognized and remanded a potential first amendment retaliation claim. This Court's ruling is critical to establishing that elected officials may not inflict materially adverse actions against other elected officials in retaliation for their protected speech. The result handed down by this Court was Plaintiff's goal throughout this litigation.

3. Plaintiff brought this action under 42 U.S.C. § 1983 for declaratory and injunctive relief, and nominal damages, due to Defendants' retaliation against Plaintiff for engaging in protected speech. Plaintiff claimed that Defendants' implementation of the "12-hour rule" was a retaliatory act against Plaintiff, in violation of his First Amendment rights to free speech and association. Plaintiff has succeeded in this litigation, and now is free from the chilling effect under which he labored due to Defendants' retaliation. He is now free to speak his political opinions without fear of retaliation.

4. Plaintiff's counsel fully investigated and prosecuted this action with the utmost effort, despite the obstreperous defense put up by the Oregon Department of Justice in its representation of Defendants. Plaintiff respectfully requests this Court to award the fees earned by his attorneys in this fully successful endeavor.

5. Before filing this motion, I conferred with Defense counsel, but the parties could not reach agreement on Plaintiff's request for attorney fees and costs.

**Qualifications of Counsel**

6. I am a graduate of Warner Pacific University, (B.S. 1984, *Magna Cum Laude*) and Willamette University School of Law (J.D. 1991). Prior to law school, I lived and worked in East Asia, employed as the Ritz Taipei Training Consultant. I attended the Institute of Holy Land Studies in Jerusalem, Israel, in their Master of Arts in Biblical Historiography program. Subsequently, I worked for Middle East Television & CBN News as a producer, reporter, and on-air anchor. I also attended Regent University in their Master of Arts in Public Policy program, eventually working for the University as a Regional Assistant Director of Admissions. I am the recipient of an Academic Merit Scholarship to Regent University, the Shepard Broad Foundation scholarship to Nova University School of Law, and a Trustee Scholarship at Willamette University School of Law.

7. I have been practicing law since 1991, and I am currently a sole practitioner who, in certain endeavors, serves as *Of Counsel* to the James Madison Center for Free Speech. I have been licensed to practice law since my admission to the Oregon Bar in 1991. I was later admitted to the United States District Court for the District of Oregon in 1992 and the District of Colorado in 2007. I was admitted to the United States Court of Appeals (9th Circuit) in 1993, and the United States Supreme Court in 1995. I have also been admitted into The Court of International Trade, The United States Tax Court, The Court of Federal Claims, and the US Court of Appeals for the Armed Forces. I have also served on the Board of Directors for the Oregon Trial Lawyer Association.

8. Outside of the law, I have traveled and lectured on military history and leadership theory, giving lectures at The White House, before members of Congress, the United States Military Academy at West Point, and at numerous military bases and educational institutions in

North America and Europe with several of the original veterans who were depicted in the HBO miniseries *Band of Brothers*. I also served for nearly four years as the Chairman of the Oregon Republican Party, Vice-Chairman (five months), Treasurer (2 years), and in several other capacities for over a decade. In 1996 and 2008 I was selected as a delegate to the Republican National Convention and served as the Chairman of the Oregon Delegation in 2008.

9. I was appointed by Governor John Kitzhaber, MD, as a Marion County Circuit Court Judge on September 30, 2011. I was elected to a six-year term to Position 5 on the Marion County Circuit Court in November of 2012, with my term of office ending in early January of 2019.

10. A substantial part of my practice consists of representing individuals and organizations in litigation, both in federal and state courts. I have filed and litigated approximately 450 cases filed in circuit courts throughout Oregon, and approximately 35 cases in various federal district courts, mainly in the District of Oregon. I have also litigated extensively before the Hearings Division of the Oregon Workers' Compensation Board, trying over 400 cases.

**Legal Services: Accounting & hourly rate**

11. The services performed in this case by me are truly and accurately listed in the annotated Billing Statements of legal services, attached hereto as Exhibit 1.

12. The services performed in this case, which are listed in the Billing Statements attached, were reasonably and necessarily performed in Plaintiff's cause.

13. The time spent on each activity and billed for the services performed by me in this case are truly and accurately listed in Exhibit 1, according to each service that was performed on Plaintiff's behalf.

14. I have billed reasonable rates for my time in this case according to the prevailing market rates for comparable cases in the District of Oregon market for attorneys with comparable skill, experience, and reputation. My rate is $500/hr (32 years' experience).

15. According to the Oregon State Bar 2022 Economic Survey, my rate is at or near the 95th percentile of rates charged by Oregon attorneys who litigate plaintiff personal injury cases. True and accurate copies of the title page and the relevant rate page from that Survey are attached hereto as Exhibit 2.[1] Although I now live in Powell Butte, Oregon, the vast majority of my time practicing law was spent in the Upper Willamette Valley ($503) and in the Tri-County area ($498).

16. My hourly rate is comparable to those which I charge clients for comparable work.

17. When requesting fees under 42 U.S.C. § 1988, the rates requested in individual petitions will vary depending on the market rate of the community in which the fee petition is filed, as required by the case law interpreting that statute. Thus, the rate requested is determined without regard to the hourly rate the client has been charged or paid or whether we have accepted the case on a contingency fee basis.

18. All time expended was recorded as contemporaneously therewith as possible by me when I was performing the work.

19. I have transferred the date, time, and task data to an Excel sheet attached as Exhibit 1. In that process, I left off over 350 billable entries – frankly, the number may be over 400. These were mainly emails and calls with the client, team members, and third parties, most I which I would have billed to the client in any other case. Some of the events not included in Exhibit 1 were 0.1 events and some were 0.5 events. In my estimation the average of all events was 0.2.

[1] The Survey was taken in 2021 and published in 2022. I did not choose to calculate or include the inflation value of these fees.

**Fees and Costs**

20. Plaintiff has been represented by counsel in this matter on a contingency fee basis.

21. I have kept contemporaneous time records of the work performed in connection with this action. Exhibit 1 is a true copy of the time records after I reviewed, proofread, and supplemented the description of some entries and exercised billing judgment to remove many others. I did not bill for texts in this matter.

22. I have spent 557.23 hours dedicated to this case. As noted above, a reasonable rate for my service is $500 per hour. The reasonable fee I am requesting is $278,615.00.

23. We have kept contemporaneous records of the costs associated with representing Plaintiff in the matter. (*See* Bill of Costs - Jones Decl., ¶ 8, Exhibit 2). The Bill of Costs is a true copy of the costs incurred. *Id*. Plaintiff is seeking $24,869.46 incurred and directly related to this litigation.

24. In addition, we request the hours dedicated to preparing this fee motion and supporting documents. I and attorney Elizabeth A. Jones kept contemporaneous time records of the work we performed in connection with this motion. *See* Declaration of Elizabeth A. Jones, Exhibit 1. Below is a summary of the fees requested for preparing Plaintiff s motion:

| | | | | |
|---|---|---|---|---|
| Vance D. Day | 557.23 Hours | x | $500 p/hr | = $278,615.00 |
| Elizabeth Jones | 356.7 Hours | x | $394 p/hr | = $140,539.80 |
| Total | 913.93 Hours | | | $419,154.80 |

25. A true copy of the Oregon State Bar 2022 Economic Survey cited in Plaintiffs Memorandum and found on the bar's website is attached as Exhibit 2. The above fees reflect the mean rate for attorneys representing plaintiffs in personal injury cases in the Upper Willamette

Valley. $500 is a reasonable rate for my services, considering my background and extensive experience in federal and state courts. $394 is a reasonable rate for the legal services provided by Elizabeth Jones, considering she has extensive experience litigating § 1983 actions in federal court but has been practicing law for less than four years. She has an amazing mind for writing and research, and a courageous spirit, to boot.

26. The James Madison Center for Free Speech (JMCFS), whose attorneys litigate these issues across the country, was helpful in strategizing on the investigation, in discussing pleadings, strategizing on filings and evidentiary matters during discovery, and during the Summary Judgment phase. The attorneys at JMCFS did not submit billings in this matter in order to reduce any duplication which may increase the fees.

**Attorney Has Exercised Considerable Billing Judgment**

27. Exhibit 1 is a true copy of the time records after I reviewed, proofread, and supplemented the description of some entries and exercised billing judgment to remove many others.

28. I carefully reviewed my time records and exercised billing judgment to reduce my fees. Where I concluded that arguably time could have been spent more efficiently, I reduced the amount of attorney fees being requested. The approximate reduction totals @ 70 hours equaling $35,000. This represents a reduction in Plaintiffs request for compensation for my attorney fees by twelve and a half percent (12.5%). [2]

[2] The average time per entry is 0.54 (557.23 hours divided by 1024-time entries). Most of the events not included in the final accounting were emails, which generally are billed between 0.1-0.4. Using an average time value of 0.2 x 350 events = 70 hours x $500 p/hr = $35,000.00

**Case Background**

29. Since this fee petition follows in depth discovery, multiple depositions, vigorously litigated cross motions for summary judgment, and oral arguments after which the Court issued declaratory relief and nominal damages, I will not repeat the merits of Plaintiff's claims. Rather, I will highlight the work that it took to achieve the successful outcome of this case.

30. As noted above, Plaintiff retained me and Ms. Jones after this matter was returned to this Court from the Ninth Circuit for further proceedings. After Plaintiff retained counsel, ECF No. 26 – 81 were filed in this case, not including multiple discovery request, interrogatories, request for admissions, and filings related to fees and costs.

31. In their Answer, Defendants denied any liability for their actions. They essentially doubled down on their denials in subsequent responses to Interrogatories, and Request for Admissions.

32. Defendants filed a Motion to Strike aimed at Plaintiff' First Amendment claim that Defendants' retaliation had infringed upon his right to assembly. Defendants' motion was filed despite the clear and unambiguous language of the 9th Circuit. This Court denied Defendants' motion and ultimately determined that Defendants' retaliatory act against Plaintiff violated not only his First Amendment rights to free speech, but also association. (ECF Nos. 80 and 81)

33. Discovery was initiated and required the review of tens of thousands of pages of emails, documents, and related court filings (Marion County Circuit Court Case No 19CV29374). There were also numerous hearing videos and news reports, both television and print, which necessitated review.

34. Plaintiff served numerous sets of written discovery. Defendants' responses were inadequate, necessitating a series of emails, letters, and conferences. On several occasions this

Court was required to engage the parties and resolve discovery issues, almost uniformly in favor of Plaintiff.

35. Discovery was rather extensive in this matter. Nineteen Depositions were taken: Eighteen on behalf of Plaintiff and one on behalf of Defendants. The summary below captures the date of the deposition, location, length of each, and the number of Exhibits used:

| Name | Date | Location | Length | Exhibits |
|---|---|---|---|---|
| James Manning | 9/1/22 | Eugene, OR | 4:03 | 39 |
| Travis Hampton | 9/2/22 | Bend, OR | 2.42 | 17 |
| Leslie "Lee" Beyer | 9/14/22 | Eugene, OR | 1:03 | 2 |
| Floyd Prozanski (#1) | 9/15/22 | Eugene, OR | 4:42 | 7 |
| Lori Brocker (#1) | 10/26/22 | Portland, OR | 1:03 | 6 |
| Virginia Burdick | 10/26/22 | Portland, OR | 1:41 | 8 |
| Shemia Fagen | 10/28/22 | Salem, OR | 2:37 | 12 |
| Jessica Knieling | 10/28/22 | Salem, OR | 3:10 | 13 |
| Sara Gelser Blouin | 10/31/22 | Salem, OR | 3:32 | 6 |
| Peter Courtney | 11/4/22 | Salem, OR | 3:35 | 32 |
| P. Courtney (perpetuation) | 11/4/22 | Salem, OR | 1:40 | 11 |
| Brian Boquist | 11/9/22 | Salem, OR | 6:00 | 9 |
| Floyd Prozanski (#2) | 11/14/22 | Eugene, OR | 3:47 | 23 |
| Laurie Monnes Anderson | 11/15/22 | Gresham, OR | 1:08 | 7 |
| Lori Brocker (#2) | 11/15/22 | Salem, OR | 2:35 | 14 |
| Brenda Baumgart (#1) | 11/30/22 | Portland, OR | 2:03 | 8 |
| Tina Kotek | 12/18/22 | Portland, OR | 2:58 | 19 |

| | | | | |
|---|---|---|---|---|
| Floyd Prozanski (#3) | 1/27/23 | Video Conf. | 2.28 | 10 |
| Brenda Baumgart (#2) | 2/15/23 | Portland, OR | 1:47 | 17 |

36. The total hours logged for the time actually spent on the record in the above depositions was approximately 52 hours. There were over 250 unique deposition exhibits, not including videos, which were used in the nineteen depositions. The time noted above does not include time spent at the deposition which was off the record.

37. Attempting to obtain documents related to the contract work of investigator Brenda Baumgart was challenging, requiring subpoenas being issued for her deposition appearance and for documents which she did not supply voluntarily. Baumgart's testimony and documentation revealed that no formal investigation was ever started, and what process was engaged in was never completed nor was a report issued. Plaintiff was left hanging in the wind, so to speak for three and a half years despite being promised resolution.

38. The depositions, combined with the documentation used as exhibits, rendered specific evidence which was used to demonstrate that there were no genuine issues of material fact that Defendants' implementation of the 12-hour rule was a retaliatory act against Plaintiff, in violation of his First Amendment rights to free speech and association.

39. In December of 2022, Plaintiff sent the defense a letter suggesting efforts to negotiate a settlement. Defendants agreed to entertain a settlement offer, but Plaintiff's formal proposal did not lead to any productive discussions toward resolution of the case. If Defendants had negotiated at that time, I am confident they could have resolved this matter for essentially what the Court ordered on July 17, 2023, but for a great deal less in fees and costs.

40. Cross Motions for Summary Judgment were filed by the parties, each necessitating a Response and a Reply, with a Sur-Reply by Plaintiff. The briefing required considerable

compilation and analysis of facts discovered in depositions and through a thorough and careful review of the documents that Defendants produced in discovery. Defendants filed a Response vigorously defending their position that no retaliation had occurred, and if it did, the "time and place restrictions" were appropriate, arguing mootness, and contending that three different types of immunity shield them from liability.

41. Plaintiff was forced to seek and was allowed to file a Sur-Reply to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment. This was due to Defendants' counsel providing, and forcefully arguing to this Court, evidence which did not exist at the time of the deprivation of Plaintiff's rights.

**Plaintiff's Counsel Took Considerable Risk and an Undesirable Case**

42. These cases involve a specialized body of law that encompasses not only familiarity with 42 U.S.C. § 1983, qualified immunity, legislative immunity, but also the First Amendment standards within the context of specific circumstances, some not litigated before. These cases frequently involve Constitutional and prudential issues of standing, mootness, injunctive and declaratory relief. As a result, these cases are quite difficult, they demand a great deal of work, and defendants often vigorously oppose them. So, they are seen as undesirable and very risky by the vast majority of lawyers. This matter has necessitated me to work weekends and dedicate time which has naturally constricted my ability to take on additional cases which were likely to be paid on an hourly basis, rather than contingency. Further, this case presented a somewhat new but not quite novel legal issue on few courts had considered. Accordingly, this contingent fee case was undesirable and presented substantial risk to me and to my co-counsel.

43. The media coverage in June of 2019 and following made out Senator Boquist to be some sort of radical, when in fact he was not. He was even referred to by some, euphemistically,

as a “whack-a-doodle.” It is understandable that this made it difficult for Plaintiff to retain competent legal representation. To further complicate matters, Plaintiff is a known conservative with very independent leanings who holds opinions which are contrary, and often derided by those who some would classify as “governmental elites.” Lawyers who represent conservative officials and activists are often looked down upon by those in the legal community. This reality made Plaintiff’s case more difficult to retain competent legal representation.

44. To prepare for and navigate Defendants' asserted defenses to reach a successful outcome, as we did, requires a great deal of skill, knowledge, and experience, and willingness to take a serious risk. This is especially true in this case with Defendants being represented by highly skilled and experienced attorneys from the Oregon Department of Justice. Experienced civil rights litigators can only afford to take on these kinds of cases and the risks that they present because the courts award the fees that they have earned, at the rates that they charge.

45. I have known Brian and Peggy Boquist for over fifteen years. I have worked alongside Senator Boquist in a number of collateral issues. We have a good relationship and work well together. Senator Boquist has been very engaged in this case and quite helpful with the discovery and summary judgment phases of this case. Our relationship has allowed there to be a management of expectations, timing of events, and re-focusing the case, all lessening time and effort for the parties involved.

**Compliance with Local Rule 7.1(a)**

46. I attempted to contact Attorney Marc Abrams on several occasions before filing Plaintiff’s Motion, Memorandum, and related documents with the Court. I have sent Mr. Abrams and Tracy White the documents which were to be filed with the Court relating to fees and costs.

Mr. Abrams has been in trial but was able to call me on a break to confer on fees and costs. Currently, we are not able to resolve the issue of fees and costs without the Court's assistance.

**I hereby declare under penalty of perjury that the foregoing is true and correct.**

Dated this 31st day of July 2023.

s/ Vance D. Day
Vance D. Day, OSB #912487
Of Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DECLARATION OF VANCE D. DAY IN SUPPORT OF PLAINTIF'S MOTION FOR AWARD OF ATTORNEY'S FEES on:

Tracy Ickes White
Marc Abrams
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Attorneys for Defendants

by the following indicated method or methods:

☒ by **electronic means through the Court's Case Management/Electronic Case File system** on the date set forth below;

by **emailing** a copy thereof to each attorney at each attorney's last-known email address on the date set forth below;

by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorneys' last-known address listed above and depositing it in the U.S. mail at Salem, Oregon on the date set forth below.

DATED this 31st day of July 2023.

s/ Vance D. Day
Vance D. Day, OSB #912487
Of Attorneys for Plaintiff